UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SARAH CARR, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civ. A. No. 06-00098 (ESH) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

**OPPOSITION TO MOTION TO DISMISS**

Defendant seeks dismissal of "plaintiff's unreasonable seizure and false arrest claims." Dfdt's Mo. at 1.[1]  Defendant does not seek dismissal of either plaintiffs' class action First Amendment claim or the individual assault and battery claims of plaintiffs Singer and Chelsea Kirk.[2]

---

[1] *See also*, Dfdt's Mem. at 12 ("the District moves to dismiss plaintiffs' claims of unreasonable seizure and false arrest").

[2] Complaint at ¶¶ 3, 43, and b of Prayer for Relief (First Amendment claim); Complaint at ¶¶ 45, 46, and b of Prayer for Relief (Singer and Chelsea Kirk assault and battery claims).  Plaintiffs claim that defendant violated the First Amendment by arresting them and that if the arrests violated the Fourth Amendment they necessarily violated the First Amendment, because plaintiffs at the time were engaged in political assembly and expression.  Plaintiffs also maintain, however, that the arrests violated the First Amendment even if they did not violate local law.  If, contrary to our Fourth Amendment and false arrest claims, parsing local law were to produce the conclusion that the act of parading without a permit was a criminal offense when plaintiffs paraded, local law gave insufficient notice of the criminal prohibition to pass muster under the First Amendment.  The requirement that "fair warning be given in language that the common world will understand, of what the law intends to do if a certain line is passed," *United States v. West*, 393 F.3d 1302, 1312 (D.C. Cir. 2005) (internal quotation marks, ellipses, and citations omitted), has particular importance where the conduct to be punished is peaceful political expression.  *Cox v. Louisiana*, 379 U.S. 559 (1965).  This First Amendment claim would remain before the Court even if defendant's motion to dismiss plaintiffs' Fourth Amendment and common law claims were granted.

Defendant's motion advances four arguments.[3] First, the District says that persons can be arrested for violating the District regulation against parading without a permit because another regulation in the same title, says "any person violating any provision of this title for which a specific penalty is not provided shall, upon *conviction*, be punished by a *fine* of not more than three hundred dollars ($300)." Dfdt's Mem at 4-5, quoting 24 DCMR § 100.6 (emphasis by defendant). *See also*, Dfdt's Mem. at 9 (asserting that "'parading without a permit' is a criminal offense for which a person can be 'convicted'").

Second, the District says that the regulatory prohibition against parading without a permit was violated by plaintiffs "the moment they marched together"—not just if police gave them notice and opportunity to disperse and they continued to march in violation of the order—because "no such order or warning was necessary." Dfdt's Mem. at 7, n.6.[4]

Third, the District says, "Even assuming that plaintiffs' claim is correct (*i.e.*, that the arrests here violated District law), that fact—alone—does not render the arrests impermissible under the Fourth Amendment." Dfdt's Mem. at 5, n. 4.

---

[3] A fifth argument by the District must be set aside at the outset because it merely refutes an argument that we do not make. Defendant says, "the Supreme Court has expressly rejected the proposition plaintiffs advance here—that police may arrest without a warrant only for 'jailable' crimes committed in their presence and not for 'fine-only' offenses." Dfdt's Mem. at 6. Contrary to defendant's memorandum, we do not claim that police are prohibited from arresting persons for crimes for which the only penalties are fines. Rather, as defendant's memorandum at 10 correctly indicates, plaintiffs claim that the act of parading without a permit in the District of Columbia was not a crime at all; persons could not be arrested for the act of parading without a permit unless they continued to parade after being given both a police order to disperse and opportunity to comply with the order. Noncompliance with an order would subject persons to arrest for failure to obey the order, but not for parading without a permit, which was (and still is) only a civil infraction.

[4] The Complaint at ¶¶ 5-9 and 26-29 alleges that police gave no order or opportunity to disperse before they arrested plaintiffs.

Fourth, defendant argues that "even if 'parading without a permit' is only a civil infraction not subjecting violators to custodial arrest," parading without a permit subjects one to arrest for rioting, D.C. Code § 22-1322, and obstructing a public road, § 22-3320. Dfdt's Mem. at 10.[5]

We show below that defendant's arguments are invalid.

