## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|                                     |   |                                      |
|-------------------------------------|---|--------------------------------------|
| JEFFREY BARHAM, *et al.*,           | : |                                      |
|                                     | : |                                      |
|         Plaintiffs,                 | : |                                      |
|                                     | : |                                      |
|     v.                              | : | Civ. Action No. 03-00767 (EGS) (AK)  |
|                                     | : |                                      |
| CHARLES H. RAMSEY, et al.,          | : |                                      |
|                                     | : |                                      |
|         Defendants.                 | : |                                      |

_____ :

## DEFENDANT DISTRICT OF COLUMBIA'S MEMORANDUM
## OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR A PRELIMINARY INJUNCTION ENJOINING THE
## DISTRICT OF COLUMBIA FROM ARRESTING OR PROSECUTING
## <u>PERSONS FOR PARADING WITHOUT A PERMIT</u>

### <u>Preliminary Statement</u>

Defendant, District of Columbia, respectfully submits this opposition to Plaintiffs'
Motion For A Preliminary Injunction Enjoining The District Of Columbia From
Arresting Or Prosecuting Persons For Parading Without A Permit (Pls' Arrest Mot.").
Plaintiffs argue that they are entitled to such an injunction because "parading without a
permit" is merely a civil offense, which does not provide for the arrest of an offender;
accordingly, in plaintiffs' view, arrests of demonstrators violate their First Amendment
rights.  Upon this reasoning they claim entitlement to a preliminary injunction.  In fact,
Pls' Arrest Mot. should be denied for each or any of the following reasons.

First, plaintiffs' motion turns upon the interpretation of local District of Columbia
law, as to whether "parading without a permit" is an arrestable offense.  As the Court of
Appeals for the District of Columbia Circuit has recently emphasized in *JMM Corp. v.*

*District of Columbia*, 2004 U.S. App. LEXIS 17015 (D.C. Cir. Aug. 17, 2004), this Court should abstain from deciding this question of local law.

Second, plaintiffs lack standing to pursue injunctive relief premised upon hypothetical arrests being made unlawfully upon based an individual violating the District of Columbia's municipal regulations prohibiting "parading without a permit," including 24 D.C.M.R. §§ 100.6, 705.1, and 707.7.

Even assuming, for the purposes of argument that this Court were not to abstain from deciding this matter premised upon a question of local law and were to hold that plaintiffs enjoy standing to pursue an injunction, plaintiffs have failed to satisfy their burden to establish any of the four elements they must demonstrate to obtain preliminary injunctive relief.  Plaintiffs' motion is premised upon their contention that persons may not be arrested for traffic offenses in Title 50 of the D.C. Code and Title 18 of the DCMR based upon parading without a permit because those provisions permit only the imposition of civil penalties for offenses.  Pl. Arrest. Mot. at 1-2, 16.  This argument suffers from two flaws.  The first of these is that the District of Columbia may lawfully arrest and prosecute the conduct of parading without a permit pursuant to the District's Public Space And Safety regulations, set forth in 24 D.C.M.R. §§  100.6, 705.1, and 707.7.   The other flaw is that the Court of Appeals for the District of Columbia Circuit has upheld the constitutionality of arrests for civil infractions, as has this Court. Additionally, pursuant to the reasoning of the D.C. Circuit in *Barwood v. District of Columbia*, 202 F.3d 290, 294 (D.C. Cir. 2000), plaintiffs' motion does not present a constitutional claim. For these reasons, plaintiffs do not enjoy a substantial likelihood of success on the merits of their claim.

Nor do plaintiffs face a risk of irreparable harm absent injunctive relief. Plaintiffs have not challenged the validity of the District's regulations that prohibit "parading without a permit." (In fact, neither plaintiffs' motion, nor their memorandum of points and authorities even mentions 24 D.C.M.R. §§ 100.6, 705.1, or 707.7.) The regulations merely provide for the application of reasonable and valid time, place, and manner parameters upon demonstrations in the District. To avoid even a modest risk of arrest for parading without a permit, plaintiffs need only comply with District law, and obtain permits as required thereby. Plaintiffs alleged risk of irreparable harm is self-imposed since they are merely required to comply with municipal regulations that they have not challenged.

Moreover, the District would suffer substantial harm if the requested injunction were to issue. The injunction would foreseeably undermine the District's ability to coordinate demonstrations, ensure public safety and maintain the availability of efficient emergency services and evacuation routing. Further, such an order would unnecessarily denigrate Home Rule. These same factors weigh against this Court issuing such an injunction because it would disserve the public, generally. Therefore, plaintiffs' sought preliminary injunction would not vindicate free speech rights; on the contrary, the overbroad injunction would undermine the District's ability to facilitate demonstrations and to provide emergency services to the District's residents, visitors, and businesses. For any and all of these reasons, plaintiff's motion should be denied.

## Statement Of Facts Relevant To This Motion

Plaintiffs seek "issuance of a prohibitory injunction that the District of Columbia be enjoined from unlawfully interfering with free speech activities by arresting

demonstrators (and those associating with or in proximity to demonstrators) on the basis

or charge that such persons were engaged in "parading without a permit," a non-

arrestable civil infraction.  Pl. Arrest Mot. at 1.  In support of their motion, plaintiffs

argue that on September 27, 2002, plaintiffs (in this and other related cases) were

unlawfully arrested "in whole or in part, on the basis that some or all arrestees were

allegedly 'parading without a permit, and that on April 15, 2000 nearly 700 protestors

had been arrested on the "charge or basis" of "parading without a permit."  Pl. Arrest

Mem. at 2.  Plaintiffs also seek to support their motion based on the investigative report

produced by the Metropolitan Police Department ("MPD"), which states that under the

circumstances of the mass arrest made in Pershing Park on September 27, 2002, the

charge of "parading without a permit" would have been more appropriate than the charge

actually used: "failure to obey."  Pl. Arrest Mem. at 2, 14.  Plaintiffs argue that "parading

without a permit" is merely a non-arrestable civil infraction, and that, accordingly, arrests

made in response to violations of local law prohibiting "parading without a permit are

necessarily unlawful.  Further, they argue, that to the extent that the District were to or

does actually arrest persons for parading without a permit, the arrests, accordingly, would

or do violate such persons First Amendment rights.  Pl. Arrest Mem. at 15-16.  Finally,

plaintiffs argue that even the continued ability to enforce municipal regulations

prohibiting parading without a permit violates the First Amendment because of its

potential or actual chilling effect.  Pl. Arrest Mem. at 15.

