UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH CARR, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-0098 (ESH) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Pursuant to LCvR 7(d), defendant ("the District") hereby replies to Plaintiffs' Opposition to Defendant's Motion to Dismiss plaintiffs' unreasonable seizure and false arrest claims.

**Introduction**

Plaintiffs make a number of muddled arguments, most of which either do not directly address the matters at issue, or are inapplicable here, and hence plaintiffs fail to withstand the District's dispositive motion.

Plaintiffs attempt to rebut several arguments allegedly made by the District, but fail to directly confront the one that is fatal to their claims—that even if "parading without a permit" is a *civil* offense punishable only by a fine, custodial arrests may be made for that violation (and were made here) consistent with the Constitution. *See* D. Mem. at 6 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (police may lawfully arrest persons for violating laws punishable only by fines rather than incarceration); *Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001) (*per curiam*) (police may arrest "for a fine-only traffic violation"); *Hedgpeth v. WMATA*,

386 F.3d 1148, 1156 (D.C. Cir. 2004) (if there is probable cause for an arrest, law enforcement officers may physically restrain a suspect, even for "minor offenses.") (*citing Gerstein v. Pugh*, 420 U.S. 103 (1975) and *Atwater*)).

Plaintiffs never address—much less counter—the District's arguments that probable cause existed for the arrests made here. Indeed, plaintiffs only mention the concept twice (once in a footnote), conclusorily asserting that it did not exist, but never defining it, explaining it, or attempting to distinguish the District's invocation of it. *See* P. Opp. at n.5 and 10.[1]

### Argument

Plaintiffs assert that "parading without a permit" was "decriminalized" along with all other "pedestrian" offenses by the Traffic Adjudication Act of 1978 ("TAA"), *codified as amended at* D.C. Official Code §§ 50-2301.01 *et seq.* (2005 Supp.). P. Opp. at 3–4.

As the District demonstrated in its Motion to Dismiss, notwithstanding the TAA, *at the time of the disputed arrests*, "parading without a permit" was a criminal offense. "[N]o parade shall be conducted without issuance of a permit." 24 DCMR § 707.7. Violation of this criminal

---

[1] Plaintiffs aver that their claim does not seek relief for anyone "as to whom there was probable cause to believe that" that person committed various acts of public vandalism. P. Opp. at n.5. The solipsism here is manifest. Plaintiffs' claim is that their arrests were made *without* probable cause; *of course* plaintiffs do not seek relief for those whose arrests *are* supported by probable cause. Similarly, plaintiffs make the nonsensical claim that "[b]ecause the police gave the plaintiffs here no notice that their parade would not be allowed, police had no probable cause to believe that plaintiffs were in violation of the regulatory prohibition." *Id*. at 10. But "notice" is not an element of the infraction alleged, or relevant in a probable-cause analysis. The test for probable cause is objective, *i.e.*, whether a "prudent, reasonable, cautious police officer" believes an offense has occurred in his or her presence. *United States v. Brown*, 374 F.3d 1326, 1328 (D.C. Cir. 2004). *See also Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001) (*per curiam*) (probable cause existed to arrest "for a fine-only traffic violation" committed in the officer's presence) (*citing Atwater*). When the instant plaintiffs were observed marching together in the street without a permit, the violation was complete and, thus, probable cause to arrest existed.

provision is punishable by a fine of not more than $300. *Id*. at § 100.6 ("[A]ny person violating any provision of this title for which a specific penalty is not provided shall, upon ***conviction***, be punished by a ***fine*** of not more than three hundred dollars ($300).") (emphasis added).

*"Probable Cause" Existed to Arrest Plaintiffs*.

Plaintiffs' chief claim is that parading without a permit is not a criminal offense subjecting violators to custodial arrest. P. Opp. at 3. But plaintiffs do not challenge the constitutionality of any District law or regulation, only whether the arrests here made under those laws were constitutional.

Plaintiffs' arguments all but ignore the District's response—that the arresting officers here had "probable cause" to arrest plaintiffs, which is all that the Fourth Amendment requires. So long as the arresting officers had a reasonable belief that the behavior they witnessed was "criminal," *i.e.*, was a violation of (at least one) provision of law setting forth criminal penalties, they had probable cause to arrest. *See* Declaration of Cathy Lanier ("Lanier Decl.") dated June 19, 2006, ¶¶ 5–8, 10–11 (copy attached).

