## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SARAH CARR, *et al.*,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 06-0098 (ESH)** |
| | ) |
| **DISTRICT OF COLUMBIA,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is defendant District of Columbia's motion to dismiss plaintiffs' class action arising from the allegedly unreasonable seizure and false arrest of class members for parading without a permit. *See* D.C. Mun. Regs. tit. 24, § 707.7; tit.18, § 2603.1. At issue is whether parading without a permit is a criminal offense that gives rise to probable cause so as to justify plaintiffs' arrest. Because the relevant statutes do not unambiguously define parading without a permit as a civil or criminal offense, a dismissal based on Fed. R. Civ. P. 12(b)(6) would be inappropriate at this stage.

## BACKGROUND

On January 20, 2005, the date of the second inauguration of President George W. Bush, protesters held an "anti-inaugural concert" at a church located at 1459 Columbia Road NW in the Adams Morgan neighborhood of the District of Columbia. (Compl. ¶ 17-18.) Most class members, except Matthew Singer, attended the concert. (*Id.* ¶ 24.) After the concert, at around 11 p.m., plaintiffs either heard an announcement or were given a flier which stated that after the concert, a march would begin and it would terminate in front of the Hilton Hotel, where one of the inaugural

balls was being held. (*Id.* ¶ 18.)  All the plaintiffs attended the march from the church, except for Mr. Singer who joined the parade when he saw it as he exited a nearby bar. (*Id.* ¶ 9.)

En route, some plaintiffs noticed that a few of those marching were wearing bandanas over their faces, pulling newspaper boxes into the street, breaking windows, and defacing buildings with spray paint.  Not all members of the plaintiff class witnessed this behavior, and plaintiffs maintain that the members of the class did not themselves engage in such behavior. (*Id.* ¶ 22.)  Some of the plaintiffs noticed that the police were gathering, and they either tried to distance themselves from the march by turning off into another road or went into the alley next to a restaurant when they found themselves caught between the police vehicles following behind them, and the police on foot in front of them. (*Id.* ¶ 25-26.)

The Metropolitan Police Department ("MPD") arrested seventy-two individuals for parading without a permit.  Among those arrested were plaintiff class members Sarah Carr, Allyson Kirk, Chelsea Kirk, Jonathan Scolnik, and Matthew Singer.  In the course of their arrests, plaintiffs Kirk and Singer also allege that they sustained injuries, giving rise to claims for assault and battery.

Plaintiffs argue that their arrests were in violation of their Fourth Amendment rights, because parading without a permit is merely a civil infraction and plaintiffs committed no other acts that gave rise to probable cause for their arrest.  (Pls.' Rep. at 3 n.5.)  They point to a provision in the District of Columbia Municipal Regulations that fixes the fine for parading without a permit in the amount of $50.00.  *See* D.C. Mun. Regs. tit. 18, § 2603.1.  Defendant contends that the violation is criminal, owing to language found at D.C. Mun. Regs. tit. 24, § 707.7, and an ancillary provision at D.C. Mun. Regs. tit. 24, § 100.6,  and that even if it is not, the arrests were justified because the police had

probable cause to believe that plaintiffs "were violating any number of criminal statutes."  (Def.'s Mot. at 9-10.)

## ANALYSIS

### I.      Legal Standard

Under Rule 12(b)(6), dismissal is appropriate only when defendant has shown "'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *In re Swine Flu Immunization Prods. Liab. Litig.,* 880 F.2d 1439, 1442 (D.C. Cir. 1989) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  In making this determination, a court is to presume that all of the allegations in plaintiff's complaint are true, and draw all reasonable inferences in favor of the plaintiff. *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.,* 52 F.3d 373, 375 (D.C. Cir. 1995); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C. Cir. 1979). The court, however, "need not accept inferences drawn by plaintiffs if such inferences are unsupported the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### II.     The Lawfulness of the Arrests

#### A.      Is parading without a permit a civil infraction or a criminal offense?

Defendant contends that the arrests were lawful because Title 24, regarding "Public Space and Safety," sets forth a criminal offense thereby giving the police probable cause to believe that a criminal offense was being committed. (Def.'s Mot. at 4 (citing D.C. Mun. Regs. tit. 24, §§ 707.7, 106.12).)  Interpretation of a statute or regulation "begins with the language of the statute itself." *Am. Fed'n of Labor & Congress of Indus. Orgs. v. Fed. Elec. Comm'n,* 333 F.3d 168, 180 (D.C. Cir.

2003) (Henderson, J., concurring in judgment) (quoting *Butler v. West,* 164 F.3d 634, 639 (D.C. Cir. 1999)).

A parade is "any formation, march, procession, consisting of persons . . . or a combination of persons . . .  traveling in unison with a common purpose upon any public street, highway, alley, sidewalk or other public way . . . . " D.C. Mun. Regs. tit. 24, § 705.1.[1]  Defendant points to Section 707.7 of Title 24 of the regulations, which states that ". . . no parade shall be conducted without issuance of a permit." *Id.* at § 707.7.  Defendant essentially argues that since this provision does not stipulate a penalty, it is controlled by the general provision in the same title, which states that "any person violating any provision of this title for which a specific penalty is not provided shall, upon conviction, be punished by  a fine of not more than three hundred dollars ($300)." *Id.* at §100.6. According to defendant, the use of the words "conviction" and "punished" signals that the offense is criminal.  Thus, plaintiffs' admission that they paraded without a permit amounts to an admission of probable cause for their arrests. (Def.'s Mot. at 4.)  Plaintiffs counter that Title 18 ("Vehicles and Traffic") lists "parading without a permit" as a "[p]edestrian infraction[]" that carries a fifty dollar fine.  D.C. Mun. Regs. tit.18, § 2603.1. That provision also defines  pedestrian infractions as "civil infractions."  Therefore, plaintiffs contend, probable cause to arrest cannot arise from "parading without a permit." (Pls.' Rep. at 3.)

An arrest properly predicated on probable cause cannot constitute an unreasonable search or seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 817

---

[1]The definition of a parade was changed subsequent to the enactment of the First Amendment Rights and Police Standards Act of 2004.  The new definition, which excludes First Amendment assemblies, did not go into effect until April 13, 2005, after the events at issue here. *See* Legislative History note, D.C. Code § 5-331.01 (2005 Supp.).

(1996).  Under the D.C. Code, police officers may arrest an individual without a warrant if the officer "has probable cause to believe [the individual] has committed or is committing an offense in his presence." D.C. Code § 23-581(a)(1)(B) (emphasis added). Conduct not constituting an "offense" therefore cannot give rise to probable cause. In *Barnett v. United States*, 525 A.2d 197 (D.C. 1987), the D.C. Court of Appeals reversed a conviction based on an arrest for violating a non-criminal pedestrian traffic regulation.  *Id.* at 198-99.  The regulation at issue, "walking as to create a hazard," was listed as a pedestrian "civil infraction," it appeared in the same list as "parading without a permit," and it was punishable by a fine.[2]  D.C. Mun. Regs. tit. 18, § 2603.1. Although the Supreme Court has noted that "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one," *Smith v. Doe*, 538 U.S. 84, 94 (2003), the *Barnett* court held that since "appellant was arrested for violating a pedestrian traffic regulation which is a civil infraction for which only a monetary sanction may be imposed[,] . . . the arrest was invalid."  *Barnett,* 525 A.2d at 199. This holding was refined by the Circuit Court in *Doe et. al. v. Metro. Police Department of Columbia et. al,* 445 F.3d 460 (D.C. Cir. 2006). There, the Court considered a class action alleging Fourth Amendment violations stemming from arrests for underage possession or consumption of alcohol.  In *Doe,* the class members had been arrested under two different versions of the statute. The *Doe* Court held that because one version of the law was "unambiguously civil," their arrests  "stated a cause of action under the Fourth Amendment." *Id.* at 469.  However, because "the version of the [law] in effect when [another class member] was arrested *was not unambiguously a civil offense*" the

---

[2] The offense at issue in Barnett was at Title 18 of the now superceded D.C. Rules and Regulations, Section 2303.2 (1981). It is now "Path of vehicle, walk suddenly into." D.C. Mun. Regs. tit. 18 § 2603.2 (2006).

Court went on to consider whether probable cause existed by examining the facts and circumstances surrounding the arrest, including the fact that "the District had routinely criminally prosecuted underage possession of alcohol in the past." *Id.* at 468 (emphasis added). The Court ultimately held that "a prudent person could have reasonably believed" that the underage possession of alcohol constituted a crime. *Id.* at 469.

The provisions regarding "parading without a permit" are "not unambiguously a civil offense," for they arise in two different titles of the municipal regulations which appear to conflict. In Title 24, which relates to "Public Space and Safety," the language used and the penalty it imposes are arguably criminal. Throughout the D.C. Code and the D.C. Municipal Regulations, the language "shall, upon conviction, be punished . . ." is routinely coupled with criminal penalties. *See, e.g.* D.C. Code § 8-305 ("any person who shall violation any of the provisions. . .shall, upon conviction, be punished by a fine not exceeding $500 or imprisonment not exceeding one year . . . ."); D.C. Code § 8-115.12(a) (stating that the "criminal penalty" for knowing or willful violation of certain provisions of the Lead-Based Paint Abatement and Control Act "shall be subject, upon conviction, to a fine of $25,000 for each day of each violation, or to imprisonment . . . ."); D.C. Mun. Regs. tit. 9, § 3100.10 ("Any person violating § 3100.9 upon conviction shall be punished by a fine of not more than three hundred ($300), or imprisonment . . . ."); D.C. Mun. Regs. tit. 12H, §§ F-112.3, F-112.4 (providing that "upon conviction" for violation of any of the previous provisions of the fire code one "shall be punished by a fine of not more than three hundred dollars ($300) or imprisonment. . ." and later distinguishing "[c]ivil fines, penalties, and fees . . . as *alternative sanctions*. . . ."). Furthermore, the mandate of those laws regulating public space and safety does not exist solely to minimize interference with traffic, but also

6

to ensure that unusual uses of public space "do not endanger the public." D.C. Mun. Regs. tit. 24, § 100.1(a).

By contrast, the relevant section in Title 18 – entitled "Vehicles and Traffic" – is arguably civil in nature because of its heading and the legislative history of other parts of this Title. "Parading without a permit" is listed under the heading of "Pedestrian Infractions" in Title 18, and is referred to as a  "civil infraction." *Id.* tit.18 § 2603.1. While this is not dispositive, *see Smith,* 528 U.S. at 94, it strongly suggests that, as a traffic violation, it is a non-criminal infraction. Furthermore, the court in *Barnett* found that a similar pedestrian violation, "walking as to create a hazard," was an infraction that was not subject to  arrest. *Barnett,* 525 A.2d. at 198-99.  However, the offense in *Barnett,* unlike parading without a permit, is not also included in Title 24, which addresses "Public Space and Safety." Moreover, since the *Barnett* offense does not involve engaging in unlawful behavior as part of a collective group,  it is not clear that the offense at issue in this case is sufficiently analogous to that in *Barnett* so that *Barnett* will control.

It is also noteworthy that the ambiguity in the statute was recognized by the D.C. Council, which revised the statute after a series of anti-war and anti-globalization demonstrations in 2000- 2002. The D.C. Council initiated an investigation into police handling of these events that led the District of Columbia Affairs Section of the D.C. Bar to note that "misunderstandings concerning the rights and duties of citizens and of government authorities concerning First Amendment exercise have become pervasive."  November 9, 2004 letter, reprinted in December 1, 2004 Council Report on the First Amendment Rights and Police Standards Act of 2004, Bill 15-968.  As a result, the D.C. Council

enacted the First Amendment Rights and Police Standards Act of 2004, which went into effect on April 13, 2005.[3]

Given this ambiguity, *Doe* teaches that the Court must determine whether "a prudent person could have reasonably believed" that parading without a permit was a crime and whether there was probable cause to believe plaintiffs were engaged in such conduct. "Whether probable cause exists is determined by looking at all of the facts and circumstances at the time of the arrest, including the knowledge and experience of the arresting officer." *Doe,* 445 F.3d at 468 (citing *United States v. Kayode,* 254 F.3d 204, 209 (D.C. Cir. 2001)). This determination turns on whether the "facts and circumstances alleged are 'sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Doe,* 445 F.3d at 468 (citing *Beck v. Ohio*, 379 U.S. 89, 91(1964)).

Among other factors to consider, the Court must determine how the law has been enforced in the past to determine whether the officer acted reasonably. *Doe* 445 F.3d at 468. Here, defendant has not offered any basis upon which to assess the reasonableness of the officers' decision to arrest. In particular, no history has been provided regarding the enforcement of the "parading without a permit"

---

[3]The Act carved out specific provisions regarding "First Amendment assemblies" as opposed to "parades" that are not "for the purpose of persons expressing their political, social, or religious views." D.C. Mun. Regs. tit. 24, § 105(a).  The new regulations require that First Amendment assemblies give notice of their plans and get approval of their planned march, but Section 105(a) of the Act makes clear that "[i]t shall not be an offense to assemble or parade [in a First Amendment Assembly] on a District street, sidewalk, or other public way . . . without having provided notice or obtained an approved assembly." *Id.* § 105(a).  The notification and approval process is meant solely "to avoid situations where more than one group seeks to use the same space at the same time and to provide the MPD . . . the ability to provide appropriate police protection, traffic control, and other support for participants and other individuals." *Id.*  Although the Act was enacted before the events here, it did not go into effect until afterwards.

provisions of the municipal regulations, nor have any statements of policy or procedure from law enforcement manuals been introduced.  Given the absence of any facts to suggest that it was reasonable for the officers to assume that parading without a permit was a criminal offense, defendant's motion cannot succeed.

### B.      Did Probable Cause to Arrest Exist for Another Offense?

In the alternative, defendant argues that, even if probable cause was lacking with respect to parading without a permit, the officers had probable cause to arrest for other criminal violations. (Def.'s Mot. at 10, *citing  Scott v. United States*, 878 A.2d 486 (D.C. 2005) (upholding the legality of appellant's arrest, even if the officer was mistaken in arresting him for violating a municipal regulation since the officer could reasonably have considered plaintiff's conduct sufficiently severe to constitute a breach of the peace).) The law is clear that there is no Fourth Amendment violation when probable cause to arrest exists for *any* offense, even if the officer improperly relied on an offense for which probable cause was lacking.  *See Devenpeck v. Alford* 543 U.S. 146, 153 (2003) (an arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"). However, "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause *particularized* with respect to that person." *Ybarra v. Illinois,* 444 U.S. 85, 91 (1979).

Invoking *Scott*, defendant argues that plaintiffs' arrests were reasonable "because the arresting officers could have reasonably believed that plaintiffs were violating any number of criminal statutes" such as "rioting or inciting to riot" or "[o]bstructing public road." (Def.'s Mot. at 10.)[4]

---

[4] While "obstructing public road" is an "indisputably criminal statute," *Scott*, 878 A.2d at 488, and seems a plausible charge at first glance, the text of the statute makes clear that the

However, defendant does not allege that its officers witnessed any particular plaintiffs engaging in these acts. Nor does it offer any account of what particular criminal conduct attracted the attention of the officers. More importantly, plaintiffs' complaint alleges that although they witnessed some defacement of property and property damage by others, they did not engage in this conduct. (Compl. ¶ 11.)  Since at this stage the Court must accept those allegations as true, defendant's conclusory assertion that there was probable cause to arrest for some other offense must be rejected.

## CONCLUSION

For the foregoing reasons, the Court will deny defendant's Motion to Dismiss. The above-captioned matter is set down for an Initial Scheduling Conference on August 17, 2006 at 10:30 a.m.


                                        s/
                              _____
                              ELLEN SEGAL HUVELLE
                              United States District Judge


Date:   July 26, 2006

---

offense relates to material alteration and/or destruction of property: "If any person shall alter or in any manner obstruct or encroach on a public road, or cut, destroy, deface, or remove any milestones . . . or place any rubbish, dirt, logs, or make any pit of hole therein, such person may be indicted . . . ." D.C. Code § 22-3320 (2001). This is not the case here.