UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SARAH CARR, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-00098 (ESH) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR CLASS CERTIFICATION**

Plaintiffs under Rule 23(b)(2), Fed. R. Civ. P., move the Court for an order stating as follows:

1. This action is certified as a class action under Rule 23(b)(2). Plaintiffs are representative parties, and plaintiffs' counsel are appointed class counsel, of the class of all persons who (a) were arrested for parading without a permit on the evening of January 20, 2005, in the Adams Morgan neighborhood of the District of Columbia in the area approximately bounded by Columbia Road, 18th Street, and Belmont Road; and (b) may have paraded without a permit, but who committed no other act providing probable cause for custodial arrest. The class claims are for declaratory, injunctive, and compensatory relief for arrest alleged to have violated the First and Fourth Amendments to the Constitution of the United States and District of Columbia common law.

2. On or before October 30, 2006, defendant will deliver to class counsel information known to defendant with respect to the identities and locations of the arrestees identified in paragraph 1(a). Based on this and any other pertinent information obtained, class counsel on or before November 15, 2006, by first class mail will notify

arrestees of the nature of the action, the definition of the class certified, the class claims, and any other pertinent matters determined by class counsel. The notice will ask class members to inform class counsel by December 15, 2006, of any professional medical treatment received for any injury caused by the arrest. On or before January 13, 2007, class counsel will file a report stating the number of class members who have informed class counsel that they received professional medical treatment for injury caused by the arrest.

Defendant has informed plaintiffs that it objects to plaintiffs' proposed order in five respects. The accompanying memorandum supports plaintiffs' motion and shows that defendant's objections lack merit.

Respectfully submitted,

_____/s/_____
Arthur B. Spitzer, D.C. Bar No. 235960
Fritz Mulhauser, D.C. Bar No. 455377
American Civil Liberties Union
of the National Capital Area
1400 20th Street, NW, #119
Washington, DC 20036
202/457-0800

_____/s/_____
Daniel M. Schember, D.C. Bar #237180
Susan B. Dunham, D.C. Bar # 362378
Gaffney & Schember, P.C.
1666 Connecticut Avenue, N.W., Suite 225
Washington, D.C. 20009
202/328-2244

On behalf of the D.C. Chapter, National
Lawyers Guild and the American Civil
Liberties Union of the National Capital Area

Counsel for Plaintiffs

October 4, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH CARR, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civ. A. No. 06-00098 (ESH)

**MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR CLASS
CERTIFICATION AND DISCOVERY PLAN**

In *Chang v. United States*, 217 F.R.D. 262 (D.D.C. 2003), the Court under Rule
23(b)(2), Fed. R. Civ. P., certified the plaintiffs in *Barham v. Ramsey*, Civ. A. No. 02-
2283 (EGS) (D.D.C.), as representatives of a class of several hundred persons who had
been arrested *en masse* in Pershing Park.  In a companion case, *Diamond v. District of
Columbia*, Civ. A. No. 03-2005 (EGS) (D.D.C.), in which plaintiffs are represented by
undersigned counsel, the Court certified under Rule 23(b)(2) a class consisting of two
subclasses of persons arrested at two other locations on the same day as the arrests in
*Barham*.  *Diamond v. District of Columbia*, Civ. A. No. 03-2005 (EGS) (D.D.C.) (Minute
Order June 17, 2004).  One subclass in *Diamond* is a group of 42 arrested on the
Connecticut Avenue sidewalk between K and L Streets, after they walked there from
Dupont Circle; the other is a group of about 150 arrested at Vermont Avenue and K
Street, after they paraded in the streets to that intersection from Franklin Park.  *Id*., Pltfs'
Mem. [Doc 18].

The *Chang* opinion certifying the *Barham* class of arrestees thoroughly addresses and resolves in favor of class certification all issues raised by plaintiffs' motion, with four exceptions: (a) numerosity of the class, (b) incidental nature and commonality of compensatory relief, (c) adequacy of the class representatives, and (d) adequacy of counsel. *Chang*, 217 F.R.D. at 267-74. These four issues also should be resolved in favor of class certification.

**Numerosity**

The 400 arrestees in *Barham* are more numerous than the class proposed here, which consists of the great majority of approximately 72 persons who were arrested. Complaint ¶ 12. The class proposed here, however, is more numerous than the subclass of 42 certified in *Diamond*. Defendant properly does not dispute the numerosity of the proposed class. *See Thomas v. Christopher,* 169 F.R.D. 224, 237 (D.D.C. 1996) ("numerosity is generally satisfied by a proposed class of at least 40 members"), *rev'd in part on other grounds,* 139 F.3d 227 (D.C. Cir.1998).[1]

**Incidental Nature and Commonality of Compensatory Relief**

In *Chang* the Court certified the *Barham* class under Rule 23(b)(2) because compensatory relief was incidental to the equitable relief and any variation in entitlement to damages did not preclude commonality. *Chang*, 217 F.R.D. at 273-74. The same is true here. As in *Chang*, compensatory relief, if defendant is found liable, would be incidental to an appropriate injunction (a) requiring expungement of class members' arrest records and return of fines paid, (b) allowing class members to omit reference to

---

[1] As in *Barham*, the class proposed here is geographically dispersed. Complaint ¶ 12. This factor favors certification. *Chang*, 217 F.R.D. at 269.

the arrest in responding to inquiries and filling out employment applications and other

forms, and (c) prohibiting future mass arrests in similar circumstances.

The injury suffered in common by nearly all class members—detention outdoors

in cold weather, handcuffing behind the back, transportation from the scene, and release

about 7-to-12 hours later—warrants a single, common damages award. *See Chang*, 217

F.R.D. at 273-74, *citing Dellums v. Powell,* 566 F.2d 167, 174 n. 6 (D.C. Cir. 1977)

(single, common damage award for detention lasting less than 12 hours).  A small

number of class members, including plaintiff Sarah Carr, were released on citation with

obligation to appear in court.  The obligation consumed a day or her time.  An additional

award of a single, common sum for those class members who were required to appear in

court after release would not create impermissible variation among the damages claims.

*Id*. (four separate damage award categories permissible).

Counsel for plaintiff have communicated with nearly a third of the class (fifteen

class members in addition to the five plaintiffs).  None of them have informed counsel

that they received professional medical treatment for injuries caused by the arrest.  Given

the common nature of the arrest and detention, it is unlikely that any class member

received professional treatment for injuries.  It is unlikely that any variation in the degree

of class members' physical discomfort or mental distress warrants variation in

compensatory relief.[2]

---

[2] The proposed order, however, provides for notification of the class under Rule
23(c)(2)(A) and for inquiry and reporting as to whether any class members received
professional medical treatment for injuries caused by the arrest.  The class certification
order can be amended under Rule 23(c)(1)(C) if, contrary to expectations, information
obtained about medical treatment of class members so warrants.

**Adequacy of Class Representatives**

The class representatives will adequately represent the class. The complaint states each representative's detailed account of her or his actions and arrest, indicating the clarity of each representative's recollection and indicating, as well, that the common circumstances of the arrests of the representatives are also common to the arrests of the proposed class members. Complaint ¶¶ 17-39. These common circumstances raise the legal claims that are common to them and the proposed class, and show that no plaintiff has interests antagonistic to those of the class.

**Adequacy of Counsel**

Counsel here are class counsel in *Diamond*. They are experienced attorneys qualified to serve as class counsel. Mr. Spitzer has been Legal Director of the local ACLU for more than 23 years, and has been counsel in numerous class action lawsuits, including *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977) (successful class action for damages on behalf of 1,200 falsely accused demonstrators); *Smith v. Montgomery Cty.*, 573 F. Supp. 604 (D. Md. 1983), *appeal dismissed,* 740 F.2d 963 (4th Cir. 1984) (successful class action for damages on behalf of thousands of arrestees unlawfully strip-searched at detention center); *Lampkin v. Dist. of Columbia*, 27 F.3d 605 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1016 (1994) (class action to obtain school transportation for homeless children); *Green v. Dist. of Columbia,* 134 F.R.D. 1 (D.D.C. 1991) (class action for injunctive relief regarding health care, legal materials and educational opportunities for prisoners); *Barry v. Little*, 669 A.2d 115 (D.C. 1995) (class action challenging cutoff of welfare benefits), *cert. denied*, 519 U.S. 1108 (1997); *LaShawn A. v. Dixon*, 762 F. Supp. 959 (D.D.C. 1991), *aff'd sub nom. LaShawn A. v. Barry,* 990 F.2d 1319 (D.C. Cir.

1993), *cert. denied,* 510 U.S. 1044 (1994) (class action for injunctive relief on behalf of

children in foster care).  Mr. Spitzer has also been involved in numerous lawsuits

involving the rights of individuals to engage in free expression on the public streets,

sidewalks and Parks of the District of Columbia. *See, e.g., Clark v. Community for*

*Creative Non-Violence,* 468 U.S. 288 (1984); *White House Vigil for the ERA Committee*

*v. Watt,* 746 F2d 1518 (D.C. Cir. 1984); *Kroll v. U.S. Capitol Police,* 847 F.2d 899 (D.C.

Cir. 1988); *United States v. Fennelly,* 726 F. Supp. 871 (D.D.C. 1989); *Community for*

*Creative Non-Violence v. Turner,* 893 F.2d 1387 (D.C. Cir. 1990); *United States v. Doe,*

968 F.2d 86 (D.C. Cir. 1992); *Christian Knights of the Ku Klux Klan v. District of*

*Columbia,* 972 F.2d 365 (D.C. Cir. 1992); *Mahoney v. Babbitt,* 105 F.3d 1452 (D.C. Cir.

1997); *Lederman v. United States,* 291 F.3d 36 (D.C. Cir. 2002); *People for the Ethical*

*Treatment of Animals, Inc. v. Gittens*, 215 F. Supp. 2d 120 (D.D.C. 2002).

　　　Mr. Schember and Ms. Dunham also are experienced litigators.  *See, e.g.,*

*Covington v. Dist. of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995) ("record indicates

plaintiff counsels' years of legal experience as well as their ability to handle complicated

federal cases").  Their firm previously has represented plaintiffs in federal class actions in

*Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115 (3rd Cir. 1990); *Nichols v. Bd. of Trustees of*

*the Asbestos Workers Local 24 Pension Plan,* 835 F.2d 881 (D.C. Cir. 1987); *Bassil v.*

*Dist. of Columbia,* Civ. A. No. 97-2021 (JGP) (D.D.C. Sept. 6, 2001) (approving

settlement for 500-600 D.C. prisoners affected by shigellosis outbreak); and *Anderson-*

*Bey v. District of Columbia*, Civ. A. No. 00-2000 (RCL) (D.D.C. June 26, 2002)

(certifying class of prisoners alleging unconstitutional abuse during long inter-prison bus

transfers).  In all of these cases, Mr. Schember served as lead counsel for the class.

**Defendant's Objections Lack Merit**

By email communication to plaintiff's counsel,[3] defendant has raised five

objections to plaintiffs' motion.  None has merit.

**Definition of the Class[4]**

Defendant objects to the part of the proposed definition of the class that is printed

below in italics:

> Plaintiffs are representative parties, and plaintiffs' counsel are appointed class
> counsel, of the class of all persons who (a) were arrested for parading without a
> permit on the evening of January 20, 2005, in the Adams Morgan neighborhood
> of the District of Columbia in the area approximately bounded by Columbia
> Road, 18th Street, and Belmont Road; and (b) may have paraded without a permit,
> *but who committed no other act providing probable cause for custodial arrest*.

Defense counsel wrote to plaintiff's counsel "that the class contains others that

committed offenses in addition to parading without a permit."  *Id.*

Defendant's objection lacks merit.  Persons who were arrested with plaintiffs "but

who committed [an act other than parading without a permit] providing probable cause

for custodial arrest" are not in the same "class" as plaintiffs.  Plaintiffs' claims are not

"typical of the claims" of persons who in addition to parading committed unlawful acts

because plaintiffs did not commit those acts.  Rule 23(a), Fed. R. Civ. P.

Persons who committed an act (other than parading without a permit) providing

probable cause for custodial arrest do not have valid civil claims for false arrest.  It does

not matter that police arrested them for parading without a permit and did not know at the

---

[3] E-mail from Andrew Saindon, counsel for defendant, to Susan Dunham, counsel for
plaintiffs, and Ellen Efross, counsel for defendant (cc to dclaw@radix.net, law office for
plaintiffs' counsel Daniel Schember) (October 2, 2006, 11:36 a.m. EDT) (on file with
Susan Dunham and Daniel Schember).

[4] The proposed definition of the class is identical to that stated in paragraph 11 of the
complaint.  Before defense counsel's recent email communication, defendant had not
objected to this definition.

time that they were among those who had committed other acts that are offenses.[5] *Scott v. United States*, 878 A.2d 486 (D.C. 2005) (arrest valid if probable cause exists to arrest for *some* offense, not just offense arresting officers have in mind); *Faniel v. Chesapeake and Potomac Tel. Co.*, 404 F.2d. 147, 150 (D.C. 1979) ("The essential elements of the tort are (1) the detention or restraint of one against his will, within boundaries fixed by the defendant, and (2) the unlawfulness of the restraint.");[6] *Scott v. District of Columbia*, 101 F.3d 748, 753-54 (D.C. Cir. 1996) ("elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim"; *citing Dellums v. Powell*, 566 F.2d 167,175 (D.C. Cir. 1977)).  *See also*, *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *Whren v. United States*, 517 U.S. 806, 814 (1996) (officer's subjective intent not relevant to probable cause).[7]  Thus, civil false arrest claimants cannot prevail by claiming that,

---

[5] The lack of contemporaneous police knowledge may as a practical matter preclude prosecution for the acts providing probable cause for arrest, but the reason is that the Fifth Amendment prohibits the government in criminal cases from calling defendants to the stand and asking them whether they committed the acts.  Civil false arrest plaintiffs, however, cannot invoke the Fifth Amendment to prevent defendants from discovering what they did on the occasions of their arrests.  *Grand Jury Proceedings v. United States*, 350 F.3d 299, 302 299, 302 (2d Cir. 2003) ("It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of consideration of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted"); *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1088 (5th Cir. 1979) (defendant "should not be required to defend against a party who refuses to reveal the very information which might absolve defendant of all liability"; court may stay proceedings until criminal statute of limitations runs to eliminate Fifth Amendment barrier to defendant's discovery).

[6] As the *Faniel* court stated, the element of the tort is "the unlawfulness of the restraint," not failure of the police to *know* the lawfulness of the restraint at the time of the arrest.

[7] For plaintiffs to prevail in civil suits for false arrest either they must prove absence of probable cause to arrest or the defendant must fail to prove probable cause.  Our Court of

although there was probable cause for their arrest, the police did not know about it at the time.  For this reason, the persons whom defendant would include in the class do not have valid claims and are not similarly situated to the plaintiffs.[8]

**Availability of Injunctive Relief**

Defendant has asserted to plaintiffs "that claims for injunctive relief prohibiting future mass arrests are moot in light of changes in District law."  E-mail from Andrew Saindon, *supra*, at note 3.  Defendant's assertion, however, is not an argument against plaintiffs' proposed class certification order because plaintiffs properly seek injunctive relief other than an injunction against future arrests.  As stated above, at pages 4-5, plaintiffs seek an injunction "(a) requiring expungement of class members' arrest records and return of fines paid, [and] (b) allowing class members to omit reference to the arrest in responding to inquiries and filling out employment applications and other forms."  Defendant has expressed no objection to plaintiffs' pursuit of this injunctive relief.  Therefore, defendant's assertion is not a basis for rejecting the portion of plaintiffs'

---

Appeals has held that defendant bears the burden of proving probable cause.  *Dellums v. Powell*, 566 F.2d 167, 175-76 (D.C. Cir. 1977).  Other courts have held that plaintiff must prove absence of probable cause.  *Dubner v. San Francisco*, 266 F.3d 959 (9th Cir. 2001); *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998).  In either case, however, defendant is entitled to discover facts relevant to whether there was probable cause to arrest the plaintiff.  *See* note 5, *supra*.

[8]  If the reason for defendant's unusual proposal to increase the size of the plaintiff class is belief that, by adding persons who in addition to parading committed offenses, defendant will defeat the false arrest claims of persons who merely paraded, then this belief is incorrect.  Where a group is arrested, there must be probable cause to arrest each individual in the group.  *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("a search or seizure of a person must be supported by probable cause particularized with respect to that person").  *See also Barham v. Ramsey*, 434 F.3d 565, 574 (D.C. Cir. 2006) (acknowledging that while "unlawful activity may have occurred in the course of the protest—with some individuals engaging in disorderly conduct, for example—the simple, dispositive fact here is that [police officials] have proffered no facts capable of supporting the proposition that . . . reasonable, particularized grounds [existed] to believe every one of the 386 people arrested was observed committing a crime").

proposed order that states, "The class claims are for declaratory, injunctive, and compensatory relief for arrest alleged to have violated the First and Fourth Amendments to the Constitution of the United States and District of Columbia common law."

Whether plaintiffs are entitled to an injunction "prohibiting future mass arrests in similar circumstances," *supra* at 5, is not ripe for determination at this time. Defendant's liability must be determined first. As we show below, however, defendant's assertion does not foreclose the potential availability in this case of injunctive relief against future mass arrests like the arrest of plaintiffs.

Defense counsel wrote to plaintiffs' counsel:

> On review of the pertinent provisions of the D.C. Code, specifically sections 5-331.05 and 5-331.07, we believe that these two code provisions read together, as well as the overall intent of Subchapter I, "First Amendment Assemblies," preclude the MPD from arresting for parading without a permit persons engaged in First Amendment Assemblies.

E-mail from Andrew Saindon, *supra*, at note 3. Defendant's statement that the cited code provisions "preclude the MPD from arresting *for* parading without a permit," *id.*, however, is not a statement that the provisions preclude the MPD in circumstances similar to plaintiffs' from arresting persons for something else—such as "unlawful disorderly conduct" or, perhaps, parading at an unreasonable time and place. Indeed, D.C. Code § 5-331.07(b) (2006), provides no such assurance. It states:

> (1) Where participants in a First Amendment assembly fail to comply with reasonable time, place, and manner restrictions, the MPD shall, to the extent reasonably possible, first seek to enforce the restrictions through voluntary compliance and then seek, as appropriate, to enforce the restrictions by issuing citations to, or by arresting, the specific non-compliant persons, where probable cause to issue a citation or to arrest is present."

> (2) Nothing in this subsection is intended to restrict the authority of the MPD to arrest persons who engage in unlawful disorderly conduct, or violence directed at persons or property.

11

Under this provision the MPD in circumstances similar to plaintiffs' apparently are allowed to (a) determine that persons parading in a street are not parading at a reasonable time and place; (b) decide that it is not "reasonably possible" to "seek to enforce" the MPD's reasonable time and place determination "through voluntary compliance"—perhaps because (1) the persons are moving and numerous and spread over a distance, causing police to believe that communication seeking voluntary compliance is not feasible; or (2) interspersed among the numerous persons are a few who are engaged in "violence directed at . . . property"; (c) conclude that all persons parading in the street are "non-compliant persons" because all of them are parading at a time and place that is not reasonable; and (d) "enforce" the MPD time and place determination "by arresting" them.  Thus, District law allows persons to parade in the street without a permit but appears to grant police authority to arrest them without warning based on an on-the-spot police determination that the time or place of the parade is not reasonable.

Plaintiffs claim that, without an order to disperse and reasonable opportunity to comply, the First Amendment precludes custodial arrest in these circumstances. Complaint ¶ 43.  Defendant has not challenged the validity of this claim.  Because the code provisions cited by defendant apparently allow persons to be arrested without warning if they parade in the street at a time or place deemed unreasonable by the police, these provisions do not foreclose the availability of an injunction that would prohibit arrests in these circumstances without an order to disperse and reasonable opportunity to comply.

**Damages for Those Who Had to Return to Court**

Defense counsel wrote to plaintiffs' counsel, "We object to adding an element to the common claim for those who had to come back for further proceedings . . . as those must be addressed individually."  E-mail from Andrew Saindon, *supra*, at note 3.  This objection is without merit.  An additional award of a single, common sum for those class members who were required to appear in court after release is appropriate.  *See Chang*, 217 F.R.D. at 273-74, *citing Dellums v. Powell,* 566 F.2d 167, 174 n. 6 (D.C. Cir. 1977) (single, common damage award for detention lasting less than 12 hours).  Allowance of this additional award to those who had to return to court after their release would not create impermissible variation among the class damages claims.  *Id*. (four separate damage award categories permissible).

**Damages for Those Who Received Professional Treatment for Injuries**

Defense counsel wrote to plaintiffs' counsel, "We object to adding an element to the common claim for . . . those who have extraordinary medical claims, as those must be addressed individually."  E-mail from Andrew Saindon, *supra*, at note 3.  Defendant's objection is off the mark.  We agree that the jury hearing the common claim for damages should not hear any evidence of the injuries incurred by any class member who received professional medical treatment.  We agree that the additional damages of any such class member should be determined individually.

The first question with respect to such class members is whether there are any. As noted, *supra* at 5, plaintiffs have reason to believe there likely are none, but they have included in their proposed order a notice and reporting procedure to determine promptly whether this belief is correct.  If, contrary to plaintiffs' belief, there are class members

who received professional medical treatment for their injuries, the Court can then
determine how these damages claims should be handled.[9]

### Information about Class Members who Received Professional Treatment

Defense counsel wrote to plaintiffs' counsel: "As to the notice you reference in
your motion, we would like it to include a request for medical records, if treated . . . [and]
we would like your January 13, 2007 report to include the names and medical records of
any positively responding plaintiffs, and not just the 'number' you proposed."  E-mail
from Andrew Saindon, *supra*, at note 3.  The Court should not adopt defendant's
suggestion.

The purpose of the proposed notice and initial report is to determine promptly
whether the number of class members who received professional medical treatment is so
large that their damages claims might predominate so that the class certification order
should be amended to exclude damages claims entirely.  *Chang*, 217 F.R.D. at 273, *citing
Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997) ("Courts have generally
permitted (b)(2) classes to recover monetary relief in addition to declaratory or injunctive
relief, at least where the monetary relief does not predominate.").  If the number is so
large as to make the amendment appropriate, the filing of the voluminous medical records
would be a waste of time and resources.

More important, inclusion of an obligation to state names and file medical records
with the initial report would make the January 13, 2007, date for the report too soon.
Any class members who received professional medical treatment would need time both to

---

[9] One approach would be to give these individuals the option of either exclusion from the
class, *Chang*, 217 F.R.D. at 275 (deeming some individuals to have opted out of the
(b)(2) class) or having their additional damages determined by a magistrate.

decide whether to waive their right to medical privacy in order to pursue their claims and to obtain their medical records if they decided to go forward. This period of time would need to be long enough to enable them to consult attorneys and the professionals who treated them, particularly if they received mental health treatment. It is not reasonable to expect class members who receive notice of the action in late November 2006 to consult counsel and medical professionals and to obtain and send their medical records to class counsel by December 15, or anytime soon thereafter, given the holidays thereafter.[10]

For these reasons, the January 13, 2007, report should be limited to the number of class members who responded to the notice and reported having received professional medical treatment for injuries caused by their arrests. If there are such class members and their number is not so large as to warrant amendment of the class certification order to exclude damages claims entirely, then an appropriate order can be entered concerning the handling of these class members' claims, including discovery of the medical records of those who wish to go forward.

**Conclusion**

Plaintiffs' motion should be granted.

Respectfully submitted,

/s/
_____
Arthur B. Spitzer, D.C. Bar No. 235960
 Fritz Mulhauser, D.C. Bar No. 455377
American Civil Liberties Union
of the National Capital Area
1400 20th Street, NW, #119
Washington, DC 20036
202/457-0800

---

[10] Class counsel will be away from their practices from December 20, 2006, through January 8, 2007. Class members likely will have family obligations and travel plans as well.

_____/s/_____

Daniel M. Schember, D.C. Bar #237180
Susan B. Dunham, D.C. Bar # 362378
Gaffney & Schember, P.C.
1666 Connecticut Avenue, N.W., Suite 225
Washington, D.C. 20009
202/328-2244

On behalf of the D.C. Chapter, National
Lawyers Guild and the American Civil
Liberties Union of the National Capital Area

Counsel for Plaintiffs

October 4, 2006