UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| SARAH CARR, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0098 (ESH) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN PARTIAL OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

**I. Introduction**

Plaintiffs' Motion for Class Certification, filed on October 4, 2006, seeks certification as a class under Rule 23(b)(2).

While the defendant ("the District") believes that certification under Rule 23(b)(3) may be more appropriate for a damages determination, the District does not necessarily object to the certification of a class here under Rule 23(b)(2), but opposes the certification of the class as proposed by plaintiffs. The suggestions set forth by the District were each rejected by plaintiffs.[1]

Additionally, the District avers that it is entitled to medical records to determine if a (b)(2) or (b)(3) damage class even is viable. If a large number of putative class members claim medical expenses, there can be no class.

Finally, the District avers that any claims for injunctive relief prohibiting future mass arrests are moot in light of changes in District law.

---

[1] That the parties were close to agreement on most substantive issues here is perhaps reflected by plaintiffs' inadvertent retention of the word "consent" in the caption of their memorandum.

**II. Argument**

Plaintiffs bear the burden of establishing that a class exists, meeting the four prerequisites of Fed. R. Civ. P. 23(a), and satisfying at least one of the categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Hartman v. Duffey*, 19 F.3d 1459, 1468 (D.C. Cir. 1994); *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 256 (D.D.C. 2002).

While a court has broad discretion to decide whether plaintiffs have met their burden, *Hartman*, 19 F.3d at 1471, it may not conduct a preliminary inquiry into the merits of the suit, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974), but may consider matters outside the pleadings to ascertain whether the claims or defenses are susceptible of resolution on a class-wide basis. *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413 n.8 (D.C. Cir. 1984).

The District does not presently object to plaintiffs' claims to meet the "numerosity," "adequacy of class representatives," and "adequacy of counsel" elements of Rule 23(a). *See* P.Mem. at 4, 6. However, the District objects to plaintiffs' definition of the class, and their claim of the "incidental nature and commonality of compensatory relief." *Id*. at 4–5.

*Class Definition*

Plaintiffs propose to define the class as, *inter alia*, those who "may have paraded without a permit, but who committed no other act providing probable cause for custodial arrest." P.Mot. ¶ 1.

The District objects to that portion of the definition for a number of reasons, not the least of which is that plaintiffs are apparently assuming that which they must prove. Plaintiffs want to define the proposed class to exclude those who committed "an act other than parading without a permit providing probable cause for custodial arrest." P.Mem. at 8.

2

Defining the class as plaintiffs urge would do little more than prejudge the question of liability, *i.e.*, whether or not the MPD had probable cause for the custodial arrests.

The District asserted, in its Motion to Dismiss, that the MPD had probable cause to arrest plaintiffs here, if for no other reason than that "parading without a permit" was a criminal offense allowing custodial arrest if committed in the police's presence. The Court provisionally rejected that argument, however, finding that discovery was warranted on the issue of probable cause. *See* Order of July 26, 2006, at 10. The District believes that the evidence will show that the group of persons so arrested were taken into custody to stop the violent and dangerous activities previously documented. *See* Declaration of Cathy Lanier, dated June 19, 2006, ¶¶ 5–8, 10–11.

However, these facts cannot be determined without discovery, and plaintiffs' definition of class would necessarily prejudice the District's ability to present the referenced defense.

*Mootness*

Plaintiffs also claim that their request for injunctive relief "prohibiting future mass arrests in similar circumstances" is "not ripe for determination at this time." P.Mem. at 11. Plaintiffs are incorrect.

That entirely legal issue can and should be determined now; it is simply a matter for the Court to interpret the relevant statute in light of the claims presented here.

As the District has advised plaintiffs, recent changes in District law preclude the MPD from arresting for parading without a permit persons engaged in "First Amendment Assemblies." *See* "First Amendment Assemblies Act of 2004," *codified at* D.C. Official Code § 5-331.01 *et seq.* (2005 Supp.) (effective Apr. 13, 2005) ("the Act").

That law specifically decriminalizes the offense under which plaintiffs were arrested. *Id.* at § 5-331.05(a) ("It shall not be an offense to assemble or parade on a District street, sidewalk, or other public way, or in a District park, without having provided notice or obtained an approved assembly plan.").

Plaintiffs request injunctive relief to prevent a recurrence of the disputed events, but such a request is moot. Plaintiffs base that claim on their belief that the First Amendment precludes custodial arrests "in these circumstances" without an order to disperse and reasonable opportunity to comply, P.Mem. at 12 (citing Complaint ¶ 43), which theory they claim the District has not challenged. Plaintiffs are, again, incorrect. *See* Motion to Dismiss at 5–6 (the Supreme Court has repeatedly reaffirmed that the police can arrest for minor, fine-only offenses).

The hypothetical scenarios presented by plaintiffs should be rejected. The Act sufficiently cabins the discretion of the MPD such that there is—at best—a remote likelihood of "similar circumstances" occurring again.

As even a cursory reading of that Act will reveal, the stated purpose of the law is to facilitate freedom of expression during "peaceful First Amendment assemblies." D.C. Official Code § 5-331.03.

The overly broad injunction urged by plaintiffs would demand an order to disperse and an opportunity to comply in *all* asserted First Amendment situations, regardless of the exigencies of the situation and the potential danger to persons and property. But the Act provides exactly the relief plaintiffs seek in *most* such situations, while still allowing the MPD the flexibility it needs to respond to potentially dangerous and extraordinary circumstances. *See* D.C. Official Code §§ 5-331.04 (authorizing MPD to enforce "reasonable time, place, and manner restrictions" on such assemblies); 5-331.07(b)(1) (if assembly participants fail to comply with such reasonable

4

restrictions, "the MPD shall, to the extent reasonably possible," first seek voluntary compliance, and then citations or arrest); 5-331.07(c) (where assembly participants "engage in unlawful disorderly conduct, violence toward persons or property, or unlawfully threaten violence, the MPD shall, to the extent reasonably possible, respond by dispersing, controlling, or arresting the persons engaging in such conduct, and not by issuing a general order to disperse, thus allowing the First Amendment assembly to continue."); 5-331.07(d) (the MPD shall not issue a general order to disperse a First Amendment assembly except where "a significant number or percentage" of the participants fail to substantially comply with previously established restrictions, or "are engaging in, or are about to engage in, unlawful disorderly conduct or violence").

The gist of plaintiffs' claims is that they participated in a spontaneous march during which violent acts and incidents of vandalism occurred, and the MPD made an impermissible "mass arrest" based in part on the content of the participants' views. *See, e.g.*, Complaint ¶¶ 43, 30; P.Opp.Mot.Dism. at 1 & n.2. The District has asserted that, at the time of the incidents alleged, "parading without a permit" was an arrestable offense, and probable cause existed to make all of the arrests in question.

However, as shown, the FAAA was designed to prevent—and likely will prevent—the recurrence of the exact scenario described. The change in District law here has mooted a major element of plaintiffs' request for injunctive relief.

The mootness doctrine limits Article III courts to deciding "actual, ongoing controversies." *Pharmachemie B.V. v. Barr Lab., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002) (*quoting Honig v. Doe*, 484 U.S. 305, 317 (1988)). A given case is moot if subsequent events have occurred such that a decision "will neither presently affect the parties' rights nor have a

more-than-speculative chance of affecting them in the future." *Pharmachemie B.V.*, 276 F.3d at 631 (*quoting Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)); *accord Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990).[2]

> Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects. [T]he challenged conduct has stopped, and is not likely to reoccur in the same context. Any future harm is purely 'conjectural or hypothetical,' and as such declaratory relief is not appropriate."

*Fraternal Order of Police*, 134 F.Supp.2d at 41, 43 (*quoting City of Houston v. Dep't of Housing and Urban Development*, 24 F.3d 1421, 1429 & n.6 (D.C. Cir. 1994)) (further citations omitted).

Any implication that the Court should rule on plaintiffs' contentions because of their speculative fears of possible future harm "is precisely the type of advisory decision-making that Article III courts are constitutionally required to avoid." *Pharmachemie, B.V.*, 276 F.3d at 632. *See also American Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 274 (D.C. Cir. 2001) (although plaintiff urged court to declare that defendant's policy is unlawful to "prevent the [defendant] from returning to it," court held that defendant met its burden to show mootness by eliminating the allegedly unlawful policy with no indication that defendant will revert to it).

While there is an exception in the mootness doctrine for controversies that are "capable of repetition, yet evading review," *Pharmachemie, B.V.*, 276 F.3d at 632–33 (*quoting Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)), that exception applies only if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there

---

[2]   As the D.C. Circuit has noted:

> Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them, and confines them to resolving real and substantial controversies admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Pharmachemie, B.V.*, 276 F.3d at 631 (*citing Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (*quoting N.C. v. Rice*, 404 U.S. 244, 246 (1971))) (internal quotation marks omitted).

was a reasonable expectation that the same complaining party will be subjected to the same action again."

Under the "capable of repetition" prong, there must be a "reasonable expectation that the same complaining party would be subjected to the same action again." *Pharmachemie, B.V.*, 276 F.3d at 633 (quoting *Weinstein*). "This prong requires that the same parties will engage in litigation over the same issues in the future." *Pharmachemie, B.V., id*. (citing *Norman v. Reed*, 502 U.S. 279, 288 (1992) (additional citations omitted)).

Clearly here, especially in light of the substantial and important changes in District law, it would be unreasonable to predict that the same parties would be subject to the same action in the future. *Cf. Central Kentucky Production Credit Ass'n v. United States*, 846 F.2d 1460, 1464 (D.C. Cir. 1988) (a statutory change can render a dispute moot, especially where it "cures the problems that led to the suit.") (citations omitted); *American Bankers Ass'n*, 271 F.3d at 274 (claim moot where agency changed disputed rule). *See also Fund for Animals, Inc. v. U.S. Bureau of Land Management*, 460 F.3d 13, 23 (D.C. Cir. 2006) (request for injunction moot; "the 'essential point is that the case before us is highly dependent upon a series of facts unlikely to be duplicated in the future'") (citing *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 421 (D.C. Cir. 2005)); *Beethoven.com LLC v. Librarian of Congress*, 394 F.3d 939 (D.C. Cir. 2005) (claim was moot where defendant's action "was apparently motivated by factors unique to this proceeding and unlikely to recur").

As shown, was changed to prevent unreasonable interference with "peaceful First Amendment Assemblies." D.C. Official Code § 5-331.03.

In light of the Act, the likelihood of circumstances similar to those in the Complaint recurring is remote. *See Hedgepeth v. Washington Metropolitan Area Transit Authority*, 386 F.3d

1148 (D.C. Cir. 2004):

> Even in the absence of [defendant]'s change in policy—we are not willing to indulge the assumption that [plaintiff] will violate [District law] in the future and thereby again be subject to the policies about which she complains. This suggests the lack of an ongoing case or controversy under Article III. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (plaintiff subject to illegal arrest procedure lacked standing to seek prospective relief because he made no showing that he was likely to be arrested and subjected to illegal procedure again); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief").

*Id*. at 1152 (parallel citations omitted).

*Damages*

As noted above, the District does not oppose a (b)(2) class both for a determination of declaratory relief and damages, but plaintiffs did not set forth an appropriate damages "formula" as urged by the Court, and refused to accept (or comment on) the formula set forth by the District.

The District proposed that four elements make up the damages formula here: (1) detention at the scene of arrest, (2) handcuffing, (3) transportation from the scene, and (4) detention time at the jail prior to release. The last element could feasibly be based on an average of all detention times.

The other damages elements plaintiffs propose, for those who had to return to court, and for those who received professional treatment for injuries, must be individually addressed. Plaintiffs concede that medical-treatment damages must be determined individually. P.Mem. at 13.

If, as plaintiff contend, none or a small number of class members received professional medical treatment for injuries, then damages would be "incidental" to the declaratory relief

8

requested, and (b)(2) certification would be appropriate. Even then, however, any individualized claims—such as for medical expenses and for the time and expense for appearing to defend in court—would have to be determined separately from the class.

If plaintiffs will not agree to the formula for a damage determination—which is what this Court recommended—then the Court should only certify a (b)(2) class for purposes of determining declaratory relief and leave for another day whether to certify a (b)(3) class for damages. Alternatively, the Court could certify a "hybrid class."[3] If the District prevails on the (b)(2) issue, the Court need never reach the (b)(3) issue.

Plaintiffs also object to the District's suggestion that their proposed notice and initial report reveal the names and medical records of any plaintiffs who received such professional

---

[3] A hybrid class is one in which the case is certified pursuant to Rule 23(b)(2) for equitable relief and pursuant to Rule 23(b)(3) as to claims for monetary relief, granting (b)(3) protections, including the right to opt out, to class members at the monetary relief stage. *Eubanks v. Billington*, 110 F.3d 87, 95–96 (D.C. Cir. 1987):

> [W]hen a (b)(2) class seeks monetary as well as injunctive or declaratory relief the district court may exercise discretion in at least two ways. The court may conclude that the assumption of cohesiveness for purposes of injunctive relief that justifies certification as a (b)(2) class is unjustified as to claims that individual class members may have for monetary damages. In such a case, the court may adopt a "hybrid" approach, certifying a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief, effectively granting (b)(3) protections including the right to opt out to class members at the monetary relief stage. Alternatively, the court may conclude that the claims of particular class members are unique or sufficiently distinct from the claims of the class as a whole, and that opt-outs should be permitted on a selective basis. Like the Second Circuit, we view Rule 23(d)(5) to be broad enough to permit the court to allow individual class members to opt out of a (b)(1) or (b)(2) class when necessary to facilitate the fair and efficient conduct of the litigation.

*Id*. at 95–96. *See also Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998).

Hybrid class certification is appropriate, however, only in those circumstances where the requirements of Rule 23(b)(3) are satisfied. *Garcia v. Veneman*, 211 F.R.D. 24-25 (D.D.C. 2002).

9

treatment. Plaintiffs propose only to reveal the *number* of class members who received treatment. P.Mem. at 14.

The District is at a loss to explain why plaintiffs would not want to have this information sooner rather than later. Plaintiffs suggest that the Court could simply amend its class-certification order if such medical damages are found, *Id*. at 5 n.2, but efficiency would be best served by attempting to deal with this situation proactively, before such an order issues.

Proof of injury must be distinguished from the mere calculation of damages.[4] Even assuming *arguendo* that plaintiffs could calculate damages on a class basis, this does not exempt them from proving that each putative class member suffered injury of the types claimed. Actual injury cannot be presumed and the District has the right to raise individual defenses against each class member. The very fact and existence of injury sufficient to sustain an award of compensatory damages for each putative class member must be determined.

### III. Conclusion

For all the foregoing reasons, the District respectfully requests that Plaintiffs' Motion for Class Certification, as presented, be denied.

DATE: October 10, 2006        Respectfully submitted,

                              ROBERT J. SPAGNOLETTI
                              Attorney General, D.C.

                              GEORGE C. VALENTINE
                              Deputy Attorney General, D.C.
                              Civil Litigation Division

---

[4] *See Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 188 (3rd Cir. 2001).

      /s/ Richard S. Love
RICHARD S. LOVE, D.C. Bar No. 340455
Chief, Equity I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6635
Facsimile: (202) 727-0431


      /s/ Ellen A. Efros
ELLEN A. EFROS, D.C. Bar No. 250746
Assistant Attorney General
Equity 1
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431
ellen.efros@dc.gov


      /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity 1
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov