UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFFREY BARHAM, et al.,          .
                                 .
                                 .   Docket No. CA-02-2283
         Plaintiffs,             .
                                 .
      vs.                        .
                                 .
CHARLES RAMSEY, et al.,          .
                                 .   Washington, D.C.
         Defendants,             .   Monday, September 27, 2004
                                 .   11:35 a.m.

. . . . . . . . . . . . . . .

TRANSCRIPT OF A MOTION
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Barham Plaintiffs:     CARL L. MESSINEO, Esquire
                           MARA E. VERHEYDEN-HILLIARD, Esquire
                           PARTNERSHIP FOR CIVIL JUSTICE
                           1901 Pennsylvania Avenue NW
                           Suite 607
                           Washington, DC 20006

For Chang Plaintiffs:      DANIEL C. SCHWARTZ, Esquire
                           BRYAN CAVE, LLP
                           700 13th Street, NW
                           Suite 700
                           Washington, DC 20005

For Federal Defendants:    MARINA UTGOFF BRASWELL, Esquire
                           US ATTORNEYS OFFICE FOR THE
                           DISTRICT OF COLUMBIA
                           555 Fourth Street, NW
                           Room 10-413
                           Washington, DC 20530

For the District:          THOMAS LOUIS KOGER, Esquire
                           MARTHA J. MULLEN, Esquire
                           LORI PARRIS, Esquire
                           OFFICE OF THE CORPORATION COUNSEL, D.C.
                           441 Fourth Street, NW
                           Washington, DC 20004

For Chief Newsham:          DAVE BUCKLEY, Esquire
                            DESO, THOMAS & BUCKLEY & STIEN
                            1828 L Street, NW
                            Suite 660
                            Washington, DC 20036-5112

Court Reporter:             Elaine A. Merchant, RPR, CRR
                            Official Court Reporter
                            333 Constitution Avenue, NW
                            Room 6822
                            Washington, DC 20001
                            (202)289-1571

Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

P R O C E E D I N G S

THE CLERK: Civil Action 02-2283, Jeffrey Barham, et al. versus Charles Ramsey, et al.

Would counsel please identify yourselves for the record.

MR. MESSINEO: Good morning, Your Honor. Carl Messineo on behalf of the Barham class.

MS. VERHEYDEN-HILLIARD: Good morning, Your Honor. Mara Verheyden-Hilliard, also on behalf of the Barham plaintiffs.

MR. SCHWARTZ: Good morning, Your Honor. Dan Schwartz on behalf of the Chang plaintiffs.

MS. BRASWELL: Good morning, Your Honor. Marina Braswell on behalf of the federal defendants.

And I have with me Richard Brown from the FBI and Randolph Myers from the Park Service.

MR. KOGER: Good morning, Your Honor. Thomas Koger on behalf of the District of Columbia and Chief Ramsey.

MR. PARRIS: Good morning, Your Honor. Lori Parris on behalf of the District of Columbia and Chief Ramsey.

MS. MULLEN: Good morning, Your Honor. Martha Mullen on behalf of the District of Columbia and Chief Ramsey.

MR. RYAN: Good morning, Your Honor. Terrence Ryan, general counsel, Metropolitan Police Department.

MR. BUCKLEY: Good morning, Your Honor. David

1    Buckley for Assistant Chief Nusham.

2    THE COURT:  Good morning.

3    Let me hear briefly from plaintiffs.

4    Let me ask you a couple of questions first.

5    Who are the plaintiffs?  Are they the same plaintiffs

6    that comprise the Barham class, is that correct?

7    MR. MESSINEO:  The relief is being sought on behalf

8    of the Barham plaintiffs.

9    THE COURT:  All right.  Now, you've not filed an

10   action for declaratory judgment, have you?

11   MR. MESSINEO:  In the complaint?

12   THE COURT:  No, with respect to this request for

13   injunctive relief.

14   MR. MESSINEO:  Injunctive relief, Your Honor.

15   THE COURT:  Is that the preferred route, an action

16   for declaratory judgment?

17   MR. MESSINEO:  We have no objection to that route

18   being utilized.

19   THE COURT:  But you didn't utilize it.  That's a

20   different type of analysis by the Court, isn't it?

21   MR. MESSINEO:  My understanding is that the

22   declaratory remedy and the injunctive remedy here would

23   ultimately be co-extensive.

24   THE COURT:  You would agree that an injunction is a

25   request for extraordinary relief as opposed to the relief

1    requested pursuant to an action for declaratory judgment,

2    wouldn't you?

3            MR. MESSINEO:  Yes, I agree that that's the language

4    that has been used in the case law associated with injunctive

5    relief.

6            THE COURT:  That's the law.  That's the law

7    recognized by the circuits.

8            Have any of the plaintiffs in the Barham class, were

9    any of them charged with parading without a permit as a result

10   of the arrest, which was, I guess, the reason for this lawsuit

11   being instituted?  Not the request for injunctive relief, just

12   the lawsuit itself.

13           MR. MESSINEO:  I would have to check.

14           THE COURT:  No, you've got to tell me, you've got to

15   tell me right now whether or not any of the plaintiffs, any

16   members of that class were actually charged with parading

17   without a permit.  That's not an unfair question to plaintiffs.

18           MR. MESSINEO:  Of course it's not, Your Honor.  One

19   moment.  Let me just confer.  I just don't want to

20   misrepresent.

21           THE COURT:  Sure.  And if the answer is yes, I need

22   to know the names of those people who were charged.

23           (Discussion held off the record.)

24           MR. MESSINEO:  There's certain uncertainty.  And

25   allow me to --

1    THE COURT:  I need an answer to my question.  I'll

2    give you a chance to advocate and persuade.  I need an answer

3    to my question whether or not any members of the Barham class

4    were actually charged with parading without a permit, yes or

5    no?

6    MR. MESSINEO:  I don't believe that in the formal

7    charging papers, as distinguished from the explanations given

8    for the underlying violations, which were, for example --

9    THE COURT:  All right.  So I'm going to accept that

10    as a no?

11    MR. MESSINEO:  That's correct, Your Honor.

12    THE COURT:  All right.  It's a no.

13    Has the city said if you show your face again in

14    Pershing Park or anywhere else in this city, we're going to

15    arrest you on anyone else for parading without a permit?

16    MR. MESSINEO:  They have not used those words.

17    THE COURT:  Have they used any words that would cause

18    a reasonable person to believe that if he or she did what is

19    arguably parading without a permit, that he or she would be

20    arrested and charged with that offense?

21    MR. MESSINEO:  The MPD internal report makes a

22    recommendation that that would be the charge for --

23    THE COURT:  Has the chief of police said if they come

24    back to Pershing Park or any other place in D.C., they're going

25    to be charged and arrested for parading without a permit?

1            MR. MESSINEO:  Not in those words.

2            THE COURT:  All right.  So I'm going to accept that

3    as a no.

4            Has the city said show your face again, you're going

5    to be charged with parading without a permit, you'll be

6    arrested?

7            MR. MESSINEO:  No, Your Honor.

8            THE COURT:  All right.  Why are we engaged in this

9    hypothetical exercise that may never result in the arrest of

10   people for this offense of parading without a permit?

11           MR. MESSINEO:  There's an ongoing chilling,

12   objectively chilling impact that's been testified to in

13   depositions in this, as well as other related cases, where

14   deponent after deponent of the arrestees testify that they

15   would seek and are currently being dissuaded from engaging in

16   demonstration activity, some to different extents, depending on

17   the personal response.

18           THE COURT:  This is a hypothetical exercise, counsel.

19   This may never result in the arrest of -- I mean, this Court

20   spends enough time and resources, and time is very limited,

21   resources are very precious and limited, I spend enough time

22   resolving complicated legitimate cases and controversies.  I

23   may never see these actions.

24           Had the Barham plaintiffs said that they will

25   actually come to the city during the month of October and

1    participate in demonstrations?

2            MR. MESSINEO:  Individuals within the Barham class

3    have expressed an intention to continue to engage in

4    demonstration activity in Washington, D.C.

5            THE COURT:  And that's fine.  And they should come.

6    D.C. is legitimately the place where people should express

7    their views.  But I can't -- it's hard for the Court to get

8    beyond that point.  This is all academic.  It's a great

9    academic exercise if anybody has the time to spend on academic

10   theoretical hypothetical exercises, which I don't.

11           I mean, if you had responded yes to any of the

12   questions I asked, then query whether or not this Court should

13   grant the relief or some form of relief that you're seeking.

14   But in the answer of -- I mean, having been confronted with

15   negative responses I'm not so sure that it's appropriate at

16   this time to grant this extraordinary relief.

17           MR. MESSINEO:  Your Honor, with respect to standing

18   to secure injunctive relief, there are, of course, two ways to

19   achieve standing.

20           One would be, as Your Honor is inquiring, were there

21   a statement, for example, such as you've inquired.

22           The other is if there is continued ongoing adverse

23   effect.  That is what's occurring right now.  The District of

24   Columbia need not say or do anything else specifically in order

25   to have this ongoing adverse effect continue unabated.

1          THE COURT:  What is the city doing right now

2     currently to chill your clients' rights, what is the ongoing

3     adverse effect right now?

4          MR. MESSINEO:  There's been ample testimony from the

5     plaintiffs that some, for example, have declined and continue

6     to decline to attend demonstration activity in Washington, D.C.

7     that they would otherwise seek to attend because of a) their

8     personal experience on September 27, 2002, and b) the knowledge

9     that this is not just aberrational, but also has occurred at

10    least on two significant occasions in numbers of hundreds.

11         Some have testified that they will not attend

12    demonstrations where they believe that the turn-out will be

13    relatively low because they believe that that leaves them

14    subjected to this type of sweeping mass arrest.  Some have said

15    that they will not attend certain demonstrations now based on

16    their perception that certain subject matter has been targeted.

17         THE COURT:  What is the precise relief that you're

18    seeking?  Tell me what the very precise relief is that you're

19    seeking.

20         MR. MESSINEO:  I think the precise relief that we

21    would be seeking here would be to enjoin the city from making

22    arrests for parading without a permit in the absence of there

23    being a notice and opportunity to comply.

24         THE COURT:  The city knows what the law is, the

25    police chief knows what the law is, and they know that if

1    either violates the law, the Court is going to step in.  And

2    the Court is not shy about stepping in when there are

3    violations of law.

4         What more does this Court need to do?

5         MR. MESSINEO:  Your Honor, in terms of first

6    amendment protected activity, in terms of the demonstration

7    activity, and particularly because there are so many persons

8    who now are actively refraining from attending certain types of

9    demonstration activity, it's not --

10        THE COURT:  Says who, though?  Do we have affidavits

11   from those people?

12        MR. MESSINEO:  I believe.  I believe that we have

13   deposition testimony that we submitted as a component of our

14   motion.

15        THE COURT:  Are there declarations from people saying

16   that they have decided not to attend Washington, D.C. because

17   of their fear that their rights will be violated?

18        MR. MESSINEO:  In the depositions.  That's sworn

19   under oath, as opposed to our just drafting something and

20   having them sign it.  Yes, that was subject also to examination

21   by opposing counsel.

22        THE COURT:  Those were depositions taken some time

23   ago in connection with the reason why this lawsuit is in this

24   court, not associated with a request for injunctive relief.  I

25   mean, those were depositions that were taken because those

1    plaintiffs have prosecuted false arrest suits, correct?

2            MR. MESSINEO: They were taken as an element of this

3    litigation, yes.

4            In the complaint we filed, we clearly have pled

5    requests for injunctive declaratory relief with respect to the

6    unconstitutional policies and practices. So this isn't, for

7    example, an issue that is being raised late in the game.

8    That's first and foremost.

9            THE COURT: Is there any authority anywhere that

10   supports this request for this relief that you're seeking?

11           MR. MESSINEO: I think that --

12           THE COURT: That's directly on point. I'm not

13   talking about these cases that interpret all aspects of

14   constitutional law. I'm talking about precisely on point that

15   supports your request for relief for the relief you're seeking.

16           MR. MESSINEO: On the parading without a permit

17   specifically?

18           THE COURT: Right.

19           MR. MESSINEO: I think that the Dellums case does.

20           THE COURT: And everyone knows what the law is. And

21   if they didn't know what the law is, they know what the law is

22   now because the Court has issued an opinion reinterpreting

23   Dellums, right, and applying Dellums to incidents that occurred

24   in this city. Everyone is well aware what the law is, right.

25           So why shouldn't this Court just say if people

1    violate the law, if the city violates the law, if the police

2    chief violates the law, this Court will take appropriate

3    action, as this Court has done already.

4            MR. MESSINEO:  We believe that's what we're asking

5    Your Honor to do here.

6            THE COURT:  What more do I need to do?  I've just

7    issued an opinion advising everyone again what the law has been

8    for the last 25 years or so.

9            MR. MESSINEO:  That's correct, that is what the law

10   has been for the past 25 years.

11           THE COURT:  So what do you want me to do?  Everyone

12   is on notice what the law is.  If people had misapprehensions

13   about the law, then they know correctly what the law says now.

14   What more do I need to do?

15           MR. MESSINEO:  I don't think that there ever was a

16   suggestion that people were misapprehending the law.  The law

17   has been clear.  These cases have been adjudicated.

18           THE COURT:  Right.  And if the law is violated, your

19   clients have adequate remedies, don't they?

20           MR. MESSINEO:  No, Your Honor.

21           THE COURT:  Why not?

22           MR. MESSINEO:  They don't have adequate remedies

23   because they have lost the opportunity for, particularly,

24   either where they have chosen to not attend a demonstration

25   activity, or were they to attend a demonstration activity and

1  be subjected to this.

2  But, in particular, we'll focus on that element that

3  I was directing Your Honor's attention to. The harm there is

4  irreparable. Demonstration activity, it can't be replaced.

5  It's of the time, it's of the moment, it's of the place. You

6  can't say, all right, at the end of this litigation we're going

7  to perhaps have some permanent declaratory injunctive relief

8  and that should satisfy you.

9  People are currently --

10  I mean, plaintiff after plaintiff represents in sworn

11  testimony that they have an apprehension and a fear and,

12  therefore, have to various degrees declined to participate in

13  demonstration activity in Washington, D.C. that they would

14  otherwise do.

15  THE COURT: I understand what you're saying. But by

16  the same token no one has been charged with this offense. What

17  is there in the record to suggest that they will be charged if

18  they come back and exercise their legitimate first amendment

19  rights?

20  MR. MESSINEO: Well, the prior practice, the prior

21  practice. As we pointed out in the motion, the issue of

22  parading without a permit was explicitly relied upon on the

23  ground as a basis for making these arrests. The persons in the

24  bike ride, the whole, from beginning to end, the rationale for

25  that arrest was that that bike ride was parading without a

permit.

With respect to the other group arrests, the arrests over at Vermont and K exclusively were based on parading without a permit. That's what the commander -- it's reflected in the documents that we submitted to the Court.

With respect to the Pershing Park arrestees, presuming them to be exclusively distinct from anyone that was at Vermont and K, the issue of parading without a permit or demonstrating without a permit was articulated by the arresting officers or by the MPD as the basis in whole or in part for these arrests.

Now, the charging, unquestionably, they changed the charging to something that's nonsensical. That came after the fact. But that doesn't help them. Even if they charged them with parading without a permit, they still suffer the constitutional injury.

THE COURT: That often-times happens, though, when police officers make arrests and then they have a chance to subsequently discuss the facts of the arrest with prosecutors who are more knowledgeable about the law, then charging decisions are actually made, informations are filed, sometimes cases aren't proceeded with, indictments follow. That's not unusual, is it?

MR. MESSINEO: But this isn't a circumstance where we're complaining that individuals who are arrested for a

particular offense and then charged with a separate or
unrelated offense or even suggesting that they were charged
with a related --

THE COURT: What's so unusual about that? That
oftentimes happens.

MR. MESSINEO: Yes, the charging is often different.

THE COURT: That's not a basis for an injunction,
though?

MR. MESSINEO: It's the arrest that we are --

It is the arrest.

THE COURT: Right. But no one has an arrest record.
I'm getting back to the point, who's been charged? People may
have been told that they're going to be arrested for a certain
offense and then any number of things could have occurred,
charges dropped, other charges processed against an individual.
The bottom line, if I'm understanding you correctly, is that no
one has an arrest record for parading without a permit, which I
think is significant. Maybe it's not. Maybe you can tell me
why it's not significant.

MR. MESSINEO: People have --

THE COURT: I mean, none of those people have an
arrest record for parading without a permit.

MR. MESSINEO: What is significant here is that what
happened -- and we took this on the narrow on parading without
a permit as opposed to asking Your Honor to issue a more

1    generalized order which would strictly go by --

2         THE COURT: You're not challenging the

3    constitutionality of that statute either, are you?

4         MR. MESSINEO: No. We believe that it's

5    unconstitutional unless limited.

6         THE COURT: You're not challenging the constitution.

7    You haven't asked this Court to declare that statute or that

8    regulation unconstitutional, have you? By not doing so, is

9    that significant or not to the Court?

10        MR. MESSINEO: No, Your Honor. When we framed our --

11        THE COURT: I guess the first answer is, no, you have

12   not challenged the constitutionality?

13        MR. MESSINEO: I think we have.

14        THE COURT: Have you asked the Court to declare that

15   unconstitutional, that statute, parading without a permit?

16        MR. MESSINEO: No, Your Honor, we have not submitted

17   a proposed order to that extent.

18        THE COURT: Let's be realistic now. I'm just trying

19   to get at what your argument is and what it isn't. You haven't

20   asked the Court to declare that unconstitutional, parading

21   without a permit? You haven't done that, have you? No. The

22   answer is, no, you haven't done that.

23        Now, why shouldn't that be significant in the Court's

24   consideration of your request for injunctive relief? You're

25   not challenging the very legality of the statute that you're

1    asking the Court to enjoin law enforcement officers from

2    arresting people for violating. Why isn't that significant?

3            MR. MESSINEO: Your Honor, as you may recall, first,

4    the reason why the motion was framed the way it was framed --

5            THE COURT: Just answer my question first.

6            MR. MESSINEO: I am answering it, Your Honor. I

7    believe that I am.

8            THE COURT: Why isn't it significant then? Why isn't

9    that significant?

10           MR. MESSINEO: I believe that the constitutionality

11   is significant. It was raised, for example, in the reply

12   brief. There was not a request for a surreply. And that was

13   raised as an outgrowth of our initially presenting the Court

14   with something that was --

15           THE COURT: Wait a minute. You want me to focus on a

16   reply brief and construe this request for injunctive relief as

17   an action to declare unconstitutional parading without a

18   permit, is that what you're asking the Court to do, and not

19   give the city a chance to respond?

20           MR. MESSINEO: Your Honor --

21           THE COURT: You've got to look me in my eye now.

22           Is that what you want me to do, counsel?

23           MR. MESSINEO: Your Honor, in light of the briefing

24   to date, which has been extensive, yes.

25           THE COURT: And you think it's fair for a court to

1   proceed along those lines, to consider remarks made in a reply

2   brief without the opportunity for defendants to respond as to

3   unchallenged requests to determine a statute unconstitutional,

4   you think that's consistent with the fair administration of

5   justice for a court to do?

6          MR. MESSINEO:  The grounds on which --

7          The sole argument on which plaintiffs proceed with

8   respect to the constitutionality of this or any other group

9   arrest is Dellums.  That's been briefed.  It's been briefed

10  very substantially and to the point that there's been a written

11  opinion by Your Honor addressing the issue of Dellums.

12         Our presentation actually is less broad than Dellums,

13  but it's a complete application of Dellums.  Parading without a

14  permit, being by definition a group offense, would in the

15  absence of notice and opportunity to comply or disperse, would

16  then clearly --

17         THE COURT:  So you're asking the Court to enjoin the

18  city from arresting people for that offense without first

19  affording them an opportunity to have notice and an opportunity

20  to disperse, is that correct?

21         MR. MESSINEO:  Yes, Your Honor.

22         THE COURT:  That's different from what you said

23  originally when I asked you what is the precise relief that

24  you're asking for.  You said to enjoin the city from arresting

25  people for parading without a permit, period.

1          MR. MESSINEO: Your Honor, actually, I believe that

2     what you're referring to is, in fact, what we put in the

3     motion, but actually, with all due respect, I believe when you

4     asked me the first time, I did give you in court the same

5     response because my response was informed by the briefing. As

6     Your Honor knows, we came into this with the understanding,

7     actually, based on representations by the District, that from

8     the District's point of view the law as a law was not an

9     arrestable offense.

10          THE COURT: Is that still the city's position?

11          MR. MESSINEO: No. So we step forward with our

12     motion with that, which is actually very limited in discrete

13     relief, so discrete that it was intended to be exactly the same

14     scope as the representations of counsel because we didn't want

15     this to get into areas of new law.

16          In response to that, the Office of Corporation

17     Counsel now is taking the position that they want to change

18     their position that it is an arrestable offense. That's what

19     they put in their opposition.

20          As a consequence of that, in our reply we respond

21     saying it is not an arrestable offense, but for all of the

22     reasons that we've articulated and have been briefed fully to

23     date it's also violative of the principle that's set forth in

24     Dellums, which requires in the context of group arrests, mass

25     arrests, of protesters, as Your Honor's opinion accurately

1    reflects.  That's the development of this.

2        THE COURT:  What's the impact of the Barwood and Doe

3    cases on your request for relief?

4        MR. MESSINEO:  They don't have an impact because

5    those cases do not rise in the context of first amendment.

6        THE COURT:  But there were allegations that there

7    were other constitutional violations as a result of challenged

8    government action, though, correct, fourth amendment in the Doe

9    context and probably fourth amendment in the Barwood context?

10        MR. MESSINEO:  They were both fourth amendment.

11        THE COURT:  What's the difference, though?  The

12    plaintiffs in those cases argued constitutional violations that

13    were related to the event that they were challenging.

14        MR. MESSINEO:  Their argument was --

15        THE COURT:  That's what you're doing here.  You're

16    making first amendment challenges as a result of what you

17    perceive to be unlawful police action if your clients are

18    arrested for parading without a permit.  So there's no

19    distinction between the relief you're seeking and the relief

20    sought in Barwood and Doe, right?

21        MR. MESSINEO:  Well, the relief, perhaps no

22    distinction.  The rationale, yes, are very much distinguished

23    and the approach is very much distinguished.

24        With respect to those other cases, those were

25    strictly fourth amendment challenges where they said because a

certain arrest was unauthorized under D.C. law any arrest using
that basis which was unauthorized by D.C. law must also
constitute necessarily a fourth amendment constitutional
violation.

THE COURT:  That's not different from your argument,
though.  Essentially, your argument is that the city council
decriminalized this offense, and, therefore, if they're
arrested pursuant to that arrest, then that would fly in the
face of legitimate first amendment rights?

MR. MESSINEO:  That's not the constitutional basis.
You're correct, Your Honor.  As we stepped forward, that was
the basis based on representations in court, that, yes, we
understand that the statute itself is problematic in two
respects.

One, constitutionally.  Down the line that's very
clearly established in Dellums.

THE COURT:  Right.  And no one disputes that the city
council decriminalized that offense, right?  The city doesn't
dispute that, does it?

MR. MESSINEO:  The city takes the position in its
opposition brief that they can arrest.

THE COURT:  That they can arrest?

MR. MESSINEO:  Yes.

THE COURT:  And it was not decriminalized by the city
council?

1    MR. MESSINEO:  While something may have been

2    decriminalized by city council, they still can arrest under

3    other authority.

4    THE WITNESS:  That's right, if, indeed, operating

5    without a permit is an element of some other offense.  That's

6    the city's argument, isn't it?

7    MR. MESSINEO:  I don't believe that to be the case.

8    THE COURT:  For some reason I thought that was the

9    city's argument.

10    MR. MESSINEO:  I don't want to misrepresent the

11    city's arguments.  My understanding of the argument is that

12    they can arrest for parading without a permit.

13    THE COURT:  Right.  They can arrest without a permit

14    if, indeed, parading is an element of some other offense.  Is

15    that not an argument made by the city?

16    MR. MESSINEO:  I thought that was an argument that

17    was made in this Court previously during representations, but

18    not in their motion, not in the opposition.  They changed their

19    position in the opposition.

20    THE COURT:  All right.  It's not an argument being

21    made.

22    MR. MESSINEO:  But because of the change of their

23    position in the opposition that's what changes the posture of

24    our presentation.

25    THE COURT:  Can I stop you for a second?  Let me ask

1    you to move to your right for one second and invite the city's

2    attorney up.  I just want to find out what the city's position

3    is as of high noon, which is probably an appropriate time.

4            MR. KOGER:  Good morning, Your Honor.

5            THE COURT:  Good morning.  It's not quite noon.  How

6    are you today?

7            MR. KOGER:  I'm well, thank you, and yourself?

8            THE COURT:  Good.

9            What is the city's position?  Is it an arrestable

10    offense to parade without a permit or not?

11            MR. KOGER:  Yes.  And allow me to apologize for my

12    unhelpful answer to your question on April 6, which I think is

13    set forth at pages 11 and 12 of the transcript of that day, if

14    I recall correctly.  I meant to bring that with me.

15            I did say that we wouldn't arrest for that.  And I

16    have seen nothing in the record of the September 27 arrest and

17    have learned nothing since in terms of anticipated policing of

18    mass demonstrations that differs from that.

19            The question that we answer in response to the motion

20    is do we believe that we can, do we believe it to be an

21    arrestable offense.  We do believe that to be so.

22            If I may start from the decriminalization argument,

23    under the Traffic Adjudication Act the council decriminalized a

24    number of offenses, which were traffic regulations, set forth

25    primarily in 18 DCMR, the penalty for which is set forth, if I

1    recall properly, within 18 DCMR.

2    There are parallel regulations in the public safety

3    and space regulations set forth at Title 24 of DCMR.

4    Pursuant to Section 705 there is a framework for

5    requiring permits in 707, the factors to be considered in

6    whether or not a permit is to be given.

7    The penalty for parading without a permit in

8    violation of the public safety regulations is set forth at 24

9    DCMR 100.6, which provides that in the absence of another

10   penalty set forth in this title, meaning Title 24 specifically,

11   upon conviction reflecting a criminal violation, the penalty to

12   be imposed shall be $300.

13   We believe that that is one basis upon which parading

14   without a permit in violation of Title 24 would, in fact, be an

15   arrestable offense.

16   THE COURT:  And the city council has not focused its

17   attention on that regulation?

18   MR. KOGER:  No, Your Honor, it has not.  And that

19   regulation is not addressed in Title 50 of the D.C. Code at

20   2301, if I recall correctly, which sets forth a variety of

21   traffic and pedestrian offenses which have been decriminalized.

22   THE COURT:  And one of those is parading without a

23   permit, though, correct?

24   MR. KOGER:  One of those would fall under Title 18,

25   funeral processions and parades, which deals with parading

1    without a permit as one of the subsections.

2         THE COURT: What's the distinction between the two,

3    the two parading without a permit regulations?

4         MR. KOGER:  In 18, it deals almost exclusively with

5    funeral processions and has a first subsection which sets forth

6    that it addresses parades and processions.

7         24 sets forth in detail the types of functions which

8    would be embraced by parading without a permit, the

9    representations and considerations to be addressed by the chief

10   of police in determining whether to provide a permit which

11   coincide with the public interests to be assessed in

12   determining whether a permit would be granted for a specific

13   applied for route.  It does not provide, in fact, that where

14   one applies for a permit for a procession or a parade along a

15   specific route that it is an absolute yea or nay determination.

16        What is commonly the practice is that the application

17   triggers an assessment of resources and other competing

18   interests.  And there is often a negotiation process to allow a

19   procession or parade to go forward along a route that will

20   minimize obstructions of fire houses.

21        THE COURT:  As distinguished from funeral

22   processions?

23        MR. KOGER:  Right.

24        THE COURT:  What the plaintiffs are essentially

25   saying is that this other parade regulation is acting as a kind

1   of sort of damocles in that it's out there and maybe there have

2   been arrests before, maybe there have been charges before. Am

3   I correct in saying that none of the plaintiffs in the Barham

4   class have arrest records for parading without a permit or

5   either convictions for that offense, is that correct?

6        MR. KOGER:  Based upon my review of all of the

7   citations and the printout of charges, yes, that is correct,

8   they have not?

9        THE COURT:  Has the city or the police chief said

10  anything recently in an effort to discourage people from

11  exercising their legitimate first amendment rights that if they

12  participate in demonstrations and parade without a permit

13  they'll be arrested for that offense?

14       MR. KOGER:  No, Your Honor, not to my knowledge.  And

15  I am in contact with the Office of General Counsel on a daily

16  basis.

17       THE COURT:  But they have this concern that if they

18  come here, they're going to be arrested and charged with this

19  offense, notwithstanding the city's position that it has taken

20  in the past.  And the city rarely charges anyone for parading

21  without a permit, is that an accurate statement?

22       MR. KOGER:  That is accurate, Your Honor.  What

23  commonly happens is that, particularly in small manageable

24  groups, there's an effort when we learn of it, when the

25  department learns of it, to interact with organizers and try to

negotiate a way that the parade, if you will, can move along a
route to its intended destination, although it may not be the
route of their choice, and tries to limit the effect on
vehicular traffic by having them stay on a sidewalk, or at
worst, the sidewalk and one lane in.

As the declaration of Jeffrey Herold next to our
opposition brief reflects, that was a function which occurred
on April 15, 2000 of which plaintiffs assert they were arrested
for parading without a permit.  In fact, a negotiation was
conducted, the protesters were warned to get out of the street,
and they were arrested after having declined to comply with
that.

THE COURT:  Is that an offense for which they can be
arrested without giving any prior notice to, without receiving
prior notice?

MR. KOGER:  Your Honor, our reading is that that
would be permissible by virtue of the fact that the regulation
puts them on notice of a need to have obtained the permit and
that the infraction would be complete upon stepping into the
roadway, if you will.

This would be --

The cases that are cited to the contrary about
decriminalization of the traffic code are inapposite in the
regard that they speak to particularly unlawful assembly as
requiring a multiplicity of persons and an additional criminal

1    offense.

2         This statute is not written in that manner.  Instead,

3    the statute is routinely, or, rather, the regulation, as I have

4    learned from the officers who have been involved in these

5    matters over the incidents complained of, routinely they try to

6    locate an organizer where they see a gathering and try to

7    negotiate that the persons will stay in a route that the

8    department can safely maintain warning them that you may not

9    parade through the roadway, you may parade along the sidewalk

10   and we will handle the crossings and so forth.

11        To that extent, there is a de facto warning and

12   opportunity to not disperse, but to follow a path that will not

13   result in police actions.  So although our position is 1) that

14   it is an arrestable offense, and 2) that it does not

15   necessitate a warning by virtue of the fact that it presents in

16   advance the requirement for the movement, the expression on a

17   moving basis, in fact, the officials advise, in the instances

18   of which I am aware, which are the subject, in fact, of a

19   litigation before Your Honor and other judges, that you can't

20   go this way, work with us on this and we can work it out.  But

21   you can't just walk out into the street, as is what Assistant

22   Chief Jordan complained of at Vermont and K.

23        THE COURT:  If I understand you correctly, and tell

24   me if I'm wrong, but you're saying that Dellums doesn't apply

25   then because the offer of police officers to conduct a parade

1   without a permit pursuant to the suggestions of law enforcement

2   officers excuses the application of Dellums, essentially? I

3   thought you were telling me there's no need for notice because

4   the way to resolve these issues is to locate an organizer and

5   say, look, we recognize you're here, you don't have a permit,

6   and if you go this route, everything is fine, but if you

7   don't --

8           MR. KOGER: I apologize for having blurred the line

9   on that.

10          Our position is by virtue of the nature of the

11  regulation, which sets forth for all to see a reasonable time,

12  place and manner regulation, that notice prior to arrest once

13  the regulation has been violated is unnecessary.

14          THE COURT: When would the violation occur then?

15          MR. KOGER: The violation would occur when three or

16  more --

17          Well, actually, as I understand the regulation, when

18  25 or more persons have ventured into, generally speaking, a

19  roadway or have occupied in the context of their demonstration

20  the sidewalk to the extent that it, in essence, renders that

21  sidewalk largely impassable by others.

22          THE COURT: I thought you were saying that if and

23  when that occurs, more often than not it's followed up by maybe

24  a suggestion by law enforcement that, look, to accomplish your

25  objective if you walk along this route or down this street or

1    do something other than what you're doing, essentially you

2    won't be arrested, is that correct?

3         MR. KOGER:  Your Honor, in point of fact I am saying

4    that that is the way it plays out in reality.  But the first

5    prong of our response to the opposition is that it is not

6    constitutionally mandated.  We would prefer to do it and we

7    would prefer to be able to accommodate, particularly impromptu,

8    but even if not impromptu, demonstrations that we can work

9    with.

10        There's a balance between the needs of the

11   municipality to prepare for demonstrations in terms of how are

12   we going to get emergency vehicles from one location to

13   another, where are we going to deploy officers in light of

14   perhaps other demonstrations or just crime fighting in other

15   police functions, and we need to be able to plan for that.

16        But when we come on a scene, we learn of a situation

17   where we can accommodate this with usually a limited number of

18   officers and sometimes these persons do not understand what is

19   required of them.  It's often workable just to negotiate a

20   route along the way, you probably won't be going down one of

21   the lanes of Constitution, but you may be going along the

22   sidewalk, and let it work out with traffic being able to flow

23   and people being able to demonstrate.

24        In real terms, that's what the department does.  But

25   in terms of whether that is constitutionally required of the

1    department, I believe not.  I stand by the representation that

2    we wouldn't because we don't.

3            THE COURT:  I'm sorry, you wouldn't?

4            MR. KOGER:  We wouldn't arrest simply because you

5    haven't got a permit.

6            THE COURT:  So that's the position of the city, the

7    city will not arrest because you don't have a permit?

8            MR. KOGER:  Right.

9            THE COURT:  And that will be the position of the city

10    in upcoming demonstrations?

11            MR. KOGER:  Yes, Your Honor.

12            In the instance of Franklin Square, which resulted in

13    the Vermont and K arrests, a lieutenant from the special

14    operations division went to the park seeking organizers

15    advising that the march could not go out into the roadway of K

16    Street.  It nevertheless did.  The march went into incoming

17    traffic.

18            And, at that point, the opportunity to disperse or

19    order an orderly and safe dispersal became more of a question,

20    as I understand it.  In fact, a police line shut down traffic

21    and that takes us into where we end up with the arrest, which

22    is complained of most particularly in the Diamond slash Bergen

23    case.

24            So to the extent that we speak of policy, the policy

25    is to try and work it out with advising the would be

1    demonstrators that you can't do this without violating the law

2    in view of the Metropolitan Police Department.

3                    THE COURT:  All right.  Thank you.

4                    All right.  Anything further?

5                    MR. MESSINEO:  Briefly, Your Honor.

6                    With respect to the MPD's final investigative report

7    regarding the Pershing Park arrests, which I understand was

8    approved up the chain of command, it states as a final

9    recommendation that a more appropriate charge would be parading

10   without a permit for protesters marching in the streets.  There

11   is a -- the chief of police has testified in deposition that

12   parading without a permit is an arrestable offense, as has the

13   CDU commander, Jeffrey Herold, testified similarly.

14                   THE COURT:  Parading without a permit for a violation

15   of the same municipal regulation that Mr. Koger was referring

16   to?

17                   MR. MESSINEO:  Yes.

18                   THE COURT:  What was he thinking about when he said

19   that?

20                   MR. MESSINEO:  Both of them were referring to

21   parading without a permit.  We disagree that there's a

22   distinction between these two regulations at all.  We think

23   that they're the same regulation in that the enforcement is, in

24   fact, singular through the police.

25                   THE COURT:  Did city council address the municipal

1    regulation that Mr. Koger just referred to at all when it

2    decriminalized an offense for parading without a permit?

3              MR. MESSINEO:  It decriminalized all --

4              THE COURT:  Did it address the municipal regulation

5    that Mr. Koger just referred to when it decriminalized an

6    offense for parading without a permit?

7              MR. MESSINEO:  With what specificity, Your Honor?

8              THE COURT:  Counsel, don't play with words.  Just

9    answer my question.  Did it?

10             MR. MESSINEO:  It referred to pedestrian offenses in

11   that whole section, yes, explicitly.  And then it went on to

12   exclude from its reach specific offenses like failure to obey.

13             THE COURT:  Is your argument then that when the city

14   council took some actions to decriminalize, that it had to out

15   of necessity include the municipal regulation that the city's

16   attorney just referred to or not, is that your argument?

17             MR. MESSINEO:  No.  I mean, the statute itself and

18   the code itself says that the intent is to decriminalize all

19   offenses so referred to that relate in any way to these

20   pedestrian offenses, as well as other traffic offenses.  I

21   mean, it was very clear in terms of the scope it was trying to

22   reach.

23             And this is clearly defined as a pedestrian offense.

24   And it's clearly not within that small subset of offenses that

25   were excepted from the decriminalization.  The ones that were

1    excepted, in fact, were done so explicitly.

2           The constitutional violation flows directly from

3    Dellums.  It flows --

4           THE COURT:  So your argument simply is that because

5    the municipal regulation that the two attorneys referred to was

6    not among those regulations that formed a basis for an

7    exception to decriminalization by city council, then they had

8    to be decriminalized and people can't be arrested for violating

9    them?

10          MR. MESSINEO:  Under D.C. law.

11          THE COURT:  Is that your argument?

12          MR. MESSINEO:  Under D.C. law, yes, Your Honor.

13   That's separate and apart from the constitutional argument,

14   which, of course, supersedes the issue of D.C. law.  The

15   constitutional argument, going straight down Dellums, is very,

16   very clear.

17          Now, this is a group offense.  According to opposing

18   counsel, it sounds as if the District is saying that they may

19   not in the future arrest for parading without a permit.

20   Notwithstanding that, the practical description of

21   circumstances presented by Mr. Koger is not, in fact, what

22   happened to the plaintiffs in this case.  That didn't happen.

23          The bike riders, they got on their bikes, they rode

24   with what was understood to be a police escort.  No one, no

25   officer, ever said "stop" or "don't do this" or anything of the

1    sort.  There's no suggestion of it.  Then they arrested them at

2    the end as it -- you know, as it goes into the park for

3    parading without a permit.  That's what happened.  That's what

4    happens on the ground.

5            Now, the Office of Corporation Counsel or U.S.

6    Attorney's Office, whoever does the prosecution, may, of

7    course, change the charge.  I'm in agreement.  They can change

8    the charge.  And we're not saying that changing the charge is

9    in and of itself an unlawful act by any means.

10            THE COURT:  You're not claiming bad faith on the part

11    of the city?  You're not claiming that the arrests are, indeed,

12    a subterfuge for doing something later on, you're not claiming

13    that at all?

14            MR. MESSINEO:  For the purpose of this motion, that's

15    correct, absolutely not for this motion.  That's immaterial for

16    the purpose of this motion.

17            All that is material for this motion is, in fact, the

18    parading without a permit statute and Dellums.  That's the

19    constitutional line.  We moved into the D.C. law argument

20    because it was conceded in court that it was not an arrestable

21    offense.  We didn't have to go there.  It was a mistake to go

22    there because now they've changed their line.

23            The straight constitutional argument --

24            THE COURT:  So your argument now is the

25    constitutional argument only, correct?

1          MR. MESSINEO:  I would make both arguments.  I think

2     both arguments are correct.  But in terms of what I would

3     submit to Your Honor for adjudication.  Because it's always

4     been our intent to minimize the issues that have to be

5     adjudicated for the preliminary injunction motion.

6          THE COURT:  What about the Pullman abstention

7     argument the city raises?  Why isn't that persuasive at all?

8          MR. MESSINEO:  That would only be persuasive with

9     respect to an evaluation of the propriety or what's lawful or

10    unlawful under D.C. law.  By recasting this as strictly going

11    down the constitutional line, then there is no more Pullman

12    argument, going straight down Dellums, which is absolutely --

13         THE COURT:  If Pullman doesn't apply, Barwood and Doe

14    don't apply either, right?

15         MR. MESSINEO:  No, they don't apply, no, Your Honor.

16         And that's what we would present.  We've never wanted

17    to bring in disputed issues.  We actually framed it in a way

18    that we understood was not going to be disputed, other than the

19    fact that the District of Columbia was declining to consent to

20    any -- you know, to being bound by any court orders.

21         Now that they make that disputed, that's not

22    essentially.  What is essential is that people that go out in

23    Washington, D.C. to demonstrate can do so without fear that all

24    of a sudden the police are going to swoop down around them and

25    arrest them without notice.  These people would have left in

1    Barham if that's what they were ordered to.

2              THE COURT: I'm sorry?

3              MR. MESSINEO: The plaintiffs in Barham, they would

4    have left if they were ordered to. And that's what their

5    concern is. It is the arbitrariness that creates the chilling

6    effect. It's because there is no way to predict. But they do

7    know that it happened to them, that it happened to others

8    preceding them and that is exactly why they're dissuaded from

9    engaging in protests. And that's what we're trying to avoid.

10   We want people to feel comfortable to protest in Washington,

11   D.C. without having to have the fear that all of a sudden the

12   police are going to swoop down on them.

13             THE COURT: All right. Anything further, Mr. Koger?

14             MR. KOGER: Yes. Thank you, Your Honor.

15             Starting with the Barham class, which is the class

16   itself, are arrestees at Pershing Park. The problem with the

17   arrests at Pershing Park is a lack of probable cause

18   attributable to the individuals. The arrests, as justified to

19   Chief Ramsey, as explained by Assistant Chief Newsham, were for

20   a whole host of different things. But they were not largely

21   about parading without a permit.

22             THE COURT: It had nothing to do with parading

23   without a permit at all?

24             MR. KOGER: That's correct. They're all FTOs for an

25   O that was not given.

1          THE COURT:  The plaintiffs want some assurances that

2     if they come and parade without a permit, they aren't going to

3     be arrested and the city is not willing to give them those

4     assurances, right?  Or did you just give them the assurances

5     when you told me they would not be arrested for parading

6     without a permit?  That's what you just said a few minutes ago.

7          MR. KOGER:  That is the policy of the department.

8          THE COURT:  All right.  Then that should be the end

9     of the lawsuit then, the city will not arrest for the offense

10    of parading without a permit?

11         MR. KOGER:  Without a warning.

12         THE COURT:  I thought you told me earlier Dellums

13    doesn't apply and there was no need for a warning?

14         MR. KOGER:  That's the second point that I come to

15    the podium on.  And it is why Dellums -- it is not to say that

16    Dellums is to be disregarded in this analysis.

17         THE COURT:  We're not going to disregard Dellums.

18         MR. KOGER:  But I'm not going there, Your Honor.

19    I've learned something.

20         But Dellums, one of the flaws about the conduct of

21    the arrest in Dellums, as the circuit pointed out, was there

22    was no mechanism by which a person could officially seek a

23    suspension of the regulation that precluded demonstration on

24    the Capitol steps.  There was no mechanism.  It was an ad hoc

25    speak to the Senator or speak to the Congress.  And there was

no way for the person to determine if such a suspension had
been granted.

In this regard the parading --

Well, 24 DCMR 705 and 707 are distinguishable from
that. They lay out a process. You apply for a permit. You
may end up negotiating for a permit. You either --

THE COURT: You're saying a lot of things. And I
respect what you're saying. You've told me, though, these
folks are not going to be arrested for their legitimate
participation in first amendment activities, they're not going
to be arrested?

MR. KOGER: Right, they are not.

THE COURT: They can come to Washington, D.C. with
that assurance they will not be arrested.

But then there's a "but, however, if" that you want
to get into. Or maybe you don't. Is that the assurance, they
will not be arrested?

MR. KOGER: Certainly, I'm not --

THE COURT: Just leave it there then.

MR. KOGER: I'm certainly not going to say you're not
going to get arrested if you come into Washington, D.C.

THE COURT: No, not arrested for parading without a
permit. That's what you just said.

MR. KOGER: What I'm saying is you're not going to
get arrested for parading without a permit if we don't warn you

1    to the contrary. What I'm trying to distinguish, Your Honor,

2    is what we believe, and perhaps it needs to be decided --

3                THE COURT: Why do you object to their request for

4    relief then? All they're asking for is that the plaintiffs not

5    be arrested for parading without a permit without first being

6    afforded an opportunity to disperse. That's all they're asking

7    for. It doesn't sound like you're saying anything different.

8                MR. KOGER: Because, Your Honor, the first time we

9    heard that was this morning.

10               THE COURT: But you're hearing it now, though.

11   You're hearing it now. And you're not saying anything any

12   different. You just told me you're not going to arrest unless

13   or until you give a warning. That's all they're asking for.

14   They want that warning, they want that warning. And you're

15   willing to give it, right?

16               MR. KOGER: We're willing to give it. But the

17   conundrum I face is suppose you get 50 people, well-meaning

18   demonstrators, assembled at Murrow Park before rush hour on

19   Friday. And before the police get there they're off frolicking

20   in the traffic and somebody gets hits.

21               THE COURT: Do you know what? There are always all

22   sorts of exceptions, though, aren't there?

23               MR. KOGER: Yes, Your Honor.

24               THE COURT: The city just announced that as far as

25   the city is concerned it will not arrest for this offense

1  without giving notice. Now, there may be exceptions to that

2  rule.

3          MR. KOGER: Right.

4          THE COURT: And I don't have enough time in the day

5  to deal with all those exceptions. Although plaintiff could

6  probably cite chapter and verse for thousands of exceptions,

7  I'm not going to require him to do so. There are always

8  exceptions to the rule. But the general policy in the rule is

9  that you won't do it unless you give notice. And I think

10  that's all the plaintiffs were asking for.

11          MR. KOGER: And in that regard I was correct back in

12  April. We don't. We wouldn't. We wouldn't arrest.

13          THE COURT: Wait a minute. You started off trying to

14  correct what you said in April.

15          MR. KOGER: And give me best two out of three on that

16  one, Your Honor.

17          THE COURT: All right. I'll quit while I'm ahead

18  then. If you stand by that statement in April, then that's

19  fine.

20          MR. KOGER: I'm standing by that.

21          THE COURT: Counsel, let me ask plaintiff, you have

22  the relief you're seeking, you just heard the city, the city is

23  on record, the city is not going to arrest.

24          MR. MESSINEO: We don't have to adjudicate the

25  constitution if they want to consent to the relief.

1        THE COURT:  The city has just announced that it will

2   not arrest anyone for parading without a permit unless and

3   until it has given appropriate notice.  That's all I asked you,

4   what is the very precise relief.  And the city is on record and

5   the whole world has heard it, so there's no need for this Court

6   to do anything.

7        MR. MESSINEO:  And, Your Honor, if they fail to abide

8   by that?

9        THE COURT:  Then apparently you know where I'm

10  located.  But the city is on record.

11        MR. MESSINEO:  Well, I appreciate that.  And to the

12  extent that that is not being accepted as consent to the

13  relief, I'm not exactly sure --

14        THE COURT:  I don't think there's any real case of

15  controversy before me right now that requires this Court to do

16  anything further in light of what the city just said, I don't

17  think.

18        MR. MESSINEO:  We will take them at their word, if

19  that's what you're doing, Your Honor.

20        THE COURT:  Absolutely.

21        MR. MESSINEO:  And we will make sure that their

22  announcement is well known.

23        THE COURT:  All right.  Have a nice day.  It's good

24  to see everyone again.

25        I'm sorry, Mr. Braswell, did you want to say anything

1   or you're going to quit while you're ahead?

2       MS. BRASWELL:  It's fine to leave me out, Your Honor.

3   I only wanted to ask whether the Court was going to address our

4   motion for an order of expungement?

5       THE COURT:  I was and then I said let me just focus

6   on the request for injunctive relief.

7       MS. BRASWELL:  That's fine, if that's what the Court

8   prefers.

9       THE COURT:  Let me just take a five minute recess to

10  huddle with my staff before I let everyone leave.

11      Is there anyone else who would like an opportunity to

12  say anything; Ms. Mullen or anyone else?

13      All right.  Let me just take a five minute recess.

14      I have not forgotten your request at all, but I just

15  didn't want to focus on that today.

16      MS. BRASWELL:  I only raised it because the plaintiff

17  sought emergency injunctive relief with respect to the issue of

18  expungement.  If the Court needs to hear from us on that issue,

19  I would be happy to do so.

20      THE COURT:  I will at some point, but not today.

21      Let me just take a five minute recess.

22      (Recess taken.)

23      THE COURT:  All right.  Counsel, as I said, it's good

24  to see everyone.  Have a nice day.  Thank you.

25      (The hearing concluded at 12:30 p.m.)

1    CERTIFICATE OF REPORTER

2         I certify that the foregoing is a correct transcript

3    from the record of proceedings in the above-entitled matter.

4

5    *Elaine A Merchant*

6         ELAINE A. MERCHANT, RPR, CRR

7         Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25