UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SARAH CARR, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>Defendant. ) | Civil Action No. 06-0098 (ESH) |

**DECLARATION OF CATHY LANIER IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

I, Cathy Lanier, under penalty of perjury, declare as follows:

1. I am an officer with the District of Columbia Metropolitan Police Department (MPD) and currently I am Commander of Homeland Security.

2. On January 20-21, 2005, I was Commander of the Special Operations Division of MPD. I have personal knowledge of the mass demonstration the evening of January 20 and early morning of January 21, 2005 in the Adams Morgan neighborhood of Washington, D.C. as I was the Incident Commander on site that evening. I also have personal knowledge of the standard operating procedures of the MPD for mass demonstrations, including the issuance of warnings prior to arrest orders when appropriate.

3. Whenever possible, and time and circumstances permit, it is the standard operating procedure of MPD not to arrest for activities related to mass demonstrations, including Parading Without a Permit, without first issuing a warning to the crowd to disperse. This is set forth in MPD's Standard Operating Procedures for Response to

Mass Demonstrations, Civil Disturbances & Prisoner Processing. I was informed and aware of this standard operating procedure on January 20-21, 2005.

4. I am the officer responsible for issuing the arrest order of protesters for Parading Without a Permit on January 21, 2005 concerning the mass demonstration in the Adams Morgan neighborhood of Washington, D.C. Neither time nor circumstances permitted the issuance of a warning to disperse prior to the arrest order.

5. At approximately 11:20 p.m. I observed a group of several hundred protesters on the move in the 1700-1800 block of Columbia Road. The group mainly was composed of individuals dressed in black clothing with bandannas covering their faces. Members of the group were carrying pipes and torches. The group started walking west on Columbia Road, NW.

6. As I approached the group of protesters from behind the group in my squad car, I observed that several individuals were destroying private property by breaking windows of business establishments. Several other protesters defaced property by spray-painting the front of businesses with cans of spray paint. Several small fires also were started along the way by the protesters. Newspaper boxes also were being hauled into the street as was other debris. Several MPD CDU responded to the area of 18th Street and Columbia Road to investigate the disturbances. Metro Transit Police units also responded to the area.

7. I was one of the first to arrive and I was in a patrol car directly behind the protesters (they did not see my patrol car). I witnessed a lot of vandalism, including the throwing of rocks or other objects through the front windows of several businesses, several fires, spray painting of businesses, destruction of vehicles, newspaper boxes and

other debris being hauled into the street, and the blocking of traffic from passing in all directions by persons participating in the unlawful procession. I also saw blood on the pavement.

8. CDU 43 was one of the units instructed to respond to 18th and Columbia Road to assist with a large group of protesters parading in the middle of 18th Street. The cruiser (#406) driven by Lt. Jimmie M. Riley got in front of my squad car and was struck by a brick that shattered the front windshield. CDU 43 also was bombarded with unidentified objects thrown at them.

9. Generally, the MPD seeks to avoid making arrests for Parading Without a Permit. MPD officers in general, and Special Operations Division officers in particular routinely are able to avoid either arrests or terminating demonstrations by negotiations with the organizers of unpermitted demonstrations or parades and reaching agreement on routes or locations to be used that safely can be accommodated. In this instance, the activities of a large number of the participants in the unlawful parade were destructive and violent. To have attempted to negotiate with the "organizers" of this procession would have unreasonably placed police officers and demonstrators at risk of being injured. I did not issue an warnings initially because I had no back-up and the protesters far outnumbered me. I did not issue any warnings thereafter because the situation had turned violent when the brick was thrown through the windshield of CDU 43. Issuing warnings was not appropriate under the circumstances.

10. Based on the above-described events, on January 21, 2005, at approximately 12:23 a.m., I ordered the arrest of the protesters for Parading Without a Permit. I made the decision to arrest for Parading Without a Permit without first giving a warning to

disperse because I did not believe either time or circumstances permitted the warning. Protesters had taken over the street and already were engaged in repeated acts of vandalism and destruction of property. In addition, the protesters had initiated an attack on a police vehicle. Based on my training and experience, I thought the likelihood of personal injury to protesters, observers, and members of the MPD was high.

11. As MPD attempted to apprehend the subjects who were destroying property, the subjects and the protesters began to run from the area. Approximately 65-75 protesters who had unlawfully paraded in the roadway ran into the alley rear of 1818 Columbia Road, NW and were arrested for Parading Without a Permit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 6/19/06

_____
Cathy Lanier