UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARAH CARR, et al., )
)
)
Plaintiffs, )
)
v. )  Civ. A. No. 06-00098 (ESH)
)
DISTRICT OF COLUMBIA, )
)
)
Defendant. )
)

## DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT DISTRICT OF COLUMBIA

Pursuant to Fed. R. Civ. P. 26 and 33, defendant District of Columbia objects to and answers Plaintiffs' First Set of Interrogatories to Defendant District of Columbia as follows:

## GENERAL OBJECTIONS

Defendant's General Objections, as set forth herein, are to be considered continuing Objections and/or assertions of privilege and Objections to each and every specific document Interrogatory that follows, even if not referred to in the response to a specific Interrogatory. That some of these General Objections are not restated in response to particular Interrogatories does not waive the assertion and application or the General Objections which are not set forth in full in response to those Interrogatories. Defendant's Objections and responses given herein shall not prejudice any objection and/or assertion of privilege they may later assert in any context. Moreover, Defendant responds to the instant discovery Interrogatory subject to the accompanying Objections, without waiving and expressly preserving all Objections.

1.  Defendant objects to the instructions propounded by plaintiffs to the extent that they seek or purport to impose obligations in excess of those required by the Federal Rules of

Civil Procedure and/or the Local Rules of the United States District Court for the District of Columbia. Defendant specifically objects to these interrogatories upon the grounds that they exceed in number the amount of Interrogatories and subparts permitted by Fed. R. Civ. P. 33(a).

2. Defendant objects to this discovery to the extent that it inquires into matters privileged from disclosure pursuant to the attorney-client privilege, executive privilege, deliberative process privilege, legislative privilege, informant's privilege, law enforcement privilege, prosecutorial privilege, spousal privilege, Privacy Act, District of Columbia Municipal Regulations, D.C. Office of Personnel rules and/or regulations, the work-product doctrine, and/or any other applicable privilege or similar protection.

3. Defendant objects to this discovery to the extent that it seeks disclosure of confidential material or information in the absence of a protective order.

4. In responding to these Interrogatories, Defendant does not waive, but retains and preserves any and all Objections to the materiality, admissibility, and/or relevance of the information provided.

5. In responding to these Interrogatories, Defendant does not concede or admit any premise, proposition, or characterization contained in any discovery Interrogatory or any pleading in this or any other matter.

6. In seeking the disclosure Plaintiffs seek hereby, Plaintiffs are understood to waive any and all privileges, protections or claims regarding or relating to the subject of the disclosure.

7. Defendant objects to this discovery insofar as it is overbroad, unduly burdensome, vexatious, and vexatious insofar on grounds, including, but not limited to, that it seeks materials without limitation as to time period or over a period of time so lengthy as to seek information immaterial, irrelevant to, or otherwise inadmissible in this litigation.

8. Defendant understands that Plaintiffs' Interrogatories are not intended to seek communications or documents that are protected by the attorney-client privilege or protected by the work product doctrine and object to Plaintiffs' Interrogatories insofar as they could be read to seek such protected information.

9. Defendant objects to these Interrogatories as vague, ambiguous, irrelevant, and overbroad.

10. This response to the Interrogatories is accurate to the best of the Defendant's knowledge as of this date. The Defendant's investigation, however, is continuing, and the Defendant may obtain additional information relevant to the subject matter of this action through discovery and further review of documents. The Defendant reserves the right to rely on subsequently discovered information.

11. Defendant reserves the right to object to the use of his response to the discovery Interrogatory in any proceedings other than the above-captioned case.

12. Defendant objects to this Interrogatory to the extent that it seeks copies of electronic mail ("e-mail") on the grounds that compilation and disclosure of such documents would be oppressive, unduly burdensome and excessively expensive. Plaintiffs provide no reasonable parameters as to the dates of the search or on the senders, recipients, or search terms. Nor have Plaintiffs indicated any willingness to defray the expense of compiling responsive email.

13. Defendant objects to these Interrogatories as unduly burdensome and redundant insofar as they seek the production of materials received in discovery from any party herein,

served upon or filed by any party or counsel to any party to these matters, or available from the Court in which these matters are pending.

14. Defendant objects to these Interrogatories upon the grounds that they are redundant and/or duplicative of Interrogatories propounded by plaintiffs' counsel in other litigation against the District and refers plaintiffs to the records and materials received by their counsel from the District of Columbia, its agents, employees, officers, and officials in other cases prosecuted in whole or in part by the Partnership for Civil Justice and/or the National Lawyers Guild.

15. Each and every response herein is made subject to the foregoing General Objections, regardless of whether a General Response or specific Response is stated in the response. The explicit reference to a General Response or the making of a specific Response in response to a particular discovery response is not intended to constitute a waiver of General Objections that are not specifically referred to in that response.

## DEFINITIONS USED IN RESPONDING TO THESE INTERROGATORIES

1. In responding to these Interrogatories, Defendant occasionally refers to an anti-inaugural concert conducted at premises at 1459 Columbia Road, NW, Washington, DC, as alleged in the Complaint in this matter. "AIC" means the anti-inaugural concert conducted at premises at 1459 Columbia Road, NW, Washington, DC, as alleged in the Complaint in this matter.

2. In responding to these Interrogatories, Defendant occasionally refers to a march that commenced following the AIC the planned occurrence of which was communicated at the AIC and which to reference is made in the Complaint in this matter. "J20 March" means the

march that commenced following the AIC the planned occurrence of which was communicated at the AIC and which to reference is made in the Complaint in this matter.

## INTERROGATORIES and RESPONSES

1. If the District of Columbia does not admit the truth of any part of any matter stated in plaintiffs' First Request for Admissions to Defendant District of Columbia, served simultaneously herewith, please state for each such part all facts and reasons upon which the District of Columbia bases the failure to admit.

**Response**

In responding to this Interrogatory, the District sets forth each Request for Admission that is has denied in any part, along with the District's response to that Request, just as each appears in the Defendant's Responses to Plaintiffs; First Request for Admission to Defendant' District of Columbia, after which the District states the facts and reasons supporting the District's non-admission.

> **Request 1.** The police who arrested plaintiffs in the late evening of January 20, 2005, or the early morning of January 21, 2005, were employees of the District of Columbia who acted within the scope of their employment and under color of law.
>
> **Response 1:** Defendant objects to this Request on the grounds that it is vague, ambiguous and overly broad, and further, lacks foundation and assumes facts not in evidence, in that the Request fails to define what the Request contemplates insofar as the conduct of "arrest[ing] plaintiffs," and insofar as it asks the District to admit that (1) there is some as-yet undefined number of unidentified persons who fit the class definition; and that (2) a group of defendant's employees "acted within the scope of their employment and under color of law" over an unspecified, or at best, ambiguous period of time in the commission of unspecified acts.
> Subject to, notwithstanding, without waiving, and entirely consistent with the assertion and preservation of the foregoing objections, the District responds that it admits only that the officers of the Metropolitan Police Department ("MPD") who ordered the arrests of plaintiffs Sarah Carr, Allyson Kirk, Chelsea Kirk, Jonathan Scolnik, and Jonathan Singer (collectively, "the Named Plaintiffs") and who placed them under arrest in

5

the late evening of January 20, 2005, or the early morning of January 21, 2005, were employees of the District of Columbia at the time(s) that they placed the Named Plaintiffs under arrest and that to the extent that these officers complied with the applicable policies of the District with regard to use of force, acted within the scope of their employment in arresting the Named Plaintiffs. However, to the extent that any officer(s) failed to comply with the applicable policies of the District with regard to use of force, the District denies that such officer(s) acted within the scope of their employment in arresting the Named Plaintiffs.

**Interrogatory Response 1.a.** The District further denies Request 1 insofar as this Request contemplates that police officers who are alleged to have utilized excessive force against one or more plaintiffs in the context of the arrests at issue in this matter acted within the course and scope of their employment. The District does not countenance use of excessive force by its police officers.

Request 2. The police arrested plaintiffs for parading without a permit.

Response 2. Defendant objects to this Request on the grounds that it is vague, ambiguous and overly broad, and further, lacks foundation and assumes facts not in evidence, in that the Request fails to define what the Request contemplates insofar as the conduct of "arrest[ing] plaintiffs" and "parading without a permit" and insofar as it asks the District to admit that there is some as-yet undefined number of unidentified persons who fit the class definition.

Subject to, notwithstanding, without waiving and entirely consistent with the assertion and preservation of the foregoing objections, the District responds that it denies this Request except that Defendant admits that MPD officers arrested the Named Plaintiffs for their commission, complicity in, and facilitation of the conduct described in the various arrest paperwork pertaining to the respective Named Plaintiffs, for which each Named Plaintiffs was charged with "parading without a permit," in violation of 24 D.C.M.R., which is more fully described in Chief Lanier's declaration executed in this matter on June 19, 2006. Consistent with the arrest paperwork and Chief Lanier's declaration, plaintiffs' arrests were predicated not merely upon plaintiffs', in combination with others, having knowingly, intentionally, willfully, recklessly, and or criminally negligently paraded in the public space of District of Columbia roadways and sidewalks in a manner that incommoded the sidewalks and roadways without a permit to do so. Plaintiffs' arrests were further based upon plaintiffs'

6

- in combination with others, having knowingly, intentionally, willfully, recklessly, and/or criminally negligently obstructed traffic in public roadways;
- in combination with others, having knowingly, intentionally, willfully, recklessly, and/or criminally negligently having acted in a manner to annoy, disturb, interfere with or offend others and having shouted or made noise outside a building during the night, to the annoyance or disturbance of a considerable number of persons;
- in combination with others, having knowingly, intentionally, willfully, recklessly, and/or criminally negligently congregated and assembled in a roadway and engaged in loud and boisterous talking or other disorderly conduct and crowded, obstructed, or incommoded the free use of the roadway;
- in combination with others, having knowingly, intentionally, willfully, recklessly, and/or criminally negligently having, while over the age of 16 years, worn a mask, hood or other device causing portions of their faces to be hidden, concealed, or covered as to conceal the identity of the wearer, and having entered upon or within public property of the District of Columbia, or any street, road, alley, etc., in the District, wearing the mask, hood or other device with the intent to intimidate, threaten, abuse or harass another person; or to cause another person to fear for his personal safety where it is probable that reasonable persons would be put in fear for their safety by plaintiffs' actions, with reckless disregard for that probability; and/or the wearer was engaged in conduct prohibited by civil or criminal law, with the intent of avoiding identification;
- in combination with others, having thrown stones or other missiles in a street, avenue, alley, road, or highway, or open space, or public square, or enclosure, or plaintiffs' having thrown stones or missiles from such place onto a street, avenue, etc.;
- in combination with others, having injured, destroyed, or attempted to injure or destroy, property that was not plaintiffs' property, on purpose and with the intent to injure or destroy the property or with conscious disregard of known and substantial risks of the harm that were likely to result to the property from their actions; and
- having, in combination with others comprising a group or five or more persons, including plaintiffs, willfully engaged in a public disturbance in Washington, D.C., which, by tumultuous and violent conduct, or the threat of such conduct created grave danger of damage or injury to property or persons, and/or upon plaintiffs' having incited or urged other persons to engage in a riot.

<u>Interrogatory Response 1.b.</u>  Defendant does not admit Request 1 because of that Request's vagueness, ambiguity, overbreadth, lacks of factual foundation, and assumption of facts not in evidence, as identified and discussed in the District's objections to Request 2.

7

Defendant further partially denies Request 2 based on the facts set forth above and in the District's response to Request for Admission 2.

In addition, the District's partial denial is supported by the fact that conduct known to and/or observed by then-Commander Lanier, or observed by MPD personnel and reported to her that she considered before she ordered plaintiffs' arrests and which she reasonably relied upon as probable cause for the arrest she ordered, included (1) that no permit to engage in a procession along the sidewalks and or roadways utilized and incommoded by the plaintiffs and other marchers had been issued by the MPD; (2) that at 10:00 p.m. Commander Lanier was advised by an MPD officer at the AIC that a plan to engage in a snake march from the AIC to an Inaugural Ball site, engaging in property damage along the way had been generally communicated to hundreds of persons in attendance at the AIC; (3) that at 11:20 p.m., Commander Lanier was informed that J20 Marchers had taken over roadways and were causing property damage along their route to the Hilton Hotel; (4) numerous persons engaged in the march carried flaming torches; (3) many persons engaged in the march concealed their identities with masks in the form of bandannas covering their faces; (5) numerous members of the march played makeshift drums and/or chanted loudly while proceeding through a residential area after 11:00 p.m. creating a disturbance that perceptibly disturbed and annoyed residents of that area; (6) members of the march defaced buildings and other property along the march route with spray-paint; (7) members of the march threw missiles from and into public space; (8) members of the march broke numerous windows of buildings near the intersection of 16th Street and Columbia Road, NW; (9) members of the march overturned newspaper vending machines along the march route; (10) members of the march placed or threw newspaper

vending machines into public roadways creating hazardous conditions and obstructing vehicular traffic; (11) members of the march observed one or more of these criminal acts and joined and/or continued their participation in the march; (12) one or more members of the march hurled a brick or rock into the windshield of an MPD cruiser and breaking the windshield of that cruiser, which was being operated by MPD Lt. Jimmy Riley at the time, thereby endangering Lt. Riley, endangering others by creating a possibility that Lt. Riley might lose control of his cruiser, and damaging government property; (13) members of the march had formed and participated in the march with knowledge provided by amplified announcements made from the performance stage at the anti-inaugural concert conducted at 1459 Columbia Road, NW, that the march was intended to culminate in a demonstration at the Washington Hilton, which was the site of an ongoing Inaugural Ball, that would include efforts to "crash" the Inaugural Ball and cause property damage to the Washington Hilton, and menace, intimidate, and/or harm the persons and property of individuals lawfully in attendance at that Inaugural Ball; (14) that members of the march, some of whom wore masks, individually and collectively annoyed, and/or menaced, intimated and/or threatened persons in the vicinity of the march who were non-participants; (15) that members of the march participated in the march as part of a common scheme or plan; and (16) that MPD personnel informing and making arrest decision reasonably believed, based on pre-Inauguration intelligence and prior experience that it was reasonably likely that persons who had attended Anti-Inaugural Concert at 1459 Columbia Road, NW, communicated plans for J20 March and related information to persons off-site and that persons engaged in the J20 March had and used the capability to

communicate wirelessly with others within the J20 March and others outside the J20 March regarding incidents of criminal conduct and police activity.

Additional observations reported to Lanier providing probable cause for plaintiffs' arrests included that a large crowd, largely dressed in black and wearing bandannas as masks and "carrying pipes with something attached at the end", are going west on Columbia Road to 15th Street N.W. at 11:21 p.m.; that about 100 demonstrators were walking on Columbia Road towards 18th Street in regular clothing carrying banners and signs at 11:23 p.m.; that demonstrators had broken windows of the CitiBank at 1749-1/2 Columbia Road, NW, and MPD personnel had observed other property damage at nearby points along the J20 March route as of 11:29 p.m.; and that about 200 demonstrators were moving southbound along the 2400 block of 18th Street, carrying canisters of flammable liquid and firecrackers, some of which are going off at the time as of 11:31 p.m.

As observed by MPD personnel in front of the J20 March and reported to and observed by Commander Lanier, who was traveling behind the march, protestors, in the context of the J20 March had started fires, thrown rocks into the windows of buildings, and had or still were blocking traffic from all directions. Windows were broken in buildings at 1749-1/2 Columbia Road, 1800 Columbia Road, 1779 Columbia Road, and at an apartment complex at 1768 Columbia Road.

  Request 3. At the time of plaintiffs' arrests it was the policy of the District of Columbia, absent unusual circumstances, to not arrest persons parading in the street without a permit unless police ordered the persons to stop parading, afforded them opportunity to obey the order, and they failed to obey it.

  Response 3. Defendant objects to this Request on the grounds that it is vague, ambiguous and overly broad, and further, lacks foundation. This Request cannot be reasonably admitted or denied because its use of the undefined term "absent unusual circumstances" renders it impossible to ascertain the range of circumstances, if any, under which persons parading

in the street without a permit might be arrested in accordance with the policy of the District of Columbia unless police ordered those persons to stop parading, afforded them opportunity to obey the order, and those failed to obey it. This Request is further unreasonably vague to the point of precluding admission or denial because it does not indicate a charge or charges for which it presumes such persons would be subject to arrest given "unusual circumstances" and/or the issuance of a police order to the subject persons to stop parading, followed by an opportunity for those persons to obey the order, and the failure of those persons to obey such order.

Subject to, notwithstanding, without waiving, and entirely consistent with the assertion and preservation of the foregoing objections, defendant responds that it admits that at the time of plaintiffs' arrests it was the policy of the District of Columbia, where the conduct of a crowd marching in a street without a permit rose to a level of unlawful disruption such that an incident commander determined there to be the need for a positive police response, that, where time and circumstances permitted, the incident commander was to cause warnings to disperse to be issued to the crowd, and to afford them an opportunity to obey the order, and arrest persons who failed to obey the order.

<u>Interrogatory Response 1.c.</u>  Defendant partially denies Request 3 because it is vague, ambiguous and overly broad, and further, lacks foundation. Further this Request cannot be reasonably admitted or denied because its use of the undefined term "absent unusual circumstances;" a term that is not reflected in the relevant policy of the District of Columbia. The Request's use of the undefined term that is not included in the District's policy makes it impossible for the District in responding to this Request to ascertain the range of circumstances, if any, under which persons parading in the street without a permit might be arrested in accordance with the policy of the District of Columbia unless police ordered those persons to stop parading, afforded them opportunity to obey the order, and those failed to obey it. The District also partially denies this Request because it does not indicate a charge or charges for which it presumes such persons would be subject to arrest given "unusual circumstances" and/or the issuance of a police order to the subject persons

11

to stop parading, followed by an opportunity for those persons to obey the order, and the failure of those persons to obey such order.

However, as Chief Lanier indicated in her declaration, executed June 19, 2006, at the time of plaintiffs' arrests it was the policy of the District of Columbia, where the conduct of a crowd marching in a street without a permit rose to a level of unlawful disruption such that an incident commander determined there to be the need for a positive police response, that, where time and circumstances permitted, the incident commander was to cause warnings to disperse to be issued to the crowd, and to afford them an opportunity to obey the order, and arrest persons who failed to obey the order. This policy is reflected in the Metropolitan Police department's Standard Operating Procedures for Mass Demonstrations, Response To Civil Disturbances & Prisoner Processing, Revised May 2003 (a copy of which is submitted in response to Plaintiffs' First Request for the Production of Documents and Tangible Things), at 34.

> Request 4. Prior to plaintiffs' arrests the meaning of unusual circumstances referenced in Request 4 was not stated in law, regulation, or published written policy.

> Response 4. Defendant objects to this Request on the grounds that it is vague, ambiguous and overly broad, and further, lacks foundation. This Request is improperly predicated upon the preceding Request, which asserts the existence of a standard – "absent unusual circumstances" – which was not incorporated as such into applicable District of Columbia policy and which plaintiffs have not defined for the purposes of these Requests; accordingly, this Request can neither be admitted nor denied.

<u>Interrogatory Response 1.d.</u>  Defendant is unable to admit Request 4 because it is vague, ambiguous and overly broad, and further, lacks foundation. This Request is improperly predicated upon the preceding Request, which erroneously asserts the existence of a standard – "absent unusual circumstances" – which was not incorporated as such into

applicable District of Columbia policy and which plaintiffs have not defined for the purposes of these Requests. In short, the term "unusual circumstances" does not appear in the pertinent District of Columbia policy; for that reason "unusual circumstances" is not defined with regard to the pertinent policy. Accordingly, this Request can neither be admitted nor denied.

      **Request 14.** After plaintiffs' arrests the Mayor of the District of Columbia appointed Cathy Lanier to the position of Chief of the District of Columbia Metropolitan Police Department.

      **Response 14.** Defendant objects to this Request on the grounds that it is vague and ambiguous. Subject to, notwithstanding, without waiving and entirely consistent with the assertion and preservation of the foregoing objections, defendant responds that it denies this Request except that Defendant admits that Cathy Lanier was designated Acting Chief of the Metropolitan Police Department on December 3, 2006, by Charles H. Ramsey, and was subsequently nominated to the office of Chief of the Metropolitan Police Department on January 3, 2007, by Mayor Adrian Fenty, and confirmed by vote of the Counsel of the District of Columbia on April 3, 2007.

<u>Interrogatory Response 1.e.</u> Defendant partially denies Request 14 because its ambiguity causes either an unqualified admission or denial to be misleading, or, at best unclear.

    2. Referring to the June 19, 2006, Declaration of Cathy Lanier in Support of Defendant's Reply in Support of Motion to Dismiss filed in this case July 3, 2006 (Doc 17),

      a. please identify all parts of the declaration, if any, that are incorrect and state why they are incorrect;

      b. please state all facts and reasons in addition to or other than those stated in the declaration upon which the District of Columbia bases its contention that probable cause existed for plaintiffs' arrests;

13

c. please state all facts and reasons in addition to or other than those stated in the declaration upon which the District of Columbia bases its contention that plaintiffs' arrests did not violate the First Amendment to the Constitution of the United States.

**Interrogatory Response 2.**

2.a.    Defendant responds that no parts of the Lanier Declaration are incorrect.

2.b.    Defendant responds that it respectfully refers plaintiffs to Defendant's answer to Interrogatory 1.b and incorporates that answer herein,

2.c.    Defendant responds that it respectfully refers plaintiffs to Defendant's answer to Interrogatory 1.b and incorporates that answer herein. In addition, Defendant responds that the decision to arrest was not motivated in any way by any viewpoint or position expressed or intimated by any plaintiff or other participant in the J20 March.

3. Referring to the second and third lines on page 9 of the Court's July 26, 2006, Memorandum Opinion and Order in this case (Doc 18), please state whether at the time of plaintiffs' arrests it was reasonable for the arresting officers to assume that parading without a permit was a criminal offense and state all facts and reasons why.

**Interrogatory Response 3.**

Referring to the second and third lines on page 9 of the Court's July 26, 2006, Memorandum Opinion and Order in this case (Doc 18), at the time of plaintiffs' arrests it was reasonable for the arresting officers to assume that parading without a permit was a criminal offense.

Facts and reasons for the arresting officers to believe that parading with out a permit was a criminal offense supporting are set forth in the Defendant District of

Columbia's Memorandum of Points and Authorities in Opposition to Plaintiffs Motion for Preliminary Injunction Prohibiting District of Columbia from Arresting for Parading Without A Permit in *Barham v. Ramsey*, 02cv2283 (EGS) Dkt # 149 and in Defendant District of Columbia's Motion to Dismiss Unreasonable Seizure/False Arrest Claims in this matter, DKT #5. Further facts and reasons for the arresting officers to believe that parading with out a permit was a criminal offense include Judge Sullivan's denial of the Barham plaintiff's Motion for Preliminary Injunction Prohibiting District of Columbia from Arresting for Parading Without A Permit in *Barham v. Ramsey*, and that in enacting the First Amendment Rights and Police Standards Act of 2004, the Council of the District of Columbia enacted legislation the precludes arrest for parading without a permit, reflecting the Council's recognition that "parading without a permit" had been a criminal offense permitting of arrest charge under the 18 DCMR, had been decriminalized under 18 DCMR, but remained a criminal offense permitting of arrest pursuant to 24 DCMR. Furthermore, the Office of the Corporation Counsel had prosecuted "parading without a permit" cases in response to mass arrests made in April 2000 and September 2002. In addition, "parading without a permit" was, as of January 20, 2005, an offense listed on the Collateral List issued by the District of Columbia Superior Court. That listing reflected that the District of Columbia Superior Court deemed parading without a permit to be an offense for which an individual could post and forfeit collateral to obtain his or her post-arrest release; thus the Court deemed the offense to a criminal offense permitting of arrest.

 Additionally, a prudent person could have reasonably believed that parading without a permit was a crime. That the MPD had arrest many persons for parading without a permit in April 2000 was reported nationally in reputable news publications and

broadcast journalists at the time. See. e.g., "The New Radicals", Walter Kirn, <u>Time in Partnership with CNN</u>, (Monday, April 24, 2000) (http://www.time.com./time/magazine/article/0.9171.996690.00.html) ("On Saturday [April 15, 2000] night alone, [Washington, D.C.] police arrested nearly 600 anti-globalists for "parading without a permit.""); "I on the News", David Montgomery, *Washington Post*, Monday, April 22, 2002, p. C01, (discussing April 15, 2000 600-person mass arrest for parading without a permit); "FBI's Queries Rattle Activist, Agents Seek Info On Possible Violence At Political Convention", Karen Abbott, *Denver Rocky Mountain News*, (July 27, 2004) (Paul "Bame said he pleaded guilty in Washington [D.C.] to parading without a permit, and the Florida charge against him, obstructing a sidewalk, was dismissed."); "Bankrupt the bank, Marchers in search of a cause", Helle Bering, *The Washington Times*, April 19, 2000, A17 (2000 WLNR 348993) (600 arrested for "parading without a permit"); D.C. police arrest hundreds, then free many, Protestors stranded at correction center", John Drake and Gerald Mizejewski, *The Washington Times*, April 16, 2000, C1, (2000 WLNR 342828) (D.C. police arrested more than 600 people on April 15, 2000 for parading without a permit); "Anti-Globalization Protestors March Through Washington During IMF and World Bank Meetings", Sunday Morning News, Kate Snow, CNN.com transcripts, (April 16, 2000, 8:00 a.m. ET) (about 600 arrest made evening of April 15, 2000 because persons were parading without a permit); "Police make mass arrests of demonstrators in D.C.", Larry Margasak, *The Milwaukee Journal Sentinel*, (April 16, 2000) ("Several hundred were arrested for parading without a permit . . . ."); "Second Day's IMF Protest Generally Peaceful", David Ho, Pittsburgh Post Gazette, September 29, 2002 (2002 WLNR 4191155) (persons arrested on Friday, September 27, 2002 "charged with for

16

failing to obey a police officer or parading without a permit"); Madison protestors feel heat at IMF protests, Michelle Orris, *The Badger Herald*, (October 9, 2002) ( on September 27, 2002, police arrested more than 650 persons on charges of failure to obey, incommoding and parading without a permit); "Arrest mark protests", Alex Kingsbury, *GW Hatchet*, (Posted: 9/30/02) (more than 200 people were arrested on charges of parading without a permit).

Finally, for the reasons set forth in Judge Huvelle's July 26, 2006, Memorandum Opinion and Order in this case (Doc 18) regarding the distinction between the 24 DCMR charge and the 18 DCMR charge and between the 24 DCMR charge and the underage drinking charge addressed by the D.C. Circuit in *Doe, et al. v. Metro. Police Dep't of District of Columbia*, 445 F.3d 460 (D.C. Cir. 2006), it was reasonable for arresting officers to believe parading without a permit to have been an arrestable offense as of January 20, 2005.

4. Please state whether the list of the 70 arrested persons, which was provided in this case by defendant's counsel to plaintiffs' counsel, includes all juveniles who were arrested with plaintiffs.

<u>Interrogatory Response 4:</u>  Defendant objects to this Interrogatory on the grounds that it is vague and ambiguous and lacks foundation. It is vague and ambiguous in speaking on terms of "juveniles who were arrested 'with' plaintiffs." It is not clear whether it contemplates juveniles who may have been arrested at the same time as plaintiffs or in the general vicinity of plaintiffs, but for different offenses. Further it assumes that juveniles were arrested in some context related to the plaintiffs' arrests.

Subject to, notwithstanding, without waiving, and entirely consistent with the assertion and preservation of the foregoing objections, Defendant responds that a diligent review of its records reflects that no juveniles were arrested in the mass arrest in which plaintiffs were arrested.

5. Please state the name, current address, and rank at the time of plaintiffs' arrests of the five highest-ranking police officers who participated in the arrests of the plaintiffs or the decision to arrest them.

**Interrogatory Response 5.**

Defendant objects to this Interrogatory insofar as it seeks disclosure of residence addresses and other contact information for sworn MPD personnel, the dissemination of such information would pose an unnecessary risk to these officers. *See Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998). Defendant will present these officials for deposition, if requested by plaintiffs.

Subject to, notwithstanding, without waiving, and entirely consistent with the assertion and preservation of the foregoing objections, Defendant responds that the five highest-ranking police officers who participated in the arrests of the plaintiffs or the decision to arrest them are:

Cathy L. Lanier, Commander

Michael Anzallo, Commander

Diane Grooms, Inspector

Andrew Solberg, Inspector

Brian Bray, Captain

6. If the District of Columbia does not produce all of Brian Slingerland's rolls of film requested in Request 8 of Plaintiffs' First Request for Production of Documents to Defendant District of Columbia, please state all facts pertaining to what happened to any rolls not produced and where they are or likely may be now.

**Interrogatory Response 6.**

Defendant objects to this Interrogatory on the grounds that it assumes, without foundation, that the District has or at some time had possession of "Brian Slingerland's rolls of film requested in Request 8 of Plaintiffs' First Request for Production of Documents to Defendant District of Columbia."

Subject to, notwithstanding, without waiving, and entirely consistent with the assertion and preservation of the foregoing objections, Defendant responds that a diligent review of its records and questioning of MPD personnel pertinent to an alleged receipt of and/or seizure from Mr. Slingerland of rolls of film has failed to confirm such receipt or seizure and, accordingly, has disclosed no facts pertaining to what may have happened to any such rolls of film and/or where they are or likely may be now.

I declare under penalty of perjury that the foregoing is true and correct as to facts known personally to me and is true and correct upon information and belief as to facts of which I have been informed by my subordinates, which collectively account for all information provided in the foregoing answers.

Executed: 8/9/07

CATHY L. LANIER
Chief of Police
Metropolitan Police Department

Objections respectfully submitted by,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

ELLEN EFROS
Chief, Equity Section I

s/ Thomas L. Koger
THOMAS L. KOGER [427921]
Senior Assistant Attorney General
441 Fourth Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6610
Fax: (202) 727-3625 (fax)
**E-mail:   Thomas.Koger@dc.gov**