UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH CARR, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>Defendants. )<br>) | Civ. Action No. 06-0098 (ESH) |

**PLAINTIFF ALLYSON KIRK'S RESPONSE TO DEFENDANT DISTRICT OF COLUMBIA'S FIRST SET OF INTERROGATORIES**

1.   Identify the person answering each interrogatory, as directed in paragraph "b" above, including providing this person's social security number, date of birth, and address.

**Partial Objections**

Plaintiff objects to this interrogatory on the ground of undue burden and unwarranted invasion of privacy and First Amendment associational privacy to the extent that it asks for plaintiff nicknames, aliases, or other identifiers used in communications that are not admissible at trial and cannot lead to the discovery of admissible evidence in any way that knowledge of plaintiff's name cannot also so lead.

**Answer**

Responsive information not covered by an objection stated above is as follows:

| | |
|---|---|
| Full Name: | Allyson Margaret Kirk |
| Social Security Number: | 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 |
| Permanent Address: | 14096 Reva Road<br>Boston, VA 22713 |



I paid $50 to obtain my release.

I have an arrest record from this incident.

I believe deeply in my right under the First Amendment to participate in political demonstrations and I plan to attend future demonstrations in Washington, DC. My arrest while demonstrating, however, has chilled my enthusiasm for exercising this right, and has caused me to fear that police in the District of Columbia do not respect the rights of demonstrators and will arrest me again for participating in a demonstration, or will arrest me again when I demonstrate because of wrongdoing by others.

8. Describe with specificity all actions you took from two hours prior to your arrival at the anti-inaugural ball conducted on January 20, 2005 in a church at 1459 Columbia Road and all actions you observed of other persons who participated in the march in which you participated to the time of your arrest, including, but not limited to conduct resulting in damage to property.

**Partial Objections**

Plaintiff objects to this interrogatory on the ground of undue burden and on the ground that the requested information—*all* actions she took and *all* actions she observed during the indicated time—is neither admissible at trial nor reasonably calculated to lead to the discovery of admissible evidence. This objection does not apply to actions plaintiff took or observed that are admissible or reasonably calculated to lead to discovery of admissible evidence.

Plaintiff objects to the part of this interrogatory that asks her to state conduct that she observed that resulted in damage to property on the ground of undue burden and on

the ground that the requested information is not admissible at trial and cannot lead to the discovery of admissible evidence.

Plaintiff objects on the ground of undue burden to stating responsive information that is stated in the interrogatory responses of another plaintiff.

**Answer**

Without abandoning or waiving the objections stated above, I answer as follows: I incorporate by reference all responsive information stated in the complaint.

After the inaugural parade ended in the late afternoon, my sister Chelsea Kirk, her boyfriend Josh Maines, and I went to get something to eat. Then we traveled by Metro and on foot to the site of the concert at 1459 Columbia Road, NW, where we arrived at about 6:30 p.m. We rested a bit before the concert began.

We read a flier announcing that a march would take place at the end of the concert and decided to attend that march; we called my parents to tell them about our change in plan. They readily agreed, but told us to be careful. We did not know—and did not even know enough to ask—if the march had a permit or if the police would allow it.

The march began at about 11:00 p.m. Several hundred people marched in the street and on the sidewalks along Columbia Road toward the Hilton Hotel, the site of one of the official inaugural balls. Marchers drummed on buckets, held torches, and chanted; Chelsea, Josh and I were located toward the back of the march. Along the way bystanders came out to cheer, and passing motorists honked their horns and raised their fists in support of us. I felt inspired by all the positive energy.

But after only fifteen minutes or so, I saw two people wearing masks spray paint on a building. Then I saw a projectile break a glass window (although I did not see who

threw it). Chelsea, Josh and I decided to fall back from the march because we did not want to be near this conduct.

Although we had separated ourselves from the march and decided to head toward the Metro for our trip home, we did not know where we were. At that point we could hear police sirens, and could see marked police cars behind us, a low-flying helicopter overhead, and police in riot gear on foot ahead of us. But the police gave no order.

We moved forward and turned into an alley to get away from the march and away from the police; a few of the other marchers did the same thing. At the other end of the alley, however, we could see more police in riot gear. The police started screaming at us. We walked toward them to explain that we had left the march and only wanted to get to the Metro.

As we approached the police, one of the officers knelt down and pointed his gun at us; the other police screamed at us to go back the way we came. Feeling frightened and confused, we turned back, only to encounter other police in riot gear who herded us into an adjoining alley covered in ice. We tried frantically to explain that we only wanted to go to the Metro, but they pushed us and replied with obscenities such as "Get the f*** over there!" and "Get your f***ing asses moving!"

Soon we could see police herding other people into the alley; these people had their hands raised. The police ordered us to get down on our knees, put our hands on our "f***ing" heads" and to "shut the f*** up!" We were all frightened and complied immediately.

Then there was silence. We were confused, not knowing what was going to