UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SARAH CARR, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civ. A. No. 06-00098 (ESH) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF ISSUES**

Plaintiffs respond as follows to the numbered statements in defendant's statement of issues (Doc 48-4).

1-2.  Whether the video tapes "fail[] to fairly and accurately represent the march because [they] fail[] to depict the occurrence, in the context of the march," of acts of property destruction "by march participants" is not a genuine issue requiring trial.  The relevant question is not whether "march participants" committed acts of property destruction or violence "in the context of the march," but whether police had evidence *identifying each plaintiff* arrested in the alley as a person who had committed, conspired to commit, or specifically intended to further such a criminal act.

Defendant's idea that the lawfulness of the mass arrest of the plaintiffs depends on whether there is some overall characterization that "represent[s] the march," is erroneous.  It reflects defendant's erroneous "group probable cause" theory.  Defendant's erroneous theory is that each and every plaintiff had committed a crime because "the march" was a "mob" and a "riot."  Evidence that unidentified persons in the streets committed criminal acts that constituted rioting, however, was not a sufficient basis for

mass arrest of every person whom police trapped in the alley. To arrest everyone trapped in the alley for rioting or conspiring to riot, police needed evidence identifying each and every one of them as an individual who had committed or specifically intended to further one or more of the criminal acts in the street, or had conspired to commit such acts.

 Defendant has the burden of proof. The failure of the video tapes to meet defendant's burden does not mean that defendant is entitled to trial, let alone summary judgment.

 Nor does the evidence cited in defendant's statement satisfy defendant's burden. The evidence does not identify anyone who committed or specifically intended to further a criminal act of rioting in the street. Declarations asserting that everyone in the march cheered or raised an arm in support of one or more instances of window-breaking are not competent evidence because it was impossible for the declarants to know whether everyone in the march cheered or raised an arm in support of one or more instances of window-breaking. This is dispositive; but, on the evidence before the Court, it also appears to have been impossible for all marchers knowingly to cheer simultaneously such an incident. And, apart from this, it is also dispositive there is no evidence that each and every person arrested in the alley was a person who was in the march at the time that an instance of window-breaking cheering or arm-raising occurred. There is no evidence that police placed a cordon of officers around the march after an instance of window-breaking cheering and arm-raising and maintained that cordon from that time until the time of arrest in the alley, ensuring that no one joined the group in the meantime and thus, that everyone arrested in the alley had been in the group on the street when the cheering and arm-raising occurred.

2

Nor does the evidence show that each and every person arrested in the alley had conspired to riot. Defendant's theory that anyone who marched after reading a leaflet, or hearing an announcement saying that the march would "crash" an inaugural ball, conspired to riot fails because there is no evidence that each and every person arrested in the alley had read the leaflet or heard the announcement. It is undisputed that plaintiff Singer did not read the leaflet and heard no such announcement. Defendant's evidence also fails because the announcement and the leaflet on its face were protected speech that did not advocate unlawful acts and, in any event no evidence shows that each and every person who read the leaflet or heard the announcement (a) understood the announcement or the language of the leaflet on its face to advocate law-breaking or knew that the announcer or the leaflet writers used code language to advocate law-breaking, (b) knew that one or more readers of the leaflet or hearers of the announcement who joined the march intended to break the law, and (c) specifically intended to further that law-breaking.

There is no evidence that any identified person, let alone each and every person, who heard the announcement understood "crash" to mean unlawfully breach security at an inaugural ball, rather than simply show up at the site without invitation. There is no evidence that each and every person who joined the march after hearing the announcement specifically intended to further unlawful breaching of security at the ball, or even to march all of the way to the site of the ball or stay at the site after arriving.

It is undisputed that police gave no order to disperse and did not otherwise communicate to the marchers that police permission to march or to continue marching was denied. It is also undisputed that it was the policy of the District of Columbia not to

3

arrest street marchers simply because they did not have a written permit. For these reasons, and the reasons stated above, police lacked probable cause to effect a mass arrest for rioting or conspiracy to riot and lacked probable cause to arrest every plaintiff for or charge every plaintiff with knowingly demonstrating without police permission. The failure of the evidence to show that each and every person arrested in the alley was an individual who committed a criminal act of rioting, specifically intended to further a criminal act of rioting, conspired to riot, or knowingly marched in the street without police permission entitles plaintiffs to summary judgment on liability as to their claim for unlawful arrest.

      3-4. For the reasons stated in the response to ¶¶ 1-2 above, the evidence, including the evidence cited in defendant's statement, shows that police lacked probable cause to believe that each and every plaintiff had committed the elements of rioting or parading without a permit. The evidence shows that plaintiffs are entitled to summary judgment on liability as to their claim for unlawful arrest.

      5. This statement—concerning written permits, procedures for facilitating marches having no written permits, revocation of written permits or facilitation of marches, and what Lanier would have done if she had been on the scene of the start of the march—does not state relevant issues. For the reasons stated in the response to ¶¶ 1-2 above, the relevant, dispositive, and undisputed points are that police gave no order to disperse and did not otherwise communicate to the marchers that police permission to march or to continue marching was denied, and that it was the policy of the District of Columbia not to arrest street marchers simply because they did not have a written permit.

6. The statement does not state a relevant disputed issue. It is undisputed that District of Columbia policy generally required the police to support peaceful political street marches that did not have a written permit and that it was District of Columbia policy not to arrest street marchers simply because they did not have a written permit.

Plaintiffs do not contend that District policy required the police to support and continue to allow a peaceful march if persons in the march started committing unlawful acts of property destruction or violence and the police reasonably needed to act to control the group to stop unlawful acts. That the District was not required to continue supporting a march that became infected by the unlawful acts of some is not relevant. The relevant point is that absent an order to disperse and reasonable opportunity to comply police were not justified in detaining marchers as a group. Whether it would have been reasonable for police to give an order to disperse or any other order restricting the time, place, or manner of the march is not a relevant issue, because it is undisputed that the police gave no such order.

7. The text of the Flier is in evidence. What its written words were is not a disputed issue. For the reasons stated in the response to ¶¶ 1-2 above, the text of the Flier does not provide probable cause to arrest all of the plaintiffs. For the reasons stated in the response to ¶¶ 1-2 above, joining the march after reading the Flier was not a criminal act and there was no evidence that each person arrested in the alley had read the leaflet.

8. For the reasons stated in the response to ¶¶ 1-2 above, whether an announcer from the stage said that anyone would "crash" an inaugural ball is not a relevant issue. For the reasons stated in the response to ¶¶ 1-2 above, joining the march after hearing the

announcement was not a criminal act and there was no evidence that each person arrested in the alley had heard the announcement.

9. For the reasons stated in the response to ¶¶ 1-2 above, the statement and cited evidence do not show that police had probable cause to believe that each and every plaintiff had committed a crime.

10. The statement does not state a relevant issue. Defendant cannot escape liability for unlawful arrest of the plaintiffs merely because defendant did not *say* at the *Barham* hearing that it would not arrest persons for rioting without warning. Whether on the undisputed facts it was unlawful for police to effect the mass arrest of the plaintiffs for rioting or conspiracy to riot without an order to disperse is a question of law. Our opening memorandum and reply and opposition show that mass arrest of the plaintiffs without an order to disperse was unlawful.

11. For the reasons stated in the response to ¶¶ 1-2 above, the statement and cited evidence do not show that police had probable cause to believe that each and every plaintiff had committed a crime.

12. Whether Lanier did or did not agree with Jordan's reasons for making a mass arrest in 2002 is not a relevant issue. For the reasons stated in the response to ¶¶ 1-2 above, the statement and cited evidence do not show that police had probable cause to believe that each and every plaintiff had committed a crime.

13. For the reasons stated in plaintiffs' opposition and reply, the statement and cited evidence do not create a genuine issue requiring trial of Chelsea Kirk's assault and battery claim. Although Topper may have "had the opportunity to observe, at close range, the condition of her wrists," though the cited evidence does not even say this, there

is no evidence that Topper actually took the "opportunity" and actually looked at plaintiff's wrists.  The cited evidence shows only (a) that Topper had no knowledge whether plaintiff's flexcuffs were or had been too tight or whether her wrists were injured, and (b) that plaintiff did not complain to *him*.  Plaintiff's evidence that, in fact, the flexcuffs had been applied to tightly and had injured her wrists, causing them to bleed, is uncontradicted.  Proof of plaintiff's claim requires nothing more.  Complaining about an assault and battery is not an element of assault and battery.  Plaintiff's uncontradicted evidence proves all elements of assault and battery.  Nonetheless, it is undisputed that plaintiff did complain, twice, to other officers.  Further, uncontradicted evidence shows that plaintiff had good reason not to complain to Topper.  The undisputed evidence is cited in plaintiffs' opening memorandum and reply and opposition.

For these reasons, plaintiff Chelsea Kirk is entitled to summary judgment on liability as to her assault and battery claim

Respectfully submitted,

/s/ Arthur B. Spitzer
Arthur B. Spitzer, D.C. Bar No. 235960
Fritz Mulhauser, D.C. Bar No. 455377
American Civil Liberties Union
of the National Capital Area
1400 20th Street, NW, #119
Washington, DC 20036
202/457-0800

/s/ Daniel M. Schember
Daniel M. Schember, D.C. Bar #237180
Susan B. Dunham, D.C. Bar # 362378
Gaffney & Schember, PC
1666 Connecticut Avenue, NW, Suite 225
Washington, DC 20009
202/328-2244

On behalf of the D.C. Chapter, National Lawyers Guild and the American Civil Liberties Union of the National Capital Area

Counsel for Plaintiffs

April 11, 2008