UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH CARR, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>Defendant. )<br>) | Civ. A. No. 06-00098 (ESH) |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABIILTY**

# Exhibit R

# Excerpt, Deposition of Sarah Carr

# Deposition Exhibit 2

Arthur B. Spitzer, D.C. Bar No. 235960
Fritz Mulhauser, D.C. Bar No. 455377
American Civil Liberties Union
of the National Capital Area
1400 20th Street, NW, #119
Washington, DC 20036
202/457-0800

Daniel M. Schember, D.C. Bar #237180
Susan B. Dunham, D.C. Bar # 362378
Gaffney & Schember, PC
1666 Connecticut Avenue, NW, Suite 225
Washington, DC 20009
202/328-2244

On behalf of the D.C. Chapter, National
Lawyers Guild and the American Civil
Liberties Union of the National Capital Area

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH CARR, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>Defendants. )<br>) | Civ. Action No. 06-0098 (ESH) |

**PLAINTIFF SARAH CARR'S RESPONSE TO DEFENDANT DISTRICT OF COLUMBIA'S FIRST SET OF INTERROGATORIES**

1. Identify the person answering each interrogatory, as directed in paragraph "b" above, including providing this person's social security number, date of birth, and address.

**Partial Objections**

Plaintiff objects to this interrogatory on the ground of undue burden and unwarranted invasion of privacy and First Amendment associational privacy to the extent that it asks for plaintiff nicknames, aliases, or other identifiers used in communications that are not admissible at trial and cannot lead to the discovery of admissible evidence in any way that knowledge of plaintiff's name cannot also so lead.

**Answer**

Responsive information not covered by an objection stated above is as follows:

Full Name: Sarah Michael Carr

Social Security Number: 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

Home Address: 1374 Wakefield Road
Lynchburg, VA 24503



I fear that this arrest has damaged my reputation and will have adverse consequences to my future plan for admission to law school and the Bar, as well as for my prospects for future employment in government and law.

I believe deeply in my right under the First Amendment to participate in political demonstrations and I plan to attend future demonstrations in Washington, DC if I can be assured that police will respect my rights. My arrest in the District of Columbia while participating in my first political demonstration, however, has chilled my enthusiasm for exercising this right.

9.   Describe with specificity all actions you took from two hours prior to your arrival at the anti-inaugural ball conducted on January 20, 2005 in a church at 1459 Columbia Road and all actions you observed of other persons who participated in the march in which you participated to the time of your arrest, including, but not limited to conduct resulting in damage to property.

**Partial Objections**

Plaintiff objects to this interrogatory on the ground of undue burden and on the ground that the requested information—*all* actions she took and *all* actions she observed during the indicated time—is neither admissible at trial nor reasonably calculated to lead to the discovery of admissible evidence. This objection does not apply to actions plaintiff took or observed that are admissible or reasonably calculated to lead to discovery of admissible evidence.

Plaintiff objects to the part of this interrogatory that asks her to state conduct that she observed that resulted in damage to property on the ground of undue burden and on

the ground that the requested information is not admissible at trial and cannot lead to the discovery of admissible evidence.

Plaintiff objects on the ground of undue burden to stating responsive information that is stated in the interrogatory responses of another plaintiff.

**Answer**

Without abandoning or waiving the objections stated above, I answer as follows:

I incorporate by reference all responsive information stated in the complaint.

Two hours before the concert began I was at Dupont Circle with some friends, including Karl Bach and Corey Beasley, who were later arrested with me. We stayed there until about 6:30 p.m., when we departed from that area. Our other friends then left the city, but Karl, Corey, and I stayed on because we had plans that night to attend an anti-inaugural concert, where one of my favorite bands, "Q And Not U," would be performing. We made our way by Metro and on foot to the concert venue at 1459 Columbia Road, NW.

The concert began at about 7:30 p.m. An announcement was made that there would be a march after the concert ended to the Hilton Hotel on Connecticut Avenue, NW, the site of one of the official inaugural balls. I was surprised by this announcement because the march had not been publicized on a website I had seen with the other protest events. A flier was distributed describing the march which stated, in pertinent part, "[p]lease remember to be respectful of people in the Columbia Heights neighborhood where we are guests. Watch your surroundings and keep the energy focused on where it needs to be—on showing the world our opposition to Bush."

I did not know if this march had a permit or whether police would or would not allow it, or even whether a permit or police permission might be required because I had no knowledge of any laws or police practices regarding demonstrations. I did not think about any of these matters because that day the whole city had been the site of many gatherings for celebrations and protests. Even though I was tired, I decided to end my day by joining the march. My friends Karl and Corey decided to participate too.

The march began at some time after 11:00 p.m. It headed west on Columbia Road toward the Adams Morgan neighborhood. There were 100 or more youthful marchers, some in the road and some on the sidewalk, who chanted and drummed on plastic drums. At first my friends and I marched in the road toward the front of the march. Many people in the vicinity cheered and applauded as we marched by and later, passing cars honked their horns in support.

After twenty minutes or so, however, what had begun as a joyous, spirited protest took on a sour note. Ahead of us I saw about three people I did not know—and whose faces were covered with bandanas—knocking over newspaper vending machines. I also saw what appeared to be freshly sprayed paint on three buildings and a jeep. My friends and others near us yelled at those people to stop because such conduct was contrary to our purpose.

By this time at least one police car had started following slowly behind the march. Although the officer driving this vehicle did not communicate anything to the crowd, some of the marchers left the scene. My friends and I decided to get out of the road and move to the sidewalk, but we did not want to leave the march because we had not taken part in any misconduct. Soon a helicopter appeared overhead. We began to feel

confused by this turn of events, so we decided to leave the march and head to the nearest Metro station to make our way home; however, not being from the area, we did not know where we were or how to get to the Metro.

At this point we were still toward the front of the march, but we did not want to go back the way we had come because doing so would have put us in the crowd of marchers still behind us; instead, we followed a group that turned right onto a residential street and headed in a direction away from the commercial street where the march had been. We could see that there were no police along this street and all pedestrians were on the sidewalk. We turned right when this residential street ended at another main road.[2]

Within another minute or so, we encountered three police officers, one of whom told us to "turn the f*** around;" these were the first words I had heard the police speak that night. When I tried to explain to this officer that we were merely trying to exit the march, he raised his baton in a threatening gesture as if preparing to strike me. When he did this I felt terrified! All of us complied with his order; I was afraid and wanted to avoid any violence. Then, aiming their batons and pepper spray guns, the police herded us into an alley next to the "Grill From Impanema."[3] But these police never told us why we had to go into the alley or of any plan to detain or arrest us.

Once we were in the alley, the police started yelling, "Keep moving! Keep moving!" Not knowing what the police wanted us to do except to "keep moving," we attempted to exit through an adjoining alley, but found that other police had blocked off this route. When it became clear to me that the police had trapped us, I felt such shock because they never gave any order to disperse, and the vast majority of us—including my

---

[2] On information and belief, this road was Columbia Road.

[3] On information and belief, this restaurant is located at 1858 Columbia Road, NW.

friends and I—had not engaged in any wrongdoing. Soon the police rounded up and brought us to an area of the alley near a dumpster, where we joined a group of about sixty-five others. The police ordered all of us to kneel on the ice-packed ground with our hands on our heads. I remained in police custody for the next seven hours.

10. If you have ever been arrested, detained, convicted or adjudicated for the alleged commission of a felony, crime, offense, or misdemeanor (including juvenile offenses), state all the details of such incident (*e.g.*, the time, date and location of each such arrest or detention; the specific charges for which you were arrested or detained on each such occasion; the court action number and the particular court where the action was filed; the particular charges which were the subject of each such court action; and the disposition of each).

**Partial Objection**

Plaintiffs object to this request on the ground of unwarranted invasion of privacy to the extent that it seeks documents concerning any arrest that did not result in conviction of a crime that is punishable by death or imprisonment in excess of one year.

Plaintiff also objects to this interrogatory, to the same extent, on the ground that the information sought is not admissible at trial and cannot lead to the discovery of admissible evidence.

**Answer**

Without abandoning or waiving the objections stated above, I answer as follows:

I have no information not covered by the objections stated above. I incorporate by reference my answer to Interrogatory 8. The arrest at issue in this case is the only occasion on which I have been arrested.