I. **By Statute, Parading Without a Permit is Not a Criminal Offense; 24 DCMR § 100.6 Must Be Construed Consistently with, and is Invalid if it Violates, the Statute**

Defendant's assertion that "parading without a permit" is a criminal offense subjecting violators to custodial arrest is wrong. Clearly established law of the District of Columbia proves that the legislature decriminalized this offense by deeming it a civil infraction in a category of pedestrian traffic infractions and that the District of Columbia Court of Appeals has found arrest for violation of these infractions to be in violation of the Fourth Amendment. Further, because there is a specific penalty for this offense, a general penalty in another title of the District's regulations does not apply to "parading" infractions, and could not be properly applied because it would have the effect of criminalizing conduct that is decriminalized by statute. Finally, the recent holding by this circuit that arrest for a civil offense states a cause of action under the Fourth Amendment gives this Court jurisdiction to hear all of plaintiffs' claims.

---

[5] We understand defendant's argument under the statutes prohibiting riot and road obstruction to be that the act of parading without a permit violates these statutes, because that argument is the only argument that would be relevant to the facts. But no named plaintiff or member of the plaintiff class "pull[ed] newspaper vending machines and debris into the street . . . broke windows, [or] spray-painted . . . buildings." Dfdt's Mem. at 2. The complaint makes no claim on behalf of, and seeks no relief for, anyone as to whom there was probable cause to believe that she or he committed such an act. Complaint ¶¶ 1, 11, 12. We do not understand defendant to claim that plaintiffs were subject to arrest because they were in the vicinity of non-plaintiffs who committed acts of vandalism because defendant properly acknowledges that "seizure must be supported by 'probable cause particularized with respect to that person.'" Dfdt's Mem. at 6, *quoting Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006).

3

The Council of the District of Columbia, the legislature here, adopted the Traffic Adjudication Act of 1978 in order to

> "establish a uniform and more expeditious system and [to] continue to assure an equitable system for the disposition of traffic offenses." It was the intent of the Council "to decriminalize and to provide for the administrative adjudication of certain violations" of motor vehicle and traffic regulations . . . .What has changed is that certain violations no longer constitute *criminal* offenses.

*District of Columbia v. Sullivan*, 436 A.2d 364, 365-66 (D.C. 1981) (alteration and emphasis in original; citation to D.C. Code omitted). This statutory scheme is now codified at D.C. Code §§ 50-2301.01 *et seq.*

In deciding whether the Double Jeopardy Clause attaches to violations of the statute, the District of Columbia Court of Appeals analyzed legislative history to determine if the statutory penalty was civil or criminal and found that the "intent of the Council in this instance is absolutely clear . . . . Both the Act and its legislative history explicitly state that the Council intended to 'decriminalize' these offenses."[6] *Purcell v. United States*, 594 A. 2d 527, 530 (D.C. 1991) (citation to legislative history omitted).

Offenses covered by the statutory scheme include, with limited specific exceptions, "all violations of statutes, regulations, executive orders or rules pertaining to parking, standing, stopping or *pedestrian* offenses . . . ." D.C. Code § 50-2303.01 (emphasis added). The Court of Appeals found the pedestrian traffic offense of "walking as to create a hazard" to be a noncriminal civil infraction for which violators may be issued a ticket and fined, but under the

---

[6] "The language of the Act reflects the same intent in several other places. For example, it refers to authorized penalties as 'civil fines.' It denotes persons charged with violations as 'respondents' rather than 'defendants.' It states that an order, entered pursuant to the [Bureau of Traffic Adjudication's] determination that a violation has occurred, 'shall be civil in nature.'" *Id.* (citations to District of Columbia Code omitted).

4

Fourth Amendment, not subjected to custodial arrest. *Barnett v. United States*, 525 A.2d 197, 198-99 (D.C. 1987).[7]

The limited exceptions to this scheme were carved out for serious offenses and offenders. D.C. Code § 50-2302.02 specifies exceptions for serious offenses, such as speeding and reckless driving, fleeing from the scene of an accident, driving with a revoked or suspended license, or, under 18 D.C.M.R. § 2000.2, for failure to obey any lawful order by a police officer. D.C. Code § 50-2303.02 gives exception for serious offenders, such as persons who had been assessed fines exceeding $750.00 during the preceding eighteen months. These offenses and offenders could be properly subject to criminal prosecution. *See also Morgan v. District of Columbia*, 730 A.2d 655, 656 (D.C. 1999) (upholding criminal conviction of a pedestrian for failure to obey a police officer's order to move out of the street). "Parading without a permit," on the other hand, is a decriminalized, civil infraction because it is not among the limited, specified exceptions to the statute.

The specific penalty for violating "parading without a permit" is found at 18 D.C.M.R. § 2603.1, which lists "civil infractions and their respective fines" as applied to pedestrians. This list includes "[p]arading without a permit," and specifies a $50 fine. Also included in this list of pedestrian infractions is "[p]ath of a vehicle [w]alk suddenly into" (with a fine of $10), the same violation which the court in *Barnett* found to be a decriminalized civil infraction and for which custodial arrest is a violation of the Fourth Amendment. *Barnett,* 525 A.2d at 199.[8] This list of civil infractions also specifically excludes "failure to obey" "[l]awful order or direction of

---

[7] The court held further that the offender could be taken into custody only if he failed to give his name and address, but that proof of identification was not required. *Id*.

[8] 18 D.C.M.R. § 2603.1 gives the citation to this infraction as § 2303.2, which is the same citation cited in *Barnett*. *Id.* at 199 n.5.

5

[p]olice officer," consistent with the Court of Appeals decision in *Morgan* that failure to obey a lawful order of a police officer is a criminal offense. *Morgan*, 730 A.2d at 656.

The regulation cited by defendant, 24 D.C.M.R. § 100.6, must be construed consistently with the statute and is invalid if it is contrary to the statute. *Chevron U.S.A. Inc., v. Natural Res. Def. Council, Inc.*, 467 U.S. 387, 842-43 (1984); *American Bankers Ass'n v. Connell*, 686 F.2d 953 (D.C. Cir. 1979) (invalidating banking regulations contrary to statute). This regulation here by its terms applies only to violation of a "provision of this title for which a specific penalty is not provided." As we have seen, the statute and regulation provide a specific penalty for violation of the prohibition against parading without a permit. That penalty is payment of a civil infraction fine of $50. 18 D.C.M.R. § 2603. Thus, § 100.6 by its terms does not apply to parading without a permit, and, if § 100.6 did apply, it would be invalid as contrary to the statute.

Plaintiffs contend also that the regulations governing public streets and safety already provide a specific sanction for "parades." This specific penalty is revocation of a parade permit. In 24 D.C.M.R. § 100, "General Provisions," § 100.4 states, "The Mayor shall have the right to revoke any permit given in accordance with the provisions of this title." This title includes five regulations governing "parades": § 705 ("PARADES: GENERAL PROVISIONS"), § 706 ("APPLICATION FOR A PARADE PERMIT"), § 707 ("ISSUANCE OF A PARADE PERMIT"), § 708 ("REVOCATION OF A PARADE PERMIT"), and § 709 ("CONTENTS OF A PARADE PERMIT"). In § 708.1, there is a specific provision for revoking a parade permit "if it is determined that the parade is being conducted in violation of the standards for issuance . . ." In § 708.4, there is another specific provision for revoking a parade permit: "[I]f, due to exigent circumstances, it is necessary to revoke a parade permit immediately prior to or during a parade, notice of the revocation may be made orally by the Metropolitan Police Department official

responsible for monitoring the parade." These regulations show that the intended sanction for "parading" under Title 24, which regulates public space and safety, is revocation of a parade permit. The word "conviction" is not found in these regulations, and no credible interpretation could conclude that "revocation of a parade permit" is a criminal conviction.

Clearly established law of the District of Columbia, as evidenced by plain statutory language, legislative history, regulations, and interpretations by the District of Columbia Court of Appeals, proves that "parading without a permit" is not an criminal offense which would subject violators to arrest. Because there is a specific penalty for parading infractions, it would be improper to apply a general criminal penalty contrary statutory intent; also, regulations governing public space and safety provide that the specific sanction for "parades" is revocation of a parade permit. Additionally, the District of Columbia's arrest of plaintiffs by officers of its police department for violation of this decriminalized pedestrian traffic infraction was in violation not only of District of Columbia law, but also in violation of the Fourth Amendment because arrest for a civil offense states a cause of action under the Fourth Amendment. *John Doe v. District of Columbia*, No. 04-7114 (D.C. Cir. Apr. 25, 2006) (arrest for unambiguous civil offense states cause of action under the Fourth Amendment).[9]

> II. **The Interpretation of the Parading Without a Permit Regulation Announced in Defendant's Memorandum is Incorrect, Because it is Contrary to Defendant's Own Previously Announced Interpretation, which Defendant Solemnly Proclaimed to this Court**

Apart from whether parading without a permit is a criminal or civil infraction, defendant's memorandum erroneously interprets the meaning of the regulation that prohibits

---

[9] The decision of our Court of Appeals in *Doe* forecloses defendant's third argument, which says "Even assuming that plaintiffs' claim is correct (*i.e.*, that the arrests here violated District law), that fact—alone—does not render the arrests impermissible under the Fourth Amendment." Dfdt's Mem. at 5, n. 4. Under *Doe*, arrest for a civil offense violates the Fourth Amendment.

7

parading without a permit. Defendant erroneously argues that the regulatory prohibition against parading without a permit was violated by plaintiffs "the moment they marched together"—not just if police gave them notice and opportunity to disperse and they continued to march in violation of the order—because "no such order or warning was necessary." Dfdt's Mem. at 7, n.6.

In *Barham v. Ramsey*, a pending class action[10] on behalf of persons arrested in Pershing Park on September 27, 2002, plaintiffs filed a motion for a preliminary injunction on August 18, 2004, to enjoin the District of Columbia for arresting or prosecuting persons for "parading without a permit." *Barham v. Ramsey*, No. 02-2283 (D.D.C. filed Nov. 19, 2002). As grounds for their motion, plaintiffs argued that "[p]arading without a permit is a civil infraction that was decriminalized by the Traffic Adjudication Act. The exclusive enforcement mechanism is through a ticket or 'notice of infraction' which is subject to administrative review." Pls.' Mot. For Prelim. Inj. at 16. Defendant District of Columbia opposed this motion, arguing, as it does here, that police could lawfully arrest for "parading without a permit" under 24 D.C.M.R. § 100.6. Def.'s Opp'n to Pls.' Mot. For Prelim. Inj. at 14.

At a hearing on the motion on September 27, 2004, Judge Sullivan asked the District's counsel, Assistant Attorney General Thomas Koger, if it was the District's position that "parading without a permit" is an arrestable offense. Mr. Koger confirmed that this was the District's position. Without departing from that position, however, Mr. Koger made a representation to the court that in the future the District of Columbia police would not arrest persons for "parading without a permit" without first giving notice and opportunity to disperse.

---

[10] Plaintiffs in *Barham* brought suit against the District of Columbia, the MPD, MPD Chief Charles Ramsey, and Mayor Williams.

8

Accepting that representation, and specifically relying upon it, Judge Sullivan denied plaintiffs' motion as moot. The Court's written order stated:

> Upon consideration of plaintiffs' Motion for Preliminary Injunction, which requests that the District of Columbia be enjoined from arresting demonstrators for "parading without a permit" *in the absence of any notice or opportunity to disperse*, and Defendant's recent representations in open court that the District will give notice and opportunity before making such arrests, it is by the Court hereby **ORDERED** that plaintiffs' Motion for a Preliminary Injunction Enjoining the District of Columbia From Arresting or Prosecuting Persons for Parading Without a Permit is **DENIED AS MOOT.**

*Barham v. Ramsey*, No. 02-2283 (D.D.C. Sept. 29, 2004) (order denying preliminary injunction) (emphasis in original).[11]

The District's representation to the Court in *Barham* was a formally announced, binding interpretation of the regulatory prohibition against parading without a permit. This interpretation said that one does not commit the infraction of "parading without a permit" unless one parades *after* police give notice that they will not permit the parade.

This interpretation implemented the District's previous, longstanding interpretation of the regulation saying that police have authority to allow a parade not only by advance written permit, but also by on-the-spot oral police permission or acquiescence. The District expressly informed the *Barham* Court of this interpretation, as part of explaining why issuance of a preliminary injunction was not necessary:

> In each of the years 2000-2002, the MPD responded to hundreds of demonstrations. In most cases the demonstration organizers had not obtained permits. Generally, the MPD responded by negotiating with the organizers to work out an impromptu timetable and route or location for the demonstration [citation to police official's declaration omitted]. Accordingly, even where demonstrators fail to comply with permitting requirements, the preference and most common response of the MPD is to deploy the resources necessary to allow the demonstration to proceed

---

[11] Plaintiffs will file a copy of this order by separate notice of filing.

9

>safely. These resources include personnel and equipment necessary to close streets and re-route traffic to allow demonstrators to march along public space. Commonly, such un-permitted demonstrations occur on days where there are not numerous and large-scale events occurring which place substantial demands on the District's resources generally and those of the MPD, in particular. This practice of facilitation of un-permitted demonstrations contradicts plaintiffs' speculation that 'disruption of spontaneous demonstration activity' might occur if this Court does not issue an injunction prohibiting arrests and/or prosecutions based, in whole or in part, on persons parading without a permit.

*Barham*, Def.'s Opp'n to Pls.' Mot. For Prelim. Inj. at 22-23.[12]

It is well established that the government is bound by its regulations, *Service v. Dulles*, 354 U.S. 363 (1957), including its own formal interpretations of its regulations, *Stinson v. United States*, 508 U.S. 36 (1993). Apart from whether parading without a permit is a civil or criminal regulatory infraction, under the government's own binding interpretation of the regulation, announced to the Court in *Barham*, one does not commit the infraction unless one parades *after* police give notice of their denial of permission. Because the police gave the plaintiffs here no notice that their parade would not be allowed, police had no probable cause to believe that plaintiffs were in violation of the regulatory prohibition.

### III. Defendant is Judicially and Equitably Estopped from Asserting that Plaintiffs were Subject to Arrest without Notice and Opportunity to Disperse, because by its Previous Contrary Representation to this Court, Defendant Avoided the Issuance of an Injunction that Would Have Barred Plaintiffs' Arrests

The District's representations to the Court in *Barham*, cited and quoted above, estop the District from claiming that plaintiffs were subject to arrest without being given notice and opportunity to disperse. Judicial estoppel applies because the District's statements were made to this Court and were the reason why the District defeated the *Barham* plaintiffs' motion for a preliminary injunction. Equitable estoppel applies because plaintiffs would have been

---

[12] Plaintiffs will file a copy of defendant's opposition to plaintiffs' motion for preliminary injunction by separate notice of filing.

10

beneficiaries of the preliminary injunction had the *Barham* court granted it. We explain these points in turn.

### A. Defendant is Estopped Under the Doctrine of Judicial Estoppel

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram* v. *Herdrich*, 530 U.S. 211, 227, n. 8 (2000). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis* v. *Wakelee*, 156 U.S. 680, 689 (1895). The purpose of this doctrine is "to protect the integrity of the judicial process," *Edwards* v. *Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," and preventing them from "playing 'fast and loose' with the courts," *Scarano* v. *Central R. Co.*, 203 F.2d 510, 513 (3rd Cir.1953). The U.S. Supreme Court applied this doctrine five years ago in the case of *New Hampshire v. Maine* to judicially estop New Hampshire from asserting a border that was contrary to the border it had claimed in previous litigation. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

In *New Hampshire v. Maine*, the U.S. Supreme Court articulated flexible factors to determine when the doctrine may be properly invoked:

> Courts have observed that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle[.]" Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding

11

> would create "the perception that either the first or the second court was misled[.]" Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (citations omitted).

Courts in this Circuit and the District of Columbia Court of Appeals have applied this doctrine previously. Although in this Circuit the Court in *Konstantinidis v. Chen* declined to apply the doctrine,[13] *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980), the Court nonetheless proceeded to define the criteria that must be met for judicial estoppel to apply: "(1) the same facts must be in issue, (2) the judicial body 'must have been led astray,' and (3) the assertions must not have been based on fraud, inadvertence, or mistake."[14] *Donovan v. U.S.P.S.*, 530 F. Supp. 894, 902 (D.C. 1981) (citing *Konstantinidis v. Chen*, 626 F.2d 933, 937, 939 (D.C. Cir. 1980)). Notwithstanding *Konstantinidis*, the Court in *Donovan v. U.S.P.S.* applied the doctrine in a federal question case, found these criteria were met, and judicially estopped the United States Postal Service ("USPS) from asserting a statute of limitation defense.[15] Recently, the District of Columbia Court of Appeals applied the doctrine of judicial estoppel in *Prince*

---

[13] The Court gave its reasons for doing so as jurisdiction based on diversity of citizenship, the District of Columbia Court of Appeals had not yet embraced the doctrine, and the Erie Doctrine prohibited the Court from deciding state law; the Court added that the doctrine of judicial estoppel was inconsistent with modern rules allowing for inconsistent pleadings and concluded "the judicial estoppel doctrine has no vitality in this jurisdiction." *Konstantinidis v. Chen*, 626 F.2d at 938 (D.C. Cir. 1980).

[14] The *Konstantinidis* Court also stated that that these criteria were not met in that case. *Id.*

[15] In other cases, the courts declined to apply the doctrine even if it were accepted in this jurisdiction because the criteria for meeting judicial estoppel were not present. *See United Mine Workers 1974 Pension v. Pittston Co.*, 984 F.2d 469 (D.C. Cir. 1993); *American Methyl Corp. v. EPA*, 749 F.2d 826 (D.C. Cir. 1984); *Smith v. District of Columbia*, 295 F. Supp. 2d 53 (D.D.C. 2003); *United States v. Quinn*, 403 F. Supp. 2d 57 (D.D.C. 2005).

*Constr. Co. v. District of Columbia Contract Appeals Bd.*, noting that the court had first recognized this doctrine in *Lassiter v. District of Columbia*, 447 A.2d 456 (D.C. 1982). *Prince Constr. Co. v. District of Columbia Contract Appeals Bd.*, 892 A.2d 380 (D.C. 2006) (finding contractor estopped from making a claim in an administrative forum after it had entered into a consent decree).[16]

      Plaintiffs contend that it would be proper for this Court to apply the doctrine of judicial estoppel in the instant case because reservations about the vitality of this doctrine expressed by this Circuit in *Konstantinidis* are no longer relevant. First, jurisdiction here is based on a federal question, so questions about the application of this doctrine to diversity of citizenship cases are not present. *Konstantinidis v. Chen*, 626 F.2d 933, 937-38 (D.C. Cir. 1980). Second, as the court stated in *Prince Constr. Co. v. District of Columbia*, the Court of Appeals of the District of Columbia has recognized and applied this doctrine since 1982, so there can be no question about the propriety of applying this doctrine in a matter concerning state law. *Prince Constr. Co. v. District of Columbia Contract Appeals Bd.*, 892 A.2d 380 (D.C. 2006). Third, because the U.S. Supreme Court decided *New Hampshire v. Maine* solely on the basis of this doctrine, there can be no lingering doubt about its validity in the modern age of pleading. *New Hampshire v. Maine*, 532 U.S. 742 (2001).

      Finally, because the factors for judicial estoppel suggested in *Konstantinidis* (as stated in *Donovan v. U.S.P.S.*, 530 F. Supp. 894, 902 (D.C. 1981) and the factors given by the Court in *New Hampshire v. Maine* are not the same, plaintiffs contend that the factors stated by the U.S. Supreme Court should be applied here because they are more recent, and because these same factors were used by the District of Columbia Court of Appeals in *Prince Constr. Co. See*

---

[16] The court also listed in note 6 the other cases in which it had applied this doctrine. *Id.*

*Prince Constr. Co. v. District of Columbia Contract Appeals Bd.*, 892 A.2d 380 (D.C. 2006). These factors are: (1) a party's position must be clearly inconsistent with its earlier position, (2) the party has succeeded in persuading a court to accept that party's earlier position, and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

Here, defendant's position that "no order or warning" by the MPD was necessary before commencing arrests for "parading without a permit"[17] is plainly contrary to the position that it took in open court at a hearing on the *Barham* plaintiffs' motion for a preliminary injunction. During that hearing, counsel for the District of Columbia, Mr. Thomas Koger, assured the Court that the District would no longer arrest for parading without a permit without first giving notice and opportunity to disperse. The Court was persuaded by that position and incorporated it in a written order. *Barham v. Ramsey*, No. 02-2283 (D.D.C. Sept. 29, 2004) (order denying preliminary injunction). Here, the District seeks to deprive plaintiffs of compensation for the injuries it inflicted on them by playing fast and loose with the courts—taking a position with one judge and an opposite position with another. The Court should preclude defendant from reaping this unfair advantage to the detriment of plaintiffs' just claims.

### B. Defendant is Estopped Under the Doctrine of Equitable Estoppel

Plaintiffs contend that the doctrine of equitable estoppel applies here in addition, or in the alternative to, the doctrine of judicial estoppel. This Circuit has applied the doctrine in previous cases and the District of Columbia Court of Appeals has noted it approvingly as well.[18] The

---

[17] Dfdt's Mem. at 7, n.6.

[18] *See generally Prince Constr. Co. v. District of Columbia Contract Appeals Bd.*, 892 A.2d 380 (D.C. 2006).

elements of equitable estoppel are: "there was a 'definite' representation to the party claiming estoppel; that the latter 'relied on its adversary's conduct in such a manner as to change his position for the worse'; and that the reliance was 'reasonable.'" *Graham v. SEC*, 222 F.3d 994, 1007 (D.C. Cir. 2000) (citing *Heckler v. Community Health Servs.*, 467 U.S. 51, 59 (1984) (these elements were cited also in *Flynn v. Interior Finishes, Inc.*, No. 04-00590, 2006 U.S. Dist. LEXIS 21527, at *22 (D.D.C. Mar.23, 2006)).[19]

Here, Assistant Attorney General Thomas Koger, as counsel for defendant District of Columbia, made solemn representations not just to *Barham* plaintiffs, class members and their counsel, but to Judge Sullivan that in the future the MPD would not arrest persons for "parading without a permit" without first giving them notice and opportunity to disperse. Relying on those representations, the Court denied as moot plaintiffs' motion for a preliminary injunction enjoining the District from arresting or prosecuting persons for "parading without a permit." The Court's order specifically made reference to "Defendant's recent representations in open court that the District will give notice and opportunity before making such arrests . . . ." *Barham v. Ramsey*, No. 02-2283 (D.D.C. Sept. 29, 2004) (order denying preliminary injunction). Plaintiffs here, who are "persons" and members of the public who would benefit from this representation, were arrested while demonstrating or, in the case of plaintiff Singer, while in the vicinity of a demonstration, even though the police gave them no order or opportunity to disperse. Complaint at ¶¶ 5-9 and 26-29. Plaintiffs' reliance on Mr. Koger's representation was reasonable because as legal counsel for the defendant, he spoke for the District and gave its official position in open

---

[19] The Court in *Konstantinidis* also required the party seeking equitable estoppel to have been "an adverse party in the prior proceeding." *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980). Plaintiffs here were intended beneficiaries of the order in *Barham* because that motion and order applied to "persons," not merely the *Barham* plaintiffs and class members. *Barham v. Ramsey*, No. 02-2283 (D.D.C. Sept. 29, 2004) (order denying preliminary injunction).

15

court to Judge Sullivan. On these facts, the defendant District of Columbia must be equitably estopped from asserting any contrary position now.

Plaintiffs can properly claim estoppel against defendant. "It is clear that 'the fundamental principle of equitable estoppel applies to government agencies, as well as private parties' even though "traditionally there has been a reluctance to apply the doctrine against the government." *Grumman Ohio Corp. v. Dole*, 776 F.2d 338, 347 (D.C. Cir. 1985) (citations omitted). But "[t]he rule against government estoppel by virtue of employee representations appears to apply only where fulfillment of the representations would be contrary to law . . . .[I]t is clear to this Court that there may be circumstances in which an agency may be bound by the representations of its employees to members of the public." *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 82-83 (D.D.C. 2003) (citations omitted).

Here, Mr. Koger was no low-level agency employee giving advice to a member of the public on the telephone. Mr. Koger was the defendant's legal counsel and official representative of the District of Columbia. When he spoke, he spoke to the Court and—because the proceeding was in open court—he spoke to the public as well. Fulfillment of Mr. Koger's representations would not be contrary to law because his representations were the defendant's position on the law.

**IV.    Defendant's Interpretations of the Criminal Code and Penalty for Parading Without A Permit are Prohibited by the Rule of Lenity**

Defendant erroneously argues that "even if 'parading without a permit' is only a civil infraction not subjecting violators to custodial arrest," persons who parade without a permit are *ipso facto* guilty of rioting, D.C. Code § 22-1322, and obstructing a public road, § 22-3320. Dfdt's Mem. at 10. Defendant's argument is implausible. It says that "parading" is a crime and that a permit to parade is a permit to commit a crime. Because the District of Columbia Council

16

by statute intentionally decriminalized the act of parading without a permit, persons who merely parade in the street are not guilty of criminal code violations. Defendant also asserts erroneously that a general criminal penalty applies to "parading" instead of a specific penalty of fine for a civil infraction. Defendant's interpretations of the criminal code and penalty for "parading without a permit" are prohibited by the rule of lenity.

> The rule of lenity
>
> is founded on two policies that have long been part of our tradition. First, "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear. Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should."

*United States v. Bass*, 404 U.S. 336, 348 (1971) (citations omitted). In practice, lenity means that a court may not interpret an ambiguous criminal statute so as to increase the penalty for its violation. When there is ambiguity that cannot be resolved, a court will favor the defendant and apply the less harsh penalty.[20] *Ladner v. United States*, 358 U.S. 169 (1958). *See United States v. West*, 393 F.3d 1302 (D.C. Cir. 2005) (reversing enhanced sentence); *United States v. Ray*, 21 F.3d 1134, 1140 (reversing conviction because of flawed jury instruction); *Nofziger v. United States*, 878 F.2d 442, 454 (D.C. Cir. 1989) (reversing conviction for lobbying in violation of government ethics statute and imposing *mens rea* requirement). "The rule of lenity, however, applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *United States v. Shabani*, 513 U.S. 10, 17 (1994).

---

[20] Lenity applies in some circumstances to civil penalties. *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1262 (D.C. 1990).

Plaintiffs have argued throughout this Opposition that their conduct—"parading without a permit"—was unambiguously decriminalized by the legislature, and interpretations of the governing statute and regulations by the D.C. Court of Appeals affirm this position. Plaintiffs' conduct, therefore, cannot be deemed a civil infraction under one statute and criminal under others. A statutory framework with conflicting provisions expressly saying that particular conduct both is and is not a criminal offense—the framework envisioned by defendant—would fail to provide fair notice of what the law proscribes, contrary to the rule of lenity. District of Columbia criminal code provisions therefore must be construed not to prohibit the act of merely parading without a permit. Such construction is particularly important in the context of First Amendment activity. *See generally Nofziger v. United States*, 878 F.2d at 453 ("While lobbying has been subjected to increased regulation, it is not inherently dangerous and, in fact, at least insofar as it constitutes self-representation, it has been found constitutionally protected.")

Further, lenity applies not only to statutes prohibiting conduct deemed criminal, but also to the penalties for that conduct. *United States v. Coachman*, 727 F.2d 1293, 1300 n.26 (D.C. Cir. 1984). When "the statute appears ambiguous, providing two different sets of penalties for the same offense . . . [and] the ambiguity remains unresolved, the rule of lenity suggests imposition of the lower sentence." *United States v. Brisbane*, 367 F.3d 910, 912 (D.C. Cir. 2004). Here, plaintiffs have argued that the only penalty applicable to "parading" infractions is the specific penalty found at 18 D.C.M.R. § 2603.1. The defendant, however, claims that another, general penalty applies under public space and safety regulations at 24 D.C.M.R. §

100.6.[21]  To the extent that there is any ambiguity regarding the applicable penalty, the principle of lenity dictates that the lesser civil, not criminal, sanction be applied here.  *Id.*

The policies underlying the rule of lenity—fair notice of what is criminal, and unambiguous penalty for violations—mandate that the defendant's interpretations of the criminal code and applicable sanction be rejected.

### CONCLUSION

For the foregoing reasons, the District of Columbia's Motion to Dismiss should be denied.[22]  A proposed order accompanies this opposition.

Respectfully submitted,

/s/ Arthur B. Spitzer
Arthur B. Spitzer, D.C. Bar No. 235960
Fritz Mulhauser, D.C. Bar No. 455377
American Civil Liberties Union
of the National Capital Area
1400 20th Street, NW, #119
Washington, DC 20036
202/457-0800

/s/ Daniel M. Schember
Daniel M. Schember, D.C. Bar #237180
Susan B. Dunham, D.C. Bar # 362378
D.C. Chapter, National Lawyers Guild
Gaffney & Schember, PC
1666 Connecticut Avenue, NW, Suite 225
Washington, DC 20009
202/328-2244

May 10, 2006                                                        Counsel for Plaintiffs

---

[21] This Court owes "no deference to the Government's construction of a criminal statute." *United States v. McGoff*, 831 F.2d 1071, 1084 n.22 (D.C. Cir. 1987).

[22] We reserve to another day, if necessary, our argument saying that if defendant's interpretation of District of Columbia law is correct, then District law violates the First Amendment by failing to provide sufficient notice—indeed by providing contradictory notice—of what peaceful, political assembly in the public streets is prohibited.  See n. 2, *supra*.  Defendant has not sought to dismiss plaintiffs' First Amendment claim, so plaintiffs have no obligation to argue that claim now.