However, the record defeats plaintiffs' motion.  Plaintiffs' submissions

demonstrate that the arrests of September 27, 2002 of which they complain were not

premised upon "parading without a permit" in violation of the District's Public Safety

And Space Regulations, and/or applicable traffic regulations.  Further, as the Court has

been informed through the parties filings and through events of which the Court may take

judicial notice the District of Columbia has undertaken substantial remedial measures,

obviating the existence of any "exceptional circumstances" that would support issuance

of an injunction.

## ARGUMENT

### I    This Court Should Abstain From Deciding Plaintiffs' Motion Which Turns Upon A Question Of Local Law

"[F]ederal courts must abstain from ruling on a suit where state law (or in this case,

District of Columbia law) is uncertain, particularly when the state court's clarification of

its own law could make a federal court's constitutional ruling unnecessary." *Doe I*, at 9

(citing *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496 (1941)); *see also JMM Corp.*

*v. District of Columbia*, 2004 U.S. App. LEXIS 17015, [*20] (recognizing that D.C.

Circuit has applied *Pullman* abstention to District of Columbia courts).   *Pullman*

abstention is "appropriate to our federal system whereby the federal courts, exercising a

wise discretion, restrain their authority because of scrupulous regard for their rightful

independence of the state government and for the smooth working of the federal

judiciary." *Id.* at [*21] n.19 (quoting *Pullman*, 312 U.S. at 501)(internal quotation marks

omitted in original).  The United States Supreme Court has observed that where a federal

court interprets unsettled local law, "no matter how seasoned the judgment of [the federal

court] may be, it cannot escape being a forecast rather than a determination." *Pullman*,

312 U.S. at 499.

Plaintiffs' motion turns on whether the MPD may arrest individuals for the offense

of "parading without a permit" in violation of *either* the District's Public Space And

Safety regulations, set forth in 24 D.C.M.R. §§  100.6, 705.1, 707.7 or traffic regulation

provisions of Title 50 of the D.C. Code and Title 18 of the DCMR.  However,

plaintiffs cite no authority for the proposition that the MPD may not lawfully arrest

persons for violating those Public Space And Safety regulations.  In fact, plaintiffs do not

even mention 24 D.C.M.R. §§  100.6, 705.1, or 707.7 in their motion or supporting

memorandum.  (Plaintiffs first mention § 705, et seq., in their proposed order.)

Accordingly, although plaintiffs – at best --  presume that arrests for "parading without a

permit" are unlawful, they have not shown that that issue is "settled" – at least not in their

favor.[1]

---

[1]      We note that aside from their citations in fn.1 to authority dealing only with
traffic offenses, plaintiffs do not offer any support for their proposition that the offense of
"parading without a permit" *generally* is a non-arrestable offense than hearsay attributed
to former Office of the Corporation Counsel spokesperson, Leigh Slaughter, Pl. Arrest
Mem. at 9, 11, and undersigned counsel's following response to the Court's April 6, 2004
hearing:

> The Court:      What was the offense:?
> Mr. Koger:      They varied, Your Honor.  There would be parading
> without a permit, which in the context of engaging on boisterous conduct
> and –
> The Court:      Parading without a permit, that's not an arrestable offense
> though, is it?
> Mr. Koger:      However, Your Honor –
> The Court:      Why don't you just answer it?
> Mr. Koger:      No, Your Honor, we would not arrest for parading without
> a permit.
> The Court:      Right.  So that's not a basis to arrest.
> Mr. Koger:      We would arrest for unlawful assembly of which parading
> without a permit is a component.   . . .

Undersigned counsel respectfully apologizes to the extent that his assessment the
of viability of arrest as an enforcement measure for the offense of "parading without a
permit "misstated the law, as informed by *Atwater v. City of Lago Vista*, 532 U.S. 348-54
(2001); *Hutchins v. District of Columbia*, 188 F.3d 531 (D.C. Cir. 1999); *In re Johnnie
Barnard*, 455 F.2d 1370 (D.C. Cir 1971); *Chortek v. City of Milwaukee*, 356 F.2d 740 (7th
Cir. 2004; *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002); *Williams v. Jaglowski*, 269
F.3d 778 (7th Cir. 2001); *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 10th
Cir. 1999);  *Gooden v. Howard County*, 954 F.2d 960 (4th Cir. 1992); *Doe I;   In re*

In addition, plaintiffs ask this Court to enjoin the prosecution of any charges for "parading without a permit," expressly including those for violation of 24 D.C.M.R. § 705, *et seq*.  (Pls Proposed Order re: Pls Arrest Mot.)  Accordingly, plaintiffs move this Court to issue an injunction that implicates the jurisdiction of the District of Columbia courts, and does so even where the prosecution arises from a non-arrest  issuance of a citation.  (*Id.*)  In essence, plaintiffs move this Court to "preliminarily" invalidate District of Columbia regulations, which plaintiffs do not even contend are facially unconstitutional.  Abstention is appropriate where statutes or regulations are not challenged as facially unconstitutional.  *See Douglas v. City of Jeannette*, 319 U.S. 157 (1943).

Finally, "*Pullman* abstention is based on considerations of both equity and comity." *JMM Corp.*,  2004 U.S. App. LEXIS 17015, [*20].  The D.C. Circuit Court has very recently emphasized that that Court has long respected and effectuated the considerations of comity in applying abstention doctrines to the District of Columbia.  *Id.* at [*22]-[*23]. The considerations of equity also justify the application of *Pullman* abstention to the District's court system.  *Id.* at [*20], [*23].   Upon the circumstances of this request for preliminary injunctive relief, this Court should abstain from deciding plaintiffs' motion.[2]

---

*Marrhonda G.*, 613 N.E. 658 (N.Y. 1993); *Commonwealth v. O'Connor*, 546 N.E.2d 336 (Mass. 1989).

[2]     Plaintiffs represent that they had determined to move for a such preliminary injunction as of July 7, 2004, when they requested the District's consent, and that plaintiffs knew for more than a month before they filed this motion that the District would not consent to the issuance of such an injunction.  Even so, plaintiffs have more than sufficient time to present this issue to the proper forum, the D.C. Superior Court for a timely decision on the merits of the motion and, if necessary, an emergency appeal.

II.    **Plaintiffs Lack Standing To Obtain The Injunction They Seek**

At the outset, the Court must ascertain whether plaintiffs enjoy standing to pursue their application for and to be awarded the injunction they seek. Plaintiffs fail to establish standing to obtain injunctive relief because they cannot "establish the basic requisites of the issuance of equitable relief in these circumstances – the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974). A plaintiff's standing to obtain injunctive relief depends upon her having suffered an unlawful injury coupled with a sufficient likelihood of the *recurrence* of the same injurious conduct to the same plaintiffs. *See Lyons*, 461 U.S. at 110; *Rizzo v. Goode*, 423 U.S. 362, 373 (1976); *O'Shea*, 414 U.S. at 496-97.

We note at the outset that plaintiffs have not challenged the validity of the District's permitting regulations. Instead, they dispute the validity of making arrests for violation of those regulations. Further, none of the plaintiffs claims that he or she has been arrested for parading without a permit in an instance in which he or she actually had a permit. Therefore, there is no record support for an argument that the applicable regulations have been enforced through arrests when those regulations had not, in fact, been violated.

In fact, the record does not reflect that any of the plaintiffs has actually been arrested simply for parading without a permit or allegedly violating 24 D.C.M.R. § 705, *et seq.*, at all. The record does reflect that the Assistant Chiefs ("A/C's") who determined that arrests should be made at Pershing Park and and Vermont Avenue and K Street did

---

Plaintiffs' delay in pursuing an injunction does not properly weigh against this Court's abstention.

take into account that the demonstrators had not obtained required permits. However, the record in this motion makes clear that A/C Newsham believed that he had probable cause to arrest the persons in Pershing Park for offenses he understood them to have committed before they entered the park. (Declaration of Defendant A/C Peter J. Newsham, annexed to Pl. Arrest Mem. at ¶¶ 18, 19, 23; Declaration of Charles H. Ramsey annexed to Pls. Arrest Mem. at ¶¶ 15, 17-18). Those included arrestable, criminal offenses. A/C Newsham, as the record in this case demonstrates, (particularly, as established through defendants' dispositive motion filings, incorporated by reference) did not arrest the persons in Pershing Park for simply parading without a permit.

The record also reflects that A/C Brian Jordan considered that hundreds of permit-less demonstrators, who had gathered in Franklin Square, and then simply poured *en masse* into the traffic along K Street, during a Friday morning rush hour, were snake-marching through the roadway in various directions, and that that unlawful conduct by the demonstrators created a danger to themselves and others. (Statement of A/C Brian Jordan, dated Oct. 1, 2002, annexed to Pls Arrest Mem. at 1.)

Parading without a permit is a violation of 24 DCMR §§ 705.1 and 707.7. When committed in combination with loud and boisterous talking or other disorderly conduct, or crowding, obstructing, or incommoding the free use of a street, parading without a permit may, in fact, subject paraders in groups of three or more to arrest and prosecution for unlawful assembly. *See, e.g., Kinoy v. District of Columbia*, 130 U.S. App. D.C. 290, 400 F.2d 761 (D.C. Cir. 1968); *Odum v. District of Columbia*, 565 A. 2d 302 (D.C. 1989).

The demonstrators' actions considered by A/C Jordan satisfied the elements of the offense of unlawful assembly,  DC Code §22-1307, not just "parading without a permit."[3]  Accordingly, observation of the actions that A/C Jordan reported in his statement in the record provided probable cause to arrest upon an offense other than parading without a permit.  The record further demonstrates that the plaintiffs were not arrested for "parading without a permit."

The record reflects that none of the demonstrators was arrested for or charged with "parading without a permit" or for alleged violations of 24 D.C.M.R. § 705, *et seq.* Nevertheless, plaintiffs propose an order that would prohibit the District, through it officers and officials from "[b]asing decisions to arrest or arresting persons for 'parading without a permit' or for alleged violations of 24 D.C.M.R. § 705, *et seq.*"  Pls' Proposed Order.  Because they seek an injunction prohibiting conduct which has not caused them injury in the past and because they have made no showing that the MPD will arrest demonstrators for "parading without a permit," as opposed to a variety of other, appropriate charges, plaintiffs are unable to establish standing.  *See Lyons*, 461 U.S. at 110; *Rizzo v. Goode*, 423 U.S. 362, 373 (1976); *O'Shea*, 414 U.S. at 496-97. Accordingly, Pls Arrest Mot. should be denied.

---

[3] DC Code §22-1307  provides, in pertinent part,  as follows:

§ **22-1307.** Unlawful assembly; profane and indecent language

It shall not be lawful for any person or persons within the District of Columbia to congregate and assemble in any street, avenue, alley, road, or highway, or in or around any public building or inclosure, or any park or reservation . . . and engage in loud and boisterous talking or other disorderly conduct, or to . . . crowd, obstruct, or incommode, the free use of any such street, avenue, alley, road, highway, or any of the foot pavements thereof . . .; it shall not be lawful for any person or persons to . . . engage in any disorderly conduct in any street, avenue, alley, road, highway, public park or . . . in any

III.    **Plaintiffs' Motion Should Be Denied Because Plaintiffs Failed In Their
Burden To Demonstrate the Four Prerequisites For Injunctive Relief**

"[T]he principles of equity . . . militate heavily against the grant of an injunction

except in the most extraordinary circumstances." *Rizzo v. Goode*, 423 U.S. 362, 381

(1976).[4]  For the Court to grant extraordinary injunctive relief, Plaintiff must clearly show

(1) that there is a substantial likelihood of success on the merits of the case, (2) that

irreparable harm would occur to Plaintiff absent such relief, (3) that an injunction would not

substantially harm the rights of the District, and (4) that an injunction is in the public

interest.  *Washington Metro. Area Transit Comm'n v.Holiday Tours*, 559 F.2d 841, 843

(D.C. Cir. 1971).

As explained below, plaintiffs' motion fails to satisfy any of the four factors and

should, therefore, be denied.

A.    **Plaintiffs Fail To Establish The Necessary Substantial
Likelihood of Success On The Merits Of Their Claim**

---

other public place . . . under a penalty of not more than $ 250 or imprisonment for not
more than 90 days, or both for each and every such offense.

[4]        This is especially appropriate in instances such as this, where the municipal
government defendant has undertaken to investigate and remedy the causes of
complained-of governmental acts.  This Court is aware through filings by the District
Defendants and the *Abbate* plaintiffs that MPD has investigated the events of the
September 27, 2002 Pershing Park arrests and resultant detentions and has initiated
reforms as a result of that investigation.  Those filings have also informed the Court that
the D.C Council has submitted a large number of recommendations to Mayor Williams
regarding remedial measures related to the events of September 27, 2002, and that Mayor
Williams has embraced many of those recomendations.  Further, the Court may take
judicial notice that D.C Councilmember Patterson has proposed legislation as a result of
the events of September 27, 2002, and the D.C. Council's investigation thereof.  These
actions in response to the Pershing Park incident argue persuasively against an injunction.
*See Washington Free Community v. Wilson*, 157 U.S. App. D.C. 360, 484 F.2d 1078,
1082 (1973) (denying injunctive relief not upon jurisdictional mootness, but upon
prudential considerations counseling "self-denying discretion"); s*ee also Rizzo v. Goode*,
423 U.S. 362, 381 (1976).

Although plaintiffs' motion asks this Court to prohibit conduct by the District Defendant, the requested injunction is predominately mandatory in nature, in that it would alter the *status quo* between the parties. The disturbance of the *status quo* entailed by a mandatory preliminary injunction renders such relief "extraordinary," requiring the movant to show that the facts and the law "clearly favor" his position, rather than that there is merely a strong likelihood of success on the merits. *Columbia Hosp. for Women Found., Inc. v. The Bank of Tokyo-Mitsubishi, Ltd.,* 15 F. Supp. 2d 1, 4-5 (D.D.C. 1997), *aff'd. on other grounds,* 1998 U.S. App. LEXIS 7871 (D.C. Cir. 1998) (quoting *Dorfmann v. Boozer,* 414 F.2d 1168, 1173 (D.C. Cir. 1969)). This is the appropriate standard to which plaintiffs' claims should be held. However, even under the less stringent standard of "strong likelihood" plaintiffs fail to justify injunctive relief.

Plaintiffs claim that they enjoy a substantial likelihood of success on the merits of their claim upon which this motion is based: that arrests for "parading without a permit" are unlawful under the First and Fourth Amendments. Pl. Arrest Mem at 15-16. In fact, plaintiffs do not present and cannot prevail upon First or Fourth Amendment claims, as a matter of law. *See Barwood*; *Doe I and II*. This is because plaintiffs' analysis of the issue underlying their purported constitutional claims – whether "parading without a permit" is an arrestable offense under District of Columbia law -- is fatally incomplete and erroneous. Therefore, plaintiffs lack a substantial likelihood of success on the merits of their claim that "parading without a permit" is not an arrestable offense, and that such arrests violate the Constitution. Accordingly, plaintiffs' motion should be denied.

1.      **Parading Without A Permit Is An Arrestable Offense And,
        Accordingly, Arrests Made Upon That Charge Would Not Be
        Unconstitutional**

Plaintiffs' claim that they enjoy a substantial likelihood of success upon either a

First or Fourth Amendment claim hinges upon their incomplete and flawed statement of

District of Columbia law.  They argue that parading without a permit is an offense that

the D.C. Council decriminalized through its adoption of the Traffic Adjudication Act of

1978, D.C. Code § 50-2301.01.[5]  Pl. Arrest Mem., at 1-2, n.1, 16.  In doing so, however,

plaintiffs ignore that that District of Columbia law concerning Public Space And Safety

also prohibits "parading without a permit."  *See* 24 D.C.M.R. §§ 705, 707.7.[6]

---

[5]      D.C. Code § 50-2301.01. Purposes [Formerly § 40-601] provides as follows:

It is the intent of the Council of the District of Columbia (hereinafter referred to as the
"Council") in the adoption of this chapter to decriminalize and to provide for the
administrative adjudication of certain violations of Title 32 of the District of Columbia
Rules and Regulations (Motor Vehicle Regulations for the District of Columbia), and
certain offenses codified in Title 50 of the District of Columbia Code, in the Highways
and Traffic Regulations of the District of Columbia, and in Chapter III of Title 14 of the
District of Columbia Rules and Regulations (relating to the operation of taxicabs), and to
provide for the civilian enforcement of parking infractions, and thereby to establish a
uniform and more expeditious system and continue to assure an equitable system for the
disposition of traffic offenses.

[6] 24-705. PARADES: GENERAL PROVISIONS

705.1 For purposes of this chapter, a "parade" is any formation, march, or procession
consisting of persons, animals, vehicles, or a combination of persons, animals, and
vehicles traveling in unison and with a common purpose upon any public street, highway,
alley, sidewalk, or other public way, within the territorial jurisdiction of the Metropolitan
Police Department, in a manner that would normally be in violation of any provision of
DCMR Title 18 "Vehicles and Traffic," or any other applicable law or regulation.

705.2 A permit shall be issued for a parade when, after consideration of the
application and other information that may otherwise be obtained, it appears that the
parade will meet the following criteria:

(a) The conduct of the parade will not substantially interrupt the safe and
orderly movement of other vehicular and pedestrian traffic contiguous to its
route;

Title 24 D.C.M.R. §705.1 defines "parade" to include demonstrations and marches, such as plaintiffs represent they contemplate in Pl. Arrest Mem, at 3-5. Title 24 D.C.M.R. § 707.7 expressly states that no such defined parade shall be conducted without the issuance of a permit. Neither §§ 705, *et. seq.* nor § 707 *et seq*, contains a specific penalty provision. The enforcement provisions applicable to 24 DCMR §§ 705 et seq. and 707.7, accordingly are contained in 24 D.C.M.R. 100, *et. seq.* In particular, 24 D.C.M.R. § 100.6 states that, "Any person violating any provision of this title for which specific penalty is not provided shall, *upon conviction* be punished by a fine of not more than three hundred dollars ($300)." (Emphasis added). The U.S. Supreme Court has held

---

(b) The conduct of the parade will not divert such numbers of police officers from their normal police duties that the city would be deprived of reasonable police protection;

(c) The concentration of persons, animals, and vehicles in the assembly and disbanding areas and along the parade route will not substantially interfere with the movement of police, fire, ambulance, and other emergency vehicles on the streets;

(d) The parade is scheduled to move from its assembly location to its disbanding location expeditiously and without unreasonable delays enroute;

(e) The parade will not substantially interfere with any other parade for which a permit has already been granted;

(f) The applicant has provided for the services of the number of parade monitors that the Chief of Police considers reasonably necessary to ensure that the parade will be conducted in conformity with the parade permit;

(g) The applicant has not materially misrepresented any facts or information set forth in the application for a parade permit;

(h) The applicant has furnished proof that, if the assembly or disbanding locations or the route of march for the parade, encroach upon, occupy, or traverse any area within the jurisdiction of the federal or local governments, permits or permission have been obtained from the appropriate authorities;

(i) The parade is not to be held for the sole purpose of advertising for private gain any product, merchandise, contest, or event; and
(j) The parade does not create a substantial possibility of violent, disorderly conduct likely to endanger public safety or to result in significant property damage.

that police may validly "arrest persons to enforce criminal laws even where the penalties for violations of those laws do not include imprisonments. *Atwater v. City of Lago Vista*, 532 U.S. 348-54 (2001).

Title 24, unlike Title 50 of the D.C. Code, Title 32 of the D.C.M.R., and Title 14, Ch III of the D.C.M.R was not decriminalized by the TAA. The language of 24 D.C.M.R. § 100.6, refers to an individual's "conviction" for violation of the prohibition of Title 24. The TAA amended the penalty provision applicable at the time of the enactment of the TAA in 32 D.C.M.R. and now in 18 D.C.M.R. This provision is now loosely codified at 18 DCMR sec. 2000.9: "Any person violating any of the provisions of this subtitle for which a penalty is not specifically provided shall, upon determination of liability therefore, be subject to a civil fine or other sanction(s) pursuant to the District of Columbia Traffic Adjudication Act."

Plaintiffs have failed to inform this Court of, much less consider, (1) the existence of the prohibitions upon "parading without a permit" contained in 24 D.C.M.R. §§ 705 and 707, (2) the criminal nature of the sanctions for violation of 24 D.C.M.R. §§ 705 and 707 and (3) that 24 D.C.M.R. §§ 705 and 707 were not decriminalized by the TAA. Thus, plaintiffs, certainly, have not demonstrated that the MPD may not arrest for violations of §§ 705 and 707.

Moreover, the U.S. Supreme Court's decision in *Lago Vista*, 532 U.S. 348-54 (police may lawfully arrest persons for violations of law that are punishable only by fines rather than incarceration); the D.C. Circuit's decisions in *Hutchins v. D.C.* , 188 F.3d 531 (D.C. Cir. 1999) and *In re Joannie Barnard*, , 455 F.2d 1370 (D.C. Cir. 1971) (police may arrest for civil offenses); and this Court's decisions in *Doe v. D.C.*, 03-2379 (CKK)

slip op. (DDC January 28, 2004) (and cases cited therein) establish that the MPD may, in fact, validly arrest persons who parade without a permit, in violation of 24 D.C.M.R. § 705 and 707.  Thus, plaintiffs have failed to establish a substantial likelihood of success upon the merits of their local law claim that MPD is prohibited from arresting demonstrators for parading without a permit.  Therefore, their claim that arrests for "parading without a permit violate the Constitution are without merit.  Accordingly, plaintiffs lack a substantial likelihood of success on the merits, and their motion should be dismissed.

> **2.     Plaintiffs Lack A Substantial Likelihood Of Success On The Merits Of The Motion's Purported Constitutional Claims**

The D.C. Circuit has held that a plaintiff's claim that his or her constitutional rights have been violated through an arrest that is improper under District law stated no federal question where the arrest *itself*, independent of its alleged infirmity under District law, does not violate the Fourth Amendment.  *Barwood v. District of Columbia*, 202 F.3d 290, 294 (D.C. Cir. 2000); *see Doe v. District of Columbia*, Civ. Action No. 03-02379 (CKK) at 5-6 (D.D.C. Jan. 28, 2004) (a copy of which is attached to this memorandum) (citing *Cooper v. California*, 386 U.S. 58, 61 (1967)).  The reasoning of *Barwood* and *Doe I* and *II* demonstrate that plaintiffs assert no constitutional claim.  Accordingly plaintiffs enjoy no substantial likelihood of success on the merits of these claim.

The *Barwood* plaintiffs contended that a District statute providing for criminal penalties against suburban taxi drivers who picked up passengers in the District had been improperly promulgated under District local law, and that, as a result arrests under that statute were illegal, and, accordingly in violation of the Fourth Amendment.  *Barwood*, 202 F.2d at 296; *Doe*, at 5.  The District moved to dismiss the drivers' complaint for lack

of subject matter jurisdiction, on the basis that the complaint did not present a federal question.  Nevertheless, plaintiffs succeeded upon their theory before the trial court to obtain preliminary injunctive relief.  202 F.3d at 293; *Barwood v. District of Columbia*, 1999 U.S. Dist. LEXIS 21427.  In issuing a preliminary injunction, the trial court denied the District's motion to dismiss the *Barwood* plaintiffs' second amended complaint for lack of federal question subject matter jurisdiction.  1999 U.S. Dist. LEXIS 21427 [*4].

On appeal, the Circuit Court vacated the then-pending preliminary injunction and remanded the case to the district court to dismiss the complaint for lack of federal question subject matter jurisdiction.  202 F.3d at 296.  The appellate court observed the initial appeal of plaintiffs' legally erroneous contention, and counseled that:

> The argument has an initial plausibility: if an arrest without probable cause violates the Fourth Amendment, then surely one for which no cause *could* possibly exist must do so. If correct, of course, the argument would transform a wide class of state law claims into federal ones. Every arrest claimed to violate state law would entail an ancillary federal claim, even though the state law attack rested (as here) on state law theories having no connection whatever with the policies underlying the Fourth Amendment.

*Id.*  Upon this analysis, the D.C. Circuit held that "[m]ere inconsistency with state, or even federal, law will not suffice to create a Fourth Amendment cause of action (unless, of course, the inconsistency is with the Fourth Amendment itself)."  *Barwood*, at 294, *Doe*, at 5.

As in *Barwood*, the *Barham* plaintiffs argue that the activity of "parading without a permit" is merely a civil infraction.  Further, the *Barham* plaintiffs contend that *if they actually were* arrested for "parading without a permit," those arrests would necessarily be unlawful.  Pl. Arrest Mem. at 1-2, 16.  Upon that flawed premise, they contend that such potential arrests chill their willingness to engage in free speech, in violation of the First

Amendment.  However, the holding of the D.C. Circuit in *Barwood* dictates that

plaintiffs' theory presents no federal claim.  Accordingly, plaintiffs enjoy no substantial

likelihood of success on the merits of what they present as First (and possibly, Fourth)

Amendment claims.  *See* Pl. Arrest Mem. at 15-16.

This is all the more clear from the January 28, 2004 ("*Doe I*") and July 5, 2004

("*Doe II*") decisions of this Court in *Doe v. District of Columbia*, Civ. Action No. 03-

02379 (CKK) (collectively "*Doe*") (copies of which are attached to this memorandum

and available upon this Court's electronic docket).  In *Doe*, plaintiffs were a number of

minors who had been arrested pursuant to D.C. Code 25-130 (2000) or 25-1002 (2001)

for underage possession of alcohol.  *Doe I* slip op. at 1.

The *Doe* plaintiffs complained that the underage possession statute provided only for

civil penalties, but that the MPD and then Office of the Corporation Counsel ("OAG")

persisted in arresting and prosecuting persons under the age of 21 years under the statute.

*Doe I*, at 1.  The plaintiffs asserted that such arrests for non-criminal statutory offenses

violated their Fourth and Fifth Amendment rights, and sued for preliminary injunctive

relief  prohibiting the District from arresting them pursuant to those D.C. Code

provisions,.  *Id.* at 1-2.  They argued that because the statute provided only for civil

penalties, an arrest for its violation would necessarily constitute an unreasonable seizure

in violation of the Fourth Amendment.  *Doe I*, at 4-5.  That argument did not withstand

the District Court's application of *Barwood*.  *Doe I* at 5-6; *Doe II*, at 4-6.

In *Doe I*, the Court dismissed the plaintiffs' complaint for lack of subject matter

jurisdiction, on the grounds that the District's alleged actions "did not raise a federal

issue appropriate for adjudication by this Court"  *Doe I* at 2.   The Court held that

plaintiffs' purported Fourth Amendment claim presented no federal question.  *Doe I*, at 4; *Doe II*, at 4-6.  The court explained that "an arrest that is improper under [District] law does not necessarily violate the Fourth Amendment prohibition against unreasonable searches and seizures."  *Doe I*, 5-6.  Rather, to implicate the Fourth Amendment, the arrest, itself, must violate the Fourth Amendment – not merely be unauthorized under local law.  *Doe 1*, at 5.

   *Barham* plaintiffs argue that "parading without a permit" is simply a civil infraction, which cannot result in a valid arrest.  Assuming for the purpose of this argument that plaintiffs were correct, which they are not, the fact that an arrest is unauthorized under state law does not render it violative of the Fourth or First Amendments.  *See Cooper v. California*, 386 U.S. 58, 61 (1967); *Barwood*, 202 F.3d at 294; *Doe I*, at 5-6; *Doe II*, at 4-5.  Thus, even if plaintiffs were correct in their belief that "parading without a permit" does not give to rise to an arrestable offense – which they are not -- plaintiffs still fail to establish the existence of the First (or Fourth) Amendment claim upon which they base their motion.  Accordingly, plaintiffs do not enjoy a substantial likelihood of success on the merits, and their motion should be denied.  *See Barwood*, 202 F.3d at 294; *Doe I*, at 5-6; *Doe II*, at 4-5; *Serono Labs*, 158 F.3d at 1318.

   **B.     Denial of Plaintiffs' Sought Injunction Will Not Result In Irreparable Harm**

   This Courts' proper denial of plaintiffs' motion will have no more adverse effect than requiring them, and other demonstration organizers and participants, to comply with valid District of Columbia law.  Requiring plaintiffs, demonstration organizers, and participants to obtain permits in accordance with District of Columbia law and to comply

with the permits' requirements is not an irreparable harm.  Accordingly, plaintiffs'

motion should be denied.

Plaintiffs assert that two irreparable harms may result if the Court does not issue

their requested preliminary injunction.  First, they may be arrested for parading without a

permit.  Pls' Arrest Mem at 17.  Second, they argue, the exercise of  First Amendment

expression that would have taken place, but for the "illegal arrest" of a demonstrator or

demonstration is lost, irreparably.  (*Id.*).  Corollary to the second asserted harm is "the

disruption of spontaneous demonstration activity. (*Id.*)  None of these potential injuries

will flow logically, much less necessarily, from this court's denial of this motion.

We note that plaintiffs have not challenged the constitutionality of the permitting

requirements.  The District's permitting requirements are components of valid time,

place, and manner limitations.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 791

(1989).  Thus, if the Court denies plaintiffs' proposed injunction, plaintiffs will merely be

required to comply with District of Columbia's reasonable and valid municipal

regulations and obtain appropriate permits.

This is a requirement that plaintiffs' declarant, Brian Becker, among many others,

has successfully employed previously.  In fact, Mr. Becker was one of an estimated 5,000

demonstrators who, on June 5, 2004, participated in a permitted demonstration that

marched from Lafayette Park, east on H Street, N.W. to 18th Street, then north on 18th

Street to Florida Avenue.  The procession then marched northwest on Florida Avenue to

Connecticut Avenue, and north on Connecticut Avenue to Kalorama Road, N.W.  The

permit (a copy of which is attached as Exh. 3) provided for a representative group of 200

demonstrators to proceed westbound on Kalorama Road, N.W. and rally in front of the

home of the U.S. Secretary of Defense.  (Mr. Becker and others, however, violated the permit by forcing their way onto Kaloarma.  *Id.*, para. 12.) No arrests were made in relation to that march and demonstration.  That permit was obtained by Ms. Sarah Sloan, who like Mr. Becker, is a plaintiff in *Alliance for Global Justice v. District of Columbia, et al.*, 01-00811 (PLF) (JMF), pending before the court.  Ms. Sloan is also a legal assistant in the law firm, Partnership for Civil Justice, Inc. ("PCJ").  PCJ represents the plaintiffs/movants in this matter.  Accordingly, the record reflects that, despite their filed protests, plaintiffs' declarant and  their counsel are familiar with the District of Columbia's regulatorily-mandated permitting process and have successfully invoked the system.

Additionally, the success of the recent "March for Women's Lives" demonstrations conducted in Washington, D.C. on April 25 - 26, 2004 reflect that proper planning, made possible through proper use of the District's parade permitting  process enhances the demonstrators' ability to communicate their message effectively. Organizers sought and were issued permits for 750,000 participants to parade along the route from the National Mall to and across the Ellipse and back to the Mall.

These facts, in turn, belie plaintiffs' assertions that protected expression will be impaired if no injunction issues.  Accordingly, plaintiffs have failed to establish that expressed concern as an irreparable harm.

Further, as discussed above, none of the plaintiffs has shown that he or she has been arrested while parading or demonstrating pursuant to a permit.  Additionally, we have shown that plaintiffs contention that "parading without a permit is a non-arrestable offense, and therefore, arrests for parading without a permit are illegal, is without merit.

These same facts point to another fundamental fallacy in plaintiffs' argument –
the premise that people will be unlawfully arrested if the court does not enjoin the
District's ability to meaningfully perform and enforce its parade-permitting process.
Plaintiffs do not cite a single instance of a person being arrested by MPD on a charge of
"parading without a permit" where that individual was participating, observing, or
adjacent to a permitted parade, march, or demonstration conducted pursuant to a permit.
Accordingly, plaintiffs fail to meet their burden to establish that protected expression
would be impermissibly inhibited, if this court denies their motion.

In fact, plaintiffs merely speculate that if this Court does not enjoin the District
from enforcing its permitting requirements, that demonstrators will be arrested for simply
parading without a permit.  In each of the years 2000-2002, the MPD responded to
hundreds of demonstrations.  In most cases the demonstration organizers had not
obtained permits.  Generally, the MPD responded by negotiating with the organizers to
work out an impromptu timetable and route or location for the demonstration.  (Decl. of
Jeff Herold, para. 15.)  Accordingly, even where demonstrators fail to comply with
permitting requirements, the preference and most common response of the MPD is to
deploy the resources necessary to allow the demonstration to proceed safely.  These
resources include personnel and equipment necessary to close streets and re-route traffic
to allow demonstrators to march along public space.  Commonly, such un-permitted
demonstrations occur on days where there are not numerous and large-scale events
occurring which place substantial demands on the District's resources generally and those
of the MPD, in particular.  This practice of facilitation of un-permitted demonstrations
contradicts plaintiffs' speculation that "disruption of spontaneous demonstration activity"

might occur if this Court does not issue an injunction prohibiting arrests and/or prosecutions based, in whole or in part, on persons parading without a permit. Pl. Arrest Mem. At 17.

Upon the record in support of or in opposition to Pls' Arrest Mot., plaintiffs have failed to meet their burden to show that they will be irreparably harmed if an injunction is not granted.  *Cf., e.g., Secoro Laboratories v. Shalala*, 158. F.3d 1313, 1318 (D.C. Cir. 1998).  Rather, at worst, they will be required to comply with the requirements of District of Columbia regulations, the validity of which plaintiffs have not challenged in this matter.  Being required to comply with law of unchallenged validity – in this case, the District of Columbia's Public Space And Safety regulations – is not an irreparable harm justifying a preliminary injunction.  Plaintiffs have failed utterly to demonstrate irreparable harm.  Upon this complete failure – as opposed to a "rather weak" showing – alone, plaintiffs' motion should be denied.  *See, e.g., Serono Laboratories*, 158 F.3d at 1318.

### C.    Issuance Of Plaintiffs' Proposed Injunction Will Substantially Injure The District Of Columbia

Issuance of a preliminary injunction, such as that sought by plaintiffs would foreseeably injure the District in two ways.  First, such an injunction would foreseeably lead to non-compliance with District permitting regulations; this, in turn, would undermine the ability of the District to coordinate demonstrations and to maintain the availability of efficient emergency services and evacuation routing.  Such an injunction would, in essence, amount to a federal pre-emption of the District's ability to properly regulate the use of District of Columbia public space and resources.

Second, this Court's issuance of such an injunction would be contrary to the D.C. Circuit's long-standing recognition of the applicability of the *Pullman* abstention doctrine to matters properly within the jurisdiction of the District of Columbia's courts. The issuance would also contradict the Circuit Court's very recent re-emphasis of its recognition that the District's courts, as much as the courts of any State, are entitled to the to "scrupulous regard for [their] rightful independence" upon considerations of comity and the principles of equity jurisprudence. *JMM Corp. v. District of Columbia*, 2004 U.S. App. LEXIS 17105 [*21, n.19]. Issuance of such an injunction would be at odds with the clear intention of Congress that federal courts generally treat the District of Columbia judicial system with the same respect extended to the court systems of the States. *Id.*, at [*22]. Accordingly, issuance of such an injunction would needlessly undermine the District's Congressionally-conferred Home Rule authority.

Upon these bases, issuance of such an injunction would so substantially injure the District that plaintiffs' motion should be denied. *See, e.g., Serono Laboratories*, 158 F.3d at 1318.

### D.    The Public Interest Would Be Disserved By An Injunction

Plaintiffs seek an injunction that would prohibit the District from basing a decision to arrest or arresting persons, *in whole or in part*, for parading without a permit or for violating 24 D.C.M.R. § 705, *et seq.* See Pls Proposed Order; Pls Arrest Mem. at 7, 15-16. Plaintiffs advise that such an injunction would, additionally, preclude the District from basing a decision to arrest or arresting persons for their failure to obey a police order. Pls Arrest Mot., at 8-9.

Demonstration organizers' ability to plan for and conduct substantial demonstrations with proper police support would, in fact, be undermined by such an injunction. The foreseeable results would include lessened opportunity to disseminate and observe protected expression. The evisceration of a municipal framework to facilitate demonstration and expression would chill it.

Nevertheless, plaintiffs seek their broad injunction when, as they point out, the District will be the site of a meeting of 6-7 finance ministers on October 1, 2004, that will, in fact, overlap with IMF/WB meetings taking place here on October 1-3, 2004. In addition, on October 17, 2004, plaintiffs represent that there will be a "Million Workers March." They also correctly advise that the Presidential Inauguration is to take place on January 20, 2005. Each of these events is anticipated to require dedication and deployment of substantial resources by the District and by the MPD, in particular. Accordingly, the District's ability to facilitate the desired time, place, and manner of expression of demonstrators who wish to express themselves in the Nation's Capital during these (and other large events having traffic-flow and security implications) will foreseeably be affected by our inability to plan to facilitate such demonstrations. The District's permitting process enables it to plan to facilitate such demonstrations to the mutual benefit of organizers, demonstrators, onlookers, the media, and District residents, businesses, and commuters. However, plaintiffs proposed injunction would, foreseeably, reduce participation in that process and impair the District's planning and coordination capabilities.

Under plaintiffs' proposed injunction, police officers could direct demonstrators to cease incommoding the public sidewalk or roadway, or could issue a citation for such

violations where demonstrators clogged sidewalks or streets without benefit of a permit. Police would be allowed to order demonstrators to disperse or to leave the roadway. If the demonstrators refused, MPD could issue citations to the demonstrators. However, under the proposed injunction police could not arrest protestors or prosecute the citations.

Similarly, MPD could not arrest for unlawful assembly, based in whole or in part upon demonstrators' occupation of roadways or building entrances or sidewalks insofar as the offending occupation was unlawful, in whole or in part, because it was accomplished without a permit. In essence, the preliminary injunction that plaintiffs describe in their filings would foreseeably render the District unable to clear the streets of the Nation's Capital without risking contempt of this Court's injunction. That untenable predicament is plainly against the public interest.

Public knowledge that the District could not arrest or prosecute cases of parading without a permit (particularly under such an expansion definition) would foreseeably minimize participation and cooperation in the permitting process. This, in turn, would predictably result in groups in face-to-face competition for prime demonstration locations at prime times. As a result, violent exchanges between persons with opposing views or simply conflicting desires to demonstrate simultaneously in the same place would occur. Being given no notice through applications for permits, the MPD would be in no position to avert such incidents or otherwise plan properly to facilitate and ensure the safe and orderly conduct of demonstrations.

The ability to plan for and conduct substantial demonstrations with proper police support would, in fact, be undermined by such an injunction. Title 24 .D.C.M.R. 705.2(e) specifically contemplates that multiple groups of demonstrators may seek to

conduct demonstrations simultaneously in overlapping locations.  The permitting process

contemplated and lawfully required by Title 24 allows for negotiation of permit demands

to accommodate multiple groups.  *See* 24 D.C.M.R. § 705.2(e), Herold Decl.  This

regulatorily-mandated permitting process also contemplates that groups which are

antagonistic to one another may seek to demonstrate and counter-demonstrate

simultaneously or that groups which are subjects of animosity by appreciable numbers of

persons may wish to demonstrate.  *See* 24 D.C.M.R. 705.2(j).

The foreseeable results would include lessened opportunity to disseminate and

observe protected expression.  The evisceration of a municipal framework to facilitate

demonstration and expression would have the effects of chilling and reducing protected

expression.

In addition, the efficient flow of emergency vehicles would be impaired to the

detriment of the District's residents, businesses, and visitors, generally.  Accordingly, the

balance of harms weighs against issuing the injunction, and plaintiffs' motion should be

denied.

**III.    Plaintiffs' Requested Injunction Should Be Denied Because It Seeks To
Prohibit Enforcement Of Municipal Law Not Challenged By Plaintiffs'
Motion Or In Plaintiffs' Memorandum, And Is Impermissibly Overbroad**

Plaintiffs' arguments to the Court in support of its motion, their proposed

injunction as described in Pl. Arrest Mem. and their proposed requested order, are not

readily reconcilable.  Plaintiffs' memorandum argues that "parading without a permit" is

a non-arrestable offense based upon caselaw addressing traffic offenses in Title 50 of the

D.C. Code and Title 18 of the DCMR.  Pl. Arrest Mem. at 1-2, n.1.  In contrast, the order

proposed by plaintiffs for this Court's signature and entry would require that the District

be "enjoined from: Basing decisions to arrest or arresting persons for 'parading without a permit' *or for alleged violations of 24 D.C.M.R. § 705, et seq.*  Sections 705, *et seq.* are *not* traffic provisions of the D.C.M.R.;  they are Public Space and Safety provisions. Further, plaintiffs, inexplicably, do not mention 24 D.C.M.R. § 705, *et seq.* anywhere in their motion or memorandum, which are supposed to provide the basis in law and fact for this Court to endorse plaintiffs' proposed order granting their requested injunction. Plaintiffs' motion should be denied on this basis.

Moreover, even if plaintiffs' arguments were drafted to attempt to justify a prohibition of arrests to enforce the Public Space and Safety regulations set forth in 24 D.C.M.R. § 705, *et seq.* – which they plainly are not – they do not justify the breadth of the injunction contemplated by their proposed order.

An injunction pursuant to Fed. R. Civ. P. 65 "should be narrowly tailored to remedy the harm *shown*."  *Nat'l Treasury Employees v. Yeuter,* 287 U.S. App, D.C. 28, 918 F.2d 968, 977 (D.C. Cir. 1990) (citing *Gulf Oil Corp. v. Brock*, 250 U.S. App. D.C. 213, 778 F.2d 834, 842 (1985).  Plaintiffs proposed order is not, and would have unjustifiably overbroad effect.  The proposed order would prohibit District law enforcement personnel from "basing decisions to arrest or arresting persons for violations of 24 D.C.M.R. § 705 *et seq.*  Plaintiffs argue consistently in their memorandum that the injunction they seek should prohibit arrests based in whole or in part on "parading without a permit."  *See* Pl. Arrest Mem. at 1-2, 8, 9 ("the distinction [between "failure to obey" and "parading without a permit"] in the formal charge is not relevant where the ostensible basis for the arrest was justified on the basis of parading without a permit"), 13, 18.  Such an injunction, arguably, would preclude law enforcement officials from

considering the conduct of parading without a permit as an element of any other offense,

such as unlawful assembly or failure to obey.  Even assuming, for purposes of argument,

that plaintiffs satisfied any part of their burden to obtain any injunctive relief, they fail to

justify such a broad prohibition of the enforcement of municipal law.  Accordingly,

plaintiffs' motion should be denied.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

s/ Richard S. Love
RICHARD S. LOVE [340455]
Chief, Equity Section I

s/ Thomas L. Koger
THOMAS L. KOGER [427921]
MARTHA J. MULLEN [4_____]
Senior Assistant Attorneys General
Equity Section I
441 Fourth Street, NW, Sixth Floor South
Washington, D.C. 20001
(202) 724-6610