Even if, as plaintiffs allege, the District wrongfully arrested them for a fine-only civil offense, that fact alone is insufficient—as a matter of law—to state a constitutional claim. *See Barwood, Inc. v. District of Columbia*, 202 F.3d 290, 294 (D.C. Cir. 2000) ("Mere inconsistency with state, or even federal, law will not suffice to create a Fourth Amendment cause of action . . . ."). *See also Cooper v. California*, 386 U.S. 58, 61 (1967) ("Just as a search authorized by state law may be an unreasonable one under [the Fourth Amendment], so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.").

Plaintiffs claim that a recent Circuit decision "forecloses" that controlling case law. Plaintiffs are incorrect, as their own description of the case reveals. The cited case is directly on point, and controls the outcome here in the District's favor.

Plaintiffs cite *Doe v. District of Columbia*, 445 F.3d 460 (D.C. Cir. 2006) for the proposition that "arrest for [an] unambiguous civil offense states [a] cause of action under the Fourth Amendment." P. Opp. at 7. The District entirely agrees with that statement. But "parading without a permit" is not "unambiguously" a civil offense, hence plaintiffs' arrest under that provision does *not* state a constitutional claim.

The *Doe* plaintiffs alleged that they were unconstitutionally arrested by the Metropolitan Police Department ("MPD") for underage possession and/or consumption of alcoholic beverages. *Doe*, 445 F.3d at 461. Plaintiffs there—like the instant plaintiffs—claimed that, because they were held based on alleged violations of a *civil* offense, the MPD's actions violated their Fourth Amendment rights (*i.e.*, the arrests were made without probable cause). *Id*. at 461–62.

The Circuit rejected that broad claim, however, and held that, because the law under which one of the plaintiffs was arrested was "ambiguous" as to whether the offense was criminal or civil in nature, probable cause existed for the MPD to arrest him. *Id*. at 468.

Identically here, despite plaintiffs' strenuous attempts to insist otherwise, the provisions of District law governing "parading without a permit" are, at best, ambiguous as to whether that offense is criminal, hence probable cause existed for MPD to arrest.

Similarly, *Doe* forecloses plaintiffs' argument that, because a "specific," non-criminal penalty exists for the disputed offense, the "general" criminal penalty cited by the District does not apply. P. Opp. at 3, 18. The Circuit in *Doe* upheld the District's invocation of the alcoholic-

beverage law's "catch-all provision" which, like the "General License Law" language invoked by the District in *Barwood, Inc. v. District of Columbia*, 202 F.3d 290 (D.C. Cir. 2000), created ambiguity (in light of more specific penalties cited elsewhere) as to the status—civil or criminal—of the charged offense. *Doe*, 445 F.3d at 463 & n.12. That ambiguity was sufficient to provide the police with probable cause, hence the dismissal of plaintiff's constitutional claim was affirmed pursuant to Fed. R. Civ. P. 12(b)(6) because it failed to state a cause of action. *Id*. at 468–69 (plaintiff "challenged the validity of his arrest under a local law that may or may not have constituted a crime at the time and, in so doing, he raised a state law issue only.").[2]

The Court should grant the District's Motion to Dismiss pursuant to *Doe*.

*Estoppel Does Not Apply Here.*

Plaintiffs make much of the assertion that District counsel in another matter "solemnly" bound the District to never arrest for parading without a permit unless the police had first given notice and an opportunity to disperse. P. Opp. at 7–10. Plaintiffs argue that the District should be estopped in the instant matter from taking a position that is "inconsistent" or contrary to prior representations.

Plaintiffs are incorrect. Neither the facts nor the law support their position. The District's position here is exactly the same as it was in *Barham*, and remains correct as a matter of law.

Notwithstanding that the policy of the MPD has been, for several years (including at the time of the incidents alleged in the Complaint), "not to arrest for activities related to mass

---

[2] The Circuit in *Doe* indicated that the Council could have removed the asserted ambiguity, as it had done similarly in other statutes. *Doe*, 445 F.3d at n.16. The Council appears to have acted accordingly here, albeit after the events in question occurred. *See* D.C. Official Code § 5-331.05(a) (2005 Supp.) (effective Apr. 13, 2005) ("It shall not be an offense to assemble or parade on a District street, sidewalk, or other public way, or in a District park, without having provided notice or obtained an approved assembly plan.").


demonstrations, including Parading Without a Permit, without first issuing a warning to the crowd to disperse[,]" Lanier Decl. ¶ 3 (citing MPD's Standard Operating Procedures for Response to Mass Demonstrations, Civil Disturbances & Prisoner Processing),[3] the transcript of the argument cited by plaintiffs effectively rebuts their contentions.[4]

Plaintiffs allege that in a hearing on a motion for preliminary injunction on September 27, 2004, in *Barham v. Ramsey*, 02-2283 (D.D.C.) (EGS), government counsel made a "formally announced, binding interpretation" that MPD would not arrest for parading without a permit until it had given notice and an opportunity to disperse. P. Opp. at 8–9. But a review of the transcript (copy attached) reveals that there was a discussion and understanding that although such notice and opportunity will be given as a general matter, it would clearly be impractical or impossible at certain times:

> THE COURT: [Y]ou just told me you're not going to arrest unless or until you give a warning. That's all [plaintiffs are] asking for. They want that warning, they want that warning. And you're willing to give it, right?
>
> [DISTRICT COUNSEL]: We're willing to give it. But the conundrum I face is suppose you get 50 people, well-meaning demonstrators, assembled at Murrow Park before rush hour on Friday. And before the police get there they're off frolicking in the traffic and somebody gets hits [sic].
>
> THE COURT: Do you know what? There are always all sorts of exceptions, though, aren't there?
>
> [DISTRICT COUNSEL]: Yes, your Honor.

---

[3] The date of the procedures manual in effect at the time of the arrests was dated May 2003. The same instruction/procedure is set forth in the current manual.

[4] Even if plaintiffs could show that MPD violated its own policies, that fact would be insufficient to state a claim here. *See, e.g., Sepulveda-Hambor v. District of Columbia*, 885 A.2d 303, 309 (D.C. 2005) (MPD policies are "internal mandates" properly enforced by that agency, not the courts, "and cannot be equated with constitutional rights.") (citing *March v. United States*, 362 A.2d 691, 698 n.8 (D.C. 1976)).

>THE COURT: The city just announced that as far as the city is concerned it will not arrest for this offense without giving notice. Now, there may be exceptions to that rule.
>
>[DISTRICT COUNSEL]: Right.
>
>THE COURT: And I don't have enough time in the day to deal with all those exceptions. Although plaintiff could probably cite chapter and verse for thousands of exceptions, I'm not going to require him to do so. There are always exceptions to the rule. But the general policy in the rule is that you won't do it unless you give notice. And I think that's all that plaintiffs were asking for.

Trans. pp. 40–41.

Thus, not only did government counsel commit the MPD to doing what its general policy was at the time, it put the Court (and plaintiffs there) on notice that there would be specific instances where notice and an opportunity to disperse would not be possible prior to arrest. The allegations in the instant matter clearly qualify as such an instance, and the evidence bears that conclusion out. Exigent circumstances just prior to the arrests, including vandalism and acts of violence against the police, prevented notice and an opportunity to disperse from being given, as the time needed to do so "would have unreasonably placed police officers and demonstrators at risk of being injured." Lanier Decl. ¶ 9.[5]

Consequently, far from "binding" the District to a policy requiring that a warning be given under any and all circumstances, government counsel's statements in *Barham* were entirely consistent with then-existing (and current) MPD practice and the District's position in the instant matter. Here, clearly, neither time nor circumstances permitted a warning. *Id*. ¶¶ 8–10.

Plaintiffs are similarly misguided as to the law of estoppel, as their own authorities make clear.

---

[5] As the Lanier Decl. demonstrates, not only were the protesters engaged in serious acts of vandalism, they shattered the windshield of a squad car and bombarded responding officers with unidentified objects. Lanier Decl. ¶¶ 7–8.

Plaintiffs claim that the District is judicially estopped from changing its position in the instant matter because it prevailed in the *Barham* preliminary injunction hearing. P. Opp. at 11–12. Notwithstanding that the District's position in *Barham* is entirely consistent with that taken in the instant matter (that parading without a permit is a criminal violation subject to custodial arrest), "the judicial estoppel doctrine has no vitality in this jurisdiction." *Id*. at 12 n.13 (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980)). *Konstantinidis* remains controlling law. "[W]e have not previously embraced the doctrine of judicial estoppel in this circuit." *United Mine Workers of Am. 1974 Pension Trust v. Pittston Co.*, 984 F.2d 469, 477 (D.C. Cir. 1993). *See also American Methyl Corp. v. EPA*, 749 F.2d 826, 833 n.44 (D.C. Cir. 1984) ("[E]ven those cases recognizing the doctrine limit it to cases in which a party prevails on a claim in one court and proceeds in a calculated manner to manipulate a second court by asserting facts at odds with those advanced before the first court.") (citing *Konstantinidis*). Plaintiffs have not come close to making such a showing here.

"[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Serv.*, 467 U.S. 51, 59–60 (1984) (plaintiff must show, *inter alia*, "a definite misrepresentation of fact"). *See also F.J. Vollmer Co., Inc. v. Higgins*, 23 F.3d 448, 450 (D.C. Cir. 1994) (a showing of "affirmative misconduct [is] required to estop the government from enforcing its laws."); "Estoppel does not run against the government absent a showing of egregious injustice . . . ." *Bayvue Apts Joint Venture v. Ocwen Fed. Bank FSB*, 971 F.Supp. 129, 132 (D.D.C. 1997) (citing *Int'l Org. of Masters v. Brown*, 698 F.2d 536, 551 (D.C. Cir. 1983)). *Cf. ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988) (equitable estoppel's "application to the government must be rigid and sparing. The case for estoppel against the government must be compelling . . . .").

To invoke equitable estoppel against the government, a party must prove the "traditional elements" of the doctrine (false representation, a purpose to invite action, ignorance of the true facts, and reasonable reliance) as well as a showing of "an injustice . . . and lack of undue damage to the public interest." *ATC Petroleum*, 860 F.2d at 1111 (citations omitted). *See also United States v. Philip Morris, Inc.*, 300 F.Supp.2d 61, 70 (D.D.C. 2004) ("[N]either the Supreme Court nor this Circuit has ever upheld a finding of equitable estoppel against the Government.").

The District avers that plaintiffs have failed to meet this difficult burden here; the instant plaintiffs are not the same as in *Barham*. Thus plaintiffs cannot clear their initial hurdle—demonstrating reasonable, detrimental reliance on a "definite" representation made *to the parties claiming estoppel*. *Hertzberg v. Veneman*, 273 F.Supp.2d 67, 83 (D.D.C. 2003) (citing *Graham v. SEC*, 222 F.3d 994, 1007 (D.C. Cir. 2000)).[6]

The position taken by District counsel in *Barham* is identical to that taken here—that parading without a permit, at the time of the alleged events, was a criminal offense subjecting violators to custodial arrest.[7] Consequently, there was no "misrepresentation" at all. What plaintiffs incorrectly claim is a "change" in position is simply the result of exigencies—fully foreseen and discussed by the parties and the Court in *Barham*—coming to pass.

---

[6] Plaintiffs grudgingly acknowledge that a party seeking to invoke estoppel must have been the adverse party in the prior proceeding, P. Opp. at n.19, but then make the plainly irrational statement that they were the "intended beneficiaries" of the order in *Barham* because that order applied to everyone.

[7] *See Barham* Defendants' Opp. to P.I. (copy attached to P. Opp.) at 13–16.

*The Rule of Lenity Does Not Help Plaintiffs Here, if it Even Applies.*

Plaintiffs urge the Court to apply the "rule of lenity" here, which supports their interpretation of the offense of "parading without a permit." P. Opp. at 17.

> The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree. "'The rule of lenity applies only if, "after seizing everything from which aid can be derived," . . . we can make "no more than a guess as to what Congress intended."'" To invoke the rule, we must conclude that there is a "'"grievous ambiguity or uncertainty"'" in the statute."

*Muscarello v. United States*, 524 U.S. 125, 138–39 (1998) (citations omitted).[8]

The rule is typically invoked to justify the imposition on a criminal defendant of the lesser of more than one arguably applicable punishment. But here, unlike the cases cited by plaintiffs, the rule of lenity is invoked in an attempt to support a *damages* claim in a civil-rights case. Plaintiffs have cited no case which supports the application of the rule in such circumstances.

Plaintiffs appear to want to have their cake and eat it too; they argue that the offense of parading without a permit was "unambiguously decriminalized," but they want the Rule of Lenity to apply. P. Opp. at 18. Plaintiffs cannot have both—if the statute is unambiguous, the Rule of Lenity does not apply, as plaintiffs' own authority makes clear. *See, e.g., United States v. Shabani*, 513 U.S. 10, 17 (1994) ("The rule of lenity, however, applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute."). If the law *is* ambiguous, *Doe* controls, and plaintiffs have failed to state a claim under the Fourth Amendment.

---

[8] "[T]his Court has never held that the rule of lenity automatically permits a [party] to win." *Muscarello*, 524 U.S. at 139.

As attractive as it may be, plaintiffs cannot ignore the existence of criminal penalties for the offense of "parading without a permit." The simple fact remains that the Council, when it passed the TAA, left in place the provisions criminalizing the actions for which plaintiffs were arrested. "Courts may not create their own limitations on legislation, no matter how alluring the policy arguments for doing so, and no matter how widely the blame may be spread." *Brogan v. United States*, 522 U.S. 398, 408 (1998).

The doctrine of constitutional avoidance counsels that, if there are two plausible statutory constructions, a court should consider the consequences of its choice: "If one of them would raise a multitude of constitutional problems, the other should prevail . . . ." *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005).[9]

Here, plaintiffs insist that the statutory scheme makes "parading without a permit" a civil offense only, decriminalized along with other pedestrian offenses by the TAA. P. Opp. at 4. But other sections of that long-standing scheme remained in place, manifestly unaltered by the TAA, and made that same offense criminal. 24 DCMR §§ 100.6, 705.1, 707.7. Consequently, this Court should avoid the interpretation urged by plaintiffs here, as that would unnecessarily raise a host of constitutional problems. *Clark*, 543 U.S. at 380–81.

The existence of numerous methods of *inferring* legislative intent, however, taken together with plaintiffs' invocation of their First Amendment rights, should not lead one to ignore the plain language of the law.

> It is one thing to acknowledge and accept such well defined (or even newly enunciated), generally applicable, background principles of assumed legislative intent. It is quite another to espouse the broad proposition that criminal statutes do not have to be read as broadly as they are written, but are subject to case-by-case

---

[9] The doctrine rests "on the reasonable presumption that [the legislature] did not intend the alternative which raises serious constitutional doubts." *Clark*, 543 U.S. at 381 (citations omitted).

exceptions. The problem with adopting such an expansive, user-friendly judicial rule is that there is no way of knowing when, or how, the rule is to be invoked.

*Brogan*, 522 U.S. at 406–407.

## **Conclusion**

For the reasons stated above and in its motion, the Court should grant the District's Motion to Dismiss.

DATE: July 7, 2006                    Respectfully submitted,

                                                            ROBERT J. SPAGNOLETTI
                                                            Attorney General, D.C.

                                                            GEORGE C. VALENTINE
                                                            Deputy Attorney General, D.C.
                                                            Civil Litigation Division


                                                            _____/s/ Richard S. Love_____
                                                            RICHARD S. LOVE, D.C. Bar No. 340455
                                                            Chief, Equity I
                                                            441 Fourth Street, N.W., 6th Floor South
                                                            Washington, D.C. 20001
                                                            Telephone: (202) 724-6635
                                                            Facsimile: (202) 727-0431


                                                            _____/s/ Ellen A. Efros_____
                                                            ELLEN A. EFROS, D.C. Bar No. 250746
                                                            Assistant Attorney General
                                                            Equity 1
                                                            441 Fourth Street, N.W., 6th Floor South
                                                            Washington, D.C. 20001
                                                            Telephone: (202) 442-9886
                                                            Facsimile: (202) 727-0431
                                                            ellen.efros@dc.gov

        /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity 1
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov