**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
SARAH CARR, *et al.*,                              )
                                                   )
                           Plaintiffs,             )
                                                   )
              v.                                   )       Civ. A. No. 06-00098 (ESH)
                                                   )
DISTRICT OF COLUMBIA,                              )
                                                   )
                           Defendant.              )
_____)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO**
**PLAINTIFFS' OPPOSITION AND IN FURTHER SUPPORT OF DEFENDANT'S**
**CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

        Defendant, District of Columbia ("District"), by and through counsel, respectfully

submits this memorandum of points and authorities in reply to Plaintiffs' Reply In Support Of

Plaintiffs' Motion For Partial Summary Judgment On Liability And Opposition To Defendant's

Motion For Partial Summary Judgment ("Pls Opp.") and in support of Defendant District Of

Columbia's Cross-Motion For Partial Summary Judgment ("XMot").  As explained in greater

detail below, the XMot should be granted.

        Throughout their filings, plaintiffs have argued as if the requirements to convict, under

the Fifth and Sixth Amendments applied in this matter, instead of the Fourth Amendment's

probable cause standard.  Further, they have misinterpreted the applicable scienter requirement.

        Plaintiffs have not created a genuine issue of material fact regarding the XMot.  In fact,

they have expressly elected not to make any filing pursuant to LCvR 7(h).  Through this election,

plaintiffs have conceded the record on which the XMot is made.  Plaintiffs have also elected not

to address a number of the District's arguments in the XMot, thereby conceding those arguments

as well as the factual record, at the expense of their constitutional claims and their common law false arrest claims. Thus, the District should be granted summary judgment on these claims.

I.    **Probable Cause**

    A.    **The Applicable Standard Is Only Probable Cause, Not Proof Beyond A Reasonable Doubt**

Establishment of the existence of probable cause for an arrest is a dispositive defense to a false arrest claim. *See e.g., Scott v. District of Columbia*, 103 F.3d 748 (D.C. Cir. 1996). Throughout their opening and opposition briefs, plaintiffs have confused the requirements for a conviction, in accordance with the Fifth and Sixth Amendments, with the less demanding requirements for establishing probable cause under the Fourth Amendment.

In *Stacey v. Emery*, 97 U.S. 642, 645 (1925), the U.S. Supreme Court "defined probable cause as follows: 'If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient.'" *Carroll v. United States*, 267 U.S. 132, 162 (1925); *see also Bailey v. United States*, 389 F.2d 305, 309 (D.C. Cir. 1967) (quoting *Carroll*, 267 U.S. at 162) (Probable cause for arrest requires showing "that the police had enough information to 'warrant a man of reasonable caution in the belief' that a crime has been committed and that the person arrested has committed it.").

"[P]robable cause is a plastic concept depending on the particular circumstances; it is a concern with reasonable probabilities as seen by the officer and not by the court. Probable cause does not require proof beyond a reasonable doubt." *Arrington v. United States*, 311 A.2d 838, 839 (D.C. 1973)) (citing *Brinegar v. United States*, 338 U.S. 160, 179 (1949); *Patterson v. United States*, 301 A.2d 67 (1973); *Bailey v. United States*, 389 F.2d 305, 308 (D.C. Cir. 1967); and *Jackson v. United States*, 302 F.2d 194, 196 (1962). In ruling on the existence of probable cause, "a court is required to make a judgment whether the officer acted reasonably even if in

retrospect a court might deem another course of action, also reasonable, to have been

preferable." *Id.* (citing *Bailey v. United States*, 279 A.2d 508 (1971)).  The Court's analysis "is

very much like [its] review of an exercise of discretion. Even though [judges], sitting in the

relative calm of a court or library, may have concluded otherwise, [they] are bound to give

deference to the officer's decision if it was reasonable under the facts as viewed by him. *Id.*

While the District bears the burden on this motion of demonstrating probable cause for

plaintiffs' arrests, that burden is limited to showing that a reasonable police officer having the

information provided to then-Commander Lanier by her reliable subordinates, coupled with the

conduct she saw and heard, could have believed that there was probable cause to arrest the

persons she ordered arrested on January 20, 2005.

Plaintiffs assert that the District lacked probable cause to arrest them.  In doing so, they

ignore that the District has identified two separate offenses for which then-Commander Lanier

determined probable cause.  The simpler of the two is parading without a permit.  The record

contains the Field Arrest Forms for each of the five plaintiffs.  DC Exh.s 21-25.  The timely and

properly completed Field Arrest Forms establish probable cause for the arrest of the plaintiffs.

*See Sullivan v. Murphy*, 478 F.2d 938, 946, 959-60 (D.C. Cir. 1973); *see* XMot at 40.[1]

Moreover, the District's satisfaction of the scienter requirement of the parading without a permit

offense is explained in detail at 14-20.

### B.    Probable Cause Burden Shifting

Plaintiffs appear to contend that a mass arrest is invalidated in its entirety if a single

arrestee can demonstrate, even following forfeiture of his bond on the charge, that probable

---

[1]    The District has provided plaintiffs' counsel with Field Arrest forms for each of the
persons arrested.  The class members are potential claimants, whose interests are to be
represented by the plaintiffs.  Plaintiffs argue as though it is the absent class members who are
intended to provide the record upon which the fates of the five plaintiffs are to be determined.

cause was lacking for his particular arrest.  *See* Pls Opp at 7-9 (relying on *Barham v. Ramsey,*
424 F.3d 565 (D.C. Cir. 2006) and Magistrate Judge Facciola's Report and Recommendation in
*Alliance for Global Justice v. District of Columbia*, 01cv811 (PLF) (JMF) ("R&R")).  The *Carr*
record reflects evidence of probable cause supporting the arrests of each class representative, in
the forms of their timely and properly completed Field Arrest Forms, even without discussing
other distinguishing factual and legal factors (addressed *infra,* at 8-11) between *Barham* and
*Alliance* and this case.  DC Exhs. 21-25; *see Sullivan v. Murphy*, 478 F.2d 938, 946, 959-60
(D.C. Cir. 1973); *see* XMot at 40.  These Field Arrest Forms provide evidence "that the
particular individuals observed committing violations were the same people arrested," which the
*Barham* courts and Magistrate Judge Facciola found lacking in those two cases.  *See* Pls Opp at 8
(quoting R&R at 6, which in turn, quoted *Barham*, 424 F.3d at 574).

Further, plaintiffs ignore that D.C. Circuit precedent provides for burden shifting on the
proof of probable cause for arrest.[2]  Under plaintiffs' argument, the arrests of 500 individuals in a
mass arrest would be invalidated if a 501st person, for whom probable cause to arrest did not
exist, were to wander into the arrested mass or otherwise get caught up in the crowd of
individuals for whom probable cause did exist.  The D.C. Circuit has stated that circumstances
may permit the police to address a group of demonstrators as a unit in the context of a mass
arrest, but that "[w]e do not suggest of course that one who has violated no law may be arrested
for the offenses of those who have been violent or obstructive."  *Washington Mobilization*

---

[2]      As in Title VII cases, the ultimate burden of proof does not change.  However, the
burden-shifting approach allows the District to establish a *prima facie* showing of probable cause
for the arrest of everyone in a mass arrest.  Only if a plaintiff can rebut this showing is the
District required to produce as to the individual having rebutted the prima facie probable cause
showing.

*Committee v. Cullinane*, 566 F.2d 107, 120 (D.C. Cir. 1977).[3]  Clearly, the arrest in that context

of an individual who had violated no law would be unlawful.  *Cullinane*, however, does not

provide for the invalidation of the arrests of all or any other arrestees.  *See Cullinane*, generally,

*see also Sullivan v. Murphy*, 478 F.2d 938, 946, 959-60 (D.C. Cir. 1973) (providing in context of

MPD abandonment of its own mass arrest procedures that "any arrest that was not accompanied

by a contemporaneous Polaroid photograph and field arrest form executed by one who was in

fact the arresting officer" would be presumptively invalid, with "this presumption being *of*

*course subject to rebuttal* upon an affirmative showing by Defendants that any particular arrest

was based upon probable cause.").  Thus, Circuit precedent dictates that a mass arrest not be

invalidated *per se,* by a deficiency in the probable cause of a particular arrestee.

Rather, D.C. Circuit precedent contemplates a burden-shifting probable cause analysis.

The District meets its burden and establishes probable cause simply by producing the arrestee's

Field Arrest Form and contemporaneous Polaroid photograph.  *Sullivan*, 478 F.2d at 946, 959-

60.  That is exactly what occurred here.  If plaintiff controverts that probable cause showing, the

District is then entitled to rebut plaintiff's showing "upon an affirmative showing by Defendants

that any particular arrest was based upon probable cause."  *Id.* at 967.

---

[3]      The *Cullinane* Court preceded its observation that no one who had not committed an
offense could be lawfully arrested with the following statement:

> We think however the District Court's theory is unrealistic. It is the tenor of the
> demonstration as a whole that determines whether the police may intervene; and if
> it is substantially infected with violence or obstruction the police may act to
> control it as a unit."(W)here demonstrations turn violent, they lose their protected
> quality as expression under the First Amendment."  *Grayned v. City of Rockford,*
> 408 U.S. 104, 116 (1972) (footnote omitted). Confronted with a mob the police
> cannot be expected to single out individuals; they may deal with the crowd as a
> unit.408 U.S. 104 (1972) (footnote omitted).

*Cullinane*, 566 F.2d at 120.

Absent a situation like that in *Sullivan* – "in which the police did not govern themselves by their ordinary procedures, which are calculated to guard against an arrest without probable cause, even in the case of a massive civil disturbance [, a]nd the arrests that were made were the product of a common course of conduct by the police" -- probable cause as to all arrestees is established by the Field Arrest paperwork. *Sullivan*, 478 F.2d at 946, 959-60. For that reason, the District should be granted summary judgment based on plaintiffs' Field Arrest paperwork in the record. Further, absent a situation like that in *Sullivan*, "the issue of probable cause for an arrest is a highly individual matter, depending both upon the specific objective conduct of the particular arrestee at the time of his apprehension and upon the state of knowledge and reasonable belief of the arresting officer." *Sullivan*, at 966-67 (citing *Adams v. Williams*, 497 U.S. 143, 148-49 (1972)). Thus, plaintiffs' contention that the mass arrest can be invalidated *per se,* by a demonstration that one or more arrests were not properly supported by probable cause is contradicted by controlling precedent. Accordingly, the District should be granted summary judgment on plaintiffs' First and Fourth Amendment claims and their false arrest claims.

## II. Probable Cause May Be Established In the Absence of Warnings or Orders to Disperse, as in This Case

Plaintiffs contend that "[b]ecause the police gave no order or warning, they had no evidence that each individual arrested actually knew that permission had not been granted [for them to parade as they did]." Pls Opp at 28 (citing *United States v. Sheehan,* 512 F.3d 621, 631 (D.C. Cir. 2008)). In fact, examination of *Sheehan* and the other cases cited by plaintiffs demonstrates that probable cause could be and was established for plaintiffs' arrests under the circumstances.

### A. *Sheehan* and *City of Dearborn*

Cindy Sheehan was arrested for having demonstrated on the White House sidewalk

without a permit, in alleged violation of 36 C.F.R. § 7.96(g)(2).  512 F.3d at 624.  In appealing

her conviction on that charge, Sheehan argued that the regulation was unconstitutional because it

did not contain an express *mens rea* requirement.  *Id.* at 629.  The D.C. Circuit did not overturn

her conviction in response to this facial challenge to the regulation.  *Id.* at 630.  Rather, the Court

distinguished Sheehan's circumstances from another case cited by plaintiffs, *American-Arab*

*Anti-Discrimination Committee v. City of Dearborn*, 418 F.3d 600 (6th Cir. 2006).

     In *Dearborn,* the Sixth Circuit reversed a conviction for parading without a permit in

response to a facial challenge of the pertinent statute because the City of Dearborn had argued

that its statute was to be applied to impose strict criminal liability.  The Sixth Circuit held the

statute to be unconstitutional because it imposed strict liability for parading without a permit and

thereby impermissibly chilled the exercise of First Amendment rights without a knowledge

requirement.  *Dearborn*, 418 F.3d at 610-13.  In *Sheehan*, the Government conceded that its

regulation had to contain a *mens rea* requirement to meet constitutional requirements. *Id.; see*

*also United States v. Sheehan*, Slip op., 2006 WL 3756349 at *7 (D.D.C.).  Moreover, the

Government introduced evidence that it had warned Sheehan that she lacked a permit and her

protest was, therefore, unlawful.  512 F.3d at 625-26.

     However, the D.C. Circuit reversed the trial court in part and remanded the *Sheehan*

matter for a new trial because trial court had applied the regulation *as though* it were a strict

liability provision and had precluded Sheehan from testifying about her knowledge and intent at

the time of her arrest.  *Id.* at 633.  By doing so, the trial court had denied Sheehan due process by

eliminating part of the prosecution's burden to establish each of the elements of the offense and

denying Sheehan the opportunity to present a complete defense.  *Id.* at 631.

     *Sheehan* does not preclude a government from producing evidence of an unpermitted

demonstrator's culpable *mens rea* in the absence of a warning or an order to disperse. It states

no limitations on the proof that may be used to establish the culpable *mens rea*.

Plaintiffs argue that, "[i]n deciding whether to join a street march, persons have no duty

to assess circumstances and draw inferences about whether police have granted permission." Pls

Opp/Reply at 29 (citing *Dearborn*, 418 F.3d at 611-12). Plaintiffs misconstrue *Dearborn*.

*Dearborn* observes that under a strict liability law – as was the case in *Dearborn* – even a

demonstrator's good faith belief that his/her conduct was lawful, afforded the demonstrator no

protection from conviction. 418 F.3d at 611-12 ("A good faith belief is no excuse, and thus the

potential protestor cannot rely upon the assurances of participants in the march."). A good faith

belief would be a reasonably held, subjective understanding of the circumstances. *Cf. Wood v.

Strickland,* 420 U.S. 308, 322 (1975). Such a belief would require some basis or cause, such as a

plausible representation that a permit had been obtained. *Id.*

By the same token, a police officer's probable cause assessment is informed by the

circumstances. *Dearborn* and *Sheehan* still allow for a police official to base her probable cause

determination on the presence of circumstances that reflect to her that the reasonable person

would be likely to recognize that the event was not proceeding with the municipality's

authorization, as circumstances did in this case.

> **B.**    **The *Alliance for Global Justice* Report and Recommendation**

Plaintiffs further rely on the February 28, 2008 Report and Recommendation ("R&R") of

Magistrate Judge Facciola in *Alliance for Global Justice v. District of Columbia*, 01cv811 (PLF)

(JMF).[4] Plaintiffs argue that in *Alliance*, "the District presented evidence that police had given

demonstrators warning orders and had afforded them the opportunity to comply; but, as

---

[4]    The time for the District, Charles Ramsey and Terrance Gainer to appeal/object to that
Report and Recommendation is stayed pending mediation in that matter.

Magistrate Judge Facciola found, "no evidence showed that each person arrested had heard the order." Pls Opp at 28. Plaintiffs mischaracterize the R&R.

Magistrate Judge Facciola did not base his recommendation on a finding that there was no evidence that all arrestees heard the warnings." *See* R&R at 6. Rather, His Honor ruled that a combination of factors "made it impossible for [MPD then-Lt.] Herold to reasonably suspect 'that all of the occupants of the area of the arrests] were then breaking the law[,] that they had broken the law before entering ' that area . . . or that his 'notice was reasonably likely to have reached all of the crowd despite any noise the demonstrators may have been making." R&R at 6 (citing *Dellums v. Powell*, 566 F.2d 167, 181-82 n.31 (D.C. Cir. 1977)).[5]

Thus, the R&R identifies three distinct bases on which probable cause for the mass arrest of the *Alliance* could have been predicated. R&R at 6 (citing *Dellums, supra*). Herold could have "reasonably suspect[ed] 'that all of the occupants [of the area of the arrests were then breaking the law [at the time of their arrest,] that they had broken the law before entering' that area, *id.* at 156, or that his "notice [was] reasonably likely to have reached all of the crowd

---

[5]    This ruling is noteworthy for several reasons. First, the record does not reflect the decibel level of the amplified warnings that were repeatedly issued over the public address system of Herold's MPD cruiser, or the decibel level of "any noise the demonstrators may have been making." Moreover, in ruling adversely to the District, Magistrate Judge Facciola ignored the possibility of any material facts affecting his conclusion despite the declaration testimony of Herold in opposition to the *Alliance* plaintiffs' motion. Herold testified that "[b]ased on [Herold's] experience in using such equipment and in dealing with large demonstrations, [Herold] believed that [his] warnings and orders were audible and understandable at least to all of the persons who eventually entered the area on 20th Street, N.W. between K and I Streets, N.W. in which they came to be cordoned and arrested. They were intended and reasonably calculated to be audible to all those marchers." Declaration of Jeffrey Herold, executed September 24, 2007 at ¶ 11; *see also* ¶ 9.

Plaintiffs also cite Judge Friedman's March 3, 2008 *Alliance* Memorandum Opinion and Order ("Mar. 3 Mem"), which speaks of "a theory of 'group' probable cause" in reference to the "May Day" arrests of 1971. Pls Opp at 18. Judge Friedman's observation is based on "[r]eading the facts as described by Magistrate Judge Facciola" – a recitation of facts, and the dismissal thereof, discussed *infra*. Judge Friedman had not performed his review of the R&R at the time the cited Mar.3 Mem was issued.

despite any noise the demonstrators may have been making." R&R at 6 (citing *Dellums, supra*).

Clearly, probable cause based on the conduct committed in Herold's presence could have been

established on any of these three distinct bases. Accordingly, the R&R, which relies on *Dellums*,

flatly contradicts plaintiffs' argument that warnings and an opportunity to comply were required

to establish probable cause for their arrest. *See* R&R at 6 (citing *Dellums, supra*).

###### C.    *Barham*

Next, plaintiffs argue that the D.C. Circuit's holding in *Barham v. Ramsey*, 424 F.3d 565,

575 (D.C. Cir. 2006), defeats the District's argument that on the facts of *this* case, probable cause

could be established without providing a warning and an opportunity to disperse. Pls Opp at 28.

Probable cause is determined on the totality of the circumstances available to the officer. *Gates,*

462 U.S. at 232; *Doe v. Metropolitan Police Department of the District of Columbia,* 445 F.3d

460, 468 (D.C. Cir. 2006) (citing *United States v. Kayode*, 254 F.3d 204, 209) ("Whether

probable cause exists is determined by looking at all of the facts and circumstances at the time of

the arrest, including the knowledge and experience of the arresting officer.").

In *Barham*, Assistant Chief Newsham based his decision to arrest everyone in Pershing

Park on his belief that everyone in the park had committed an offense before she or he entered

the Park. 434 F.3d at 574. He based that belief on reports from other officers that persons had

been observed committing offenses and his belief that they were coming into and congregating in

the park, along with his own observations of offenses committed outside the park. *Id.* at 573.

However, he was unable to identify specific violations to specific individuals in the park. *Id.* at

575. In addition, persons were free to exit, and more importantly, enter the park after he had

decided to arrest everyone in the park. *Barham*, 434 F.3d at 574.

In this case, Lanier had probable cause to arrest for parading without a permit based on

her observations and those of officers riding with her, as well as reports from her undercover and plain clothes personnel, who reported information reflecting that the marchers knew or were deliberately blind to the fact that the march was unpermitted.  DSOF ¶¶ 1-15, 17, 19, 24-25, 27-28, 31, 50, 52; 57-63, 77, 79.  Plaintiffs do not dispute that they all marched in the public roadway along with 25 or more others without a permit.  They committed the offense of parading without a permit as observed by Lanier and a number of MPD officers.  Any of the officers who cordoned off 18th Street observed as much.  Accordingly, the *Alliance* R&R supports the District's probable cause analysis by confirming that the plaintiffs' arrests can be properly justified in the absence of warnings.  *Barham* is distinguishable because plaintiffs' arrests here are supported by particularized probable cause.

## III. Arresting for Parading Without A Permit, Although Contrary to District Policy, Comports With the Fourth Amendment

When an officer has probable cause to believe a person has committed even a minor crime in his presence, the arrest is constitutionally reasonable, even if that minor crime "is not an arrestable offense" according to local law enforcement practices.  *Virginia v. Moore*, --- U.S. ---, 2008 WL 1805745, Slip op. at 4-5 (Apr. 23 2008) (citing *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Gerstein v. Pugh*, 420 U..S. 103, 111 (1975); *Brinegar v. United States*, 338 U.S. 160, 174, 175-176 (1949); *and Wren v. United States*, 517 U.S. 806, 815 (police officers acted reasonably in stopping car, even though their action violated an MPD General Order limiting the authority of plainclothes officers in unmarked vehicles; "Fourth Amendment protections are not 'so variable'" as to be defined by local procedures "and cannot 'be made to turn upon such *trivialities*.'") (emphasis added).

In *Virginia v. Moore, supra*, the U.S. Supreme Court held that the warrantless search of an automobile incident to the driver's arrest was constitutionally reasonable where the arrest for

driving with a suspended license was supported by probable cause -- even though Virginia state law required the officers to issue the driver a citation, rather than arrest him, for that offense. Two Portsmouth, Virginia police officers heard over their police radio that a person known as "Chubbs" was driving with a suspended license. *Moore,* Slip op. at 2. One of the officers knew David Lee Moore as "Chubbs." They pulled Moore over and confirmed that his license was suspended. Driving with a suspended license is a misdemeanor in Virginia. Va. Code Ann. §§ 18.2-11, 18.2-272, 46.2-301(C). *Id.* They arrested Moore for the misdemeanor. *Id.*

However, under Virginia state law, driving with a suspended license is not an arrestable offense absent aggravating circumstances not present in Moore's case. *Id.* Rather, Virginia state law dictated that Moore be issued a citation rather than arrested under the circumstances. *Id.*

Nevertheless, having arrested Moore, the officers conducted a search of his car incident to the arrest. The officers found 16 grams of crack cocaine and $516 in cash in the car. *Id.* Accordingly, Moore was charged with possessing cocaine with the intent to distribute it, in violation of Virginia law. Slip op at 2.

Moore filed a pretrial motion to suppress the evidence collected in the post-arrest search, arguing that the search violated his Fourth Amendment rights. *Id.* The trial court denied Moore's motion, and he was convicted of the drug charge and sentenced. *Id.* An intermediate Virginia appellate court reversed the trial court, but the intermediate appellate court, sitting *en banc,* reversed the panel and reinstated the conviction. *Id.* Reasoning that the arresting officers should have issued Moore a citation instead of arresting him, and that the Fourth Amendment does not permit a search incident to citation, the Virginia Supreme Court held that the search violated the Fourth Amendment. The Virginia Supreme Court reversed Moore's conviction.

The U.S. Supreme Court reversed the Virginia Supreme Court's judgment. The Court

discussed cases in which it had held that state laws providing greater protections against police searches and seizures than does the U.S. Constitution do not invalidate challenged searches under the Fourth Amendment.  *Moore* Slip op. at 4-5 (discussing *Cooper v. California*, 386 U.S. 58 (1967) and *California v. Greenwood*, 486 U.S. 35 (1988)). The Court explained that, "[w]hile [i]ndividual states may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution, state law did not alert the contours of the Fourth Amendment."  *Moore* Slip op. at 5 (internal quotes and citation omitted).

Further, the U.S. Supreme Court stated, "[w]e thought it obvious that the Fourth Amendment's meaning did not change with local law enforcement practices – even practices set by rule," when the Court held in *Whren* that police officers had acted reasonably in stopping a car even though the officers violated regulations limiting the authority of plainclothes officers in unmarked cars in doing so.  *Id.*  Finally, the Court "conclude[d] that warrantless arrests for crimes committed in the presence of an arresting officers are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state regulations do not alter the Fourth Amendment's protections."  *Id.* at 8.

Against the body of precedent cited in *Moore,* plaintiffs argue that their arrests for parading without a permit were prohibited by District policy.  However, *Moore* emphasizes that which the U.S. Supreme Court had believed to have been "obvious" as of its 1998 *Whren* decision: local policies and enforcement restrictions do not implicate the Fourth Amendment reasonableness of an arrest.  *Moore*, at 5, 8.  Plaintiffs' arrest, like the MPD action in *Whren,* complied with the Fourth Amendment.

Plaintiffs next argue that, "*If* plaintiffs could not be arrested for parading without a permit *and* if there was no probable cause to arrest plaintiffs for rioting or conspiracy to riot, then arrest

of plaintiffs was unreasonable." Pls Opp at 32 (emphases added). Plaintiffs' claims in this case

turn on whether their arrests were justified by probable cause, not whether they could be arrested

for parading without a permit under MPD policy. *Moore* underscores what *Whren* had held –

constitutional reasonableness is determined by compliance with the Fourth Amendment, not

police agency policy. *Moore* at 5, 8; *Whren,* 517 U.S. at 816. *Moore* and *Whren* dictate that

plaintiffs *could* be validly arrested for parading without a permit. For this reason, the arrest of

plaintiffs was constitutionally reasonable. *Moore* at 5, 8; *Whren,* 517 U.S. at 816. Accordingly,

the District is entitled to judgment as a matter of law on plaintiffs' Fourth Amendment and false

arrest claims, and thus, on their First Amendment claims based thereon.

**IV.  Lanier Had Probable Cause To Arrest Plaintiffs for Knowingly Unlawfully Parading**

Plaintiffs contend that their arrests for parading without a permit were unlawful because

they were not supported by probable cause to believe that plaintiffs had acted with the required

scienter. Pls Opp at 28. "Absent an order to disperse or an order informing plaintiffs that they

lacked permission to demonstrate, it was impossible for the police to know that *any*

demonstrator, let alone *each* and *every* demonstrator, actually knew that she or he lacked

permission to demonstrate." *Id.*  (emphasis in original).

In fact, the Fourth Amendment does not require a police officer to *know* the mental state

of an individual engaged in what appears to be criminal conduct in order for the officer to have

probable cause to arrest. *See, e.g., Gates*, 462 U.S. at 231 (quoting *Brinegar v. United States*,

338 U.S. 160, 175 )1049) ("In dealing with probable cause, as the very name applies, we deal

with probabilities."); *Arrington v. United States*, 311 A.2d 838, 839 (D.C. 1973) (probable cause

"is a concern with reasonable probabilities as seen by the officer"); *see also Smith v. California*,

361 U.S. 147, 154 (1959) ("knowledge" scienter requirement, even in case of criminal statute

14

raising spectre of burdening fundamental right, may be demonstrated for purposes of conviction

by circumstantial evidence of defendant's knowledge, even "despite his denial").  The Fourth

Amendment is satisfied when the totality of the circumstances known to the officer implicate

probabilities – not hard certainties – that are "sufficient to warrant a prudent man in believing

that [a specific individual or individuals] had committed or was committing  an offense." *Gates*,

462 U.S. at 232; *Doe v. Metropolitan Police Department of the District of Columbia*, 445 F.3d

460, 468 (D.C. Cir. 2006) (citing *United States v. Kayode*, 254 F.3d 204, 209 (D.C. Cir. 2001),

*cert. denied,* 534 U.S. 1147 (2002);  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  Moreover, the

evidence and circumstances considered in the probable cause determination "must be seen and

weighed not in terms of library analysis by scholars, but as understood by those versed in the

field of law enforcement."  *Gates*, 462 U.S. at 232.  The Court is "bound to give deference to the

officer's decision if it was reasonable under the facts as viewed by him."  *Arrington*, 311 A.2d at

839.  An arrest is reasonable for Fourth Amendment purposes "even if, in retrospect a court

might deem another course of action, also reasonable, to have been preferable," *id.*, and even

where the U.S Supreme Court "specifically noted the 'extremely poor judgment' displayed" by

the officer in choosing to arrest an individual instead of other options, *Moore*, Slip op. at 7

(citing and, in part, quoting, *Atwater*, 532 U.S. at 346-47).[6]

A.     **"Knowledge"**

Plaintiffs argue, and the District does not dispute, that the Constitution requires that the

Court read a scienter element into the District's regulations prohibiting parading without a

permit.  *See* Pls Opp at 29-30 (citing *Sheehan,* 512 F.3d 621; *Dearborn*, supra.) F.3d 600).

Plaintiffs further argue, and the District agrees, that the necessary *mens rea* is "knowingly."

---

[6]     Even to support a conviction, "[t]he prosecution need not negate every possible inference
of innocence." *Ford v. United States,* 498 A.2d 1135, 1137 (D.C. 1985).

However, proof that one acted with *actual* knowledge is not necessary to convict, much less to establish probable cause to arrest an individual for having "knowingly" engaged in criminal misconduct even where the criminal statute is argued to burden a fundamental right. *See Ginsburg v. State of New York,* 390 U.S. 629, 643-44 (1968).  In *Ginsburg,* the U.S. Supreme Court affirmed the conviction of the operator of a store for having sold magazines to a minor, in violation of a New York State obscenity statute.  The U.S. Supreme Court observed of the New York statute, that, "[a]s required by *Smith v. People of State of California,* 361 U.S. 147, § 484-h {NY Statute] prohibits only those sales made 'knowingly.'"  390 U.S. at 643.  "The challenge to the scienter requirement of the [New York statute] center[ed] on the definition of 'knowingly' insofar as it includes 'reason to know' or 'a belief or ground for belief which warrants further inspection or inquiry . . . ."  *Id.*   The *Ginsberg* Court held that scienter requirement to pass constitutional muster in accordance with *Smith v. California.  Id.* at 644.

The D.C. Circuit has observed that a criminal statute's "knowingly" scienter  requirement may be satisfied by "deliberate blindness," "deliberate ignorance," "deliberate indifference," "conscious avoidance," "criminal negligence," or "ostrich" behavior. *United States v. Alston-Graves*, 435 F.3d 331, 337-42 (D.C. Cir. 2006) (discussing applicability of jury charges for crimes having "knowingly" scienter elements, and observing their use in all other circuits)[7]; *see*

---

[7]     *See also Huffman v. United States*, 470 F.3d 386, 403 (D.C. Cir. 1971)  (citing *Smith v. California*, 361 U.S. at 154) ("The Government is not required to meet the impossible burden of showing subjective or detailed knowledge of contents" of obscene materials to be convicted under D.C. obscenity statute for "knowingly" possessing obscene materials for sale.)  In affirming the conviction of defendants for violation of D.C. obscenity statute, the D.C. Circuit explained that the statute imposed criminal sanctions only against those who "knowingly" possess obscene materials for sale, and defined "knowingly" "as meaning 'having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry, of the character and content' of the publication involved."  The Circuit observed that "[t]he definition avoids the vice of the liability without fault condemned in *Smith v. California, supra*."  *Id.* Accordingly, actual knowledge is not required in this Circuit to satisfy

*also* "Model Penal Code Section 2.02(7) And Willful Blindness," 102 Yale L.J.2231, 2257

(1993) ("All the federal circuits have employed willful blindness doctrines.") (citing, among

others cases, United States v. Jack. 890 F.2d 1250 (D.C. Cir. 1989) (unpublished disposition) No.

88-3137, 1989 U.S. App. LEXIS 17927, at *8).

### B.    Deliberate Blindness

That a municipality cannot impose strict criminal liability upon a person for unknowingly

participating in an unpermitted demonstration in public roadways does not relieve demonstrators

of taking reasonable measures to comply with lawful time, place, and manner regulations in the

form of permitting requirements. *See, e.g., Ward v. Rock Against Racism,* 491 U.S. 781 (1989).

On the contrary, in assessing whether the *Sheehan* trial court's error could be viewed as

harmless error, the D.C. Circuit noted that the Government raised Sheehan's testimony that she

"didn't know that [she] needed a permit." *Sheehan*, 512 F.3d at 632. This is because ignorance

of the law is not a defense under these circumstances. *Bryan v. United States*, 524 U.S. 184, 193

n.14 (1998). Rather, a demonstrator's ignorance of the requirement would eliminate the

possibility of that demonstrator's defense of "a reasonable, good faith-but mistaken-belief that a

permit in fact exists." *Sheehan,* at 629, 632; *Dearborn*, 418 F.3d at 612 (strict liability ordinance

offends First Amendment because it "would hold any participant liable for its violation, even in

cases where the participant was mistakenly advised that a permit was issued."). However,

plaintiffs have not cited and Defendant has not found any precedent holding that a

demonstrator's ignorance of the law excuses her. This situation provides no exception to the

general rule that ignorance of the law is no defense. Such an exception, in light of the

constitutional necessity of a scienter requirement in permitting statutes and regulations would

---

the "knowingly" scienter requirement of a criminal statute imposing the same risk of burdening a
fundamental right posed by the statue at issue in *Smith*.

virtually render meaningless U.S. Supreme Court precedent allowing reasonable time, place, and manner restrictions on demonstrations, such as those upheld in *Ward.*

On the contrary, that plaintiffs failed to inform themselves of the legal requirements applicable to their conduct is consistent with the "deliberate blindness" or "deliberate ignorance" *mens rea* that courts in all of the circuits have applied to satisfy the "knowingly" scienter of criminal offenses. *See United States v. Alston-Graves*, 435 F.3d 331, 337-42 (D.C. Cir. 2006) (discussing applicability of jury charges for crimes having "knowingly" scienter elements, and observing their use in all other circuits); *see also* Model Penal Code Section 2.02(7) And Willful Blindness," 102 Yale L.J.2231, 2257 (1993) ("All the federal circuits have employed willful blindness doctrines."). Allyson Kirk testified in deposition that she and her sister acted in ignorance of the permitting requirements. DSOF ¶ 119 and Exh.18 cited therein at 180:17-21.

## C.    Scienter Evidence

It follows that an objectively reasonable police officer would understand that the scienter requirement of the parading regulations was satisfied by plaintiffs' willful blindness or deliberate indifference to the information available to them that would have informed the reasonable person that the announced march was to proceed without a permit.[8]  Accordingly, "the facts and

---

[8]    Moreover, even if this Court were to determine now that the willful blindness analysis does not apply to plaintiffs' actions, the officer's determination of probable cause based on his/her understanding that deliberate ignorance satisfied the scienter requirement would satisfy the Fourth Amendment because the "knowingly" requirement of criminal statues was defined or judicially interpreted to be satisfied on such bases. *See, e.g., Lakin v. United States,* 363 A.2d 990, 998 (D.C. 1976) (obscenity statute, D.C. Code Section 22-2001(a) defining "knowingly" as "having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of . . . ."); *cf. Freeman United Coal Mining Co. v. Federal Mine Safety and Health Review Commission,* 108 F.3d 358, 364  (D.C. Cir. 1997) ("'Knowingly' may convey any of a number of meanings. This court has found the term 'knowingly' to include 'actual knowledge,' 'deliberate ignorance,' and 'reckless disregard.'"  . . . "Given the range of meanings ascribed to the statutory term "knowingly" in these varied contexts, we cannot

circumstances at the time of the arrest, including the knowledge and experience of the arresting

officer" were "sufficient to warrant a prudent [woman] in believing that the [plaintiffs] had

committed or w[ere] committing" the offense of parading without a permit with a culpable *mens*

*rea.  See Doe v. MPD*, 445 F.3d at 368. (citing  *Kayode,* 254 F.3d at 209, *cert. denied,* 534 U.S.

1147 (2002); *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *United Sates v. Sheehan,* 2006 WL 3753649

at 8 (D.D.C. 2006), *aff'd in part, rev'd in part, and remanded by* 512 F.3d 621 (D.C. Cir. 2008).

Facts and circumstances that should have informed plaintiffs that their march lacked the

required permit or proceeded in a manner violating terms of any reasonable permit included:

- As reflected in both the Brandon Jourdan and Barry Student videos, the march was at all times conducted along public roadways which had not between closed to vehicular traffic by the police.  Nor did the police provide an escort at the front of the march, which marchers should reasonably have understood would have been arranged for a permitted march at night along public roadway – particularly in an area such as Adams Morgan;

- The march had not been publicized on the internet, as the Anti-Inaugural Concert had been and other protest-related events had been and commonly were, from which plaintiffs could reasonably have understood that information necessary to obtain a permit had also not been shared with the police to obtain a permit;

- The District has noise regulations specific to residential areas and nighttime hours, and even non-residents are accountable for knowledge of these regulations;

- The Flyer advised plaintiffs that the march would include loud drumming and chanting through a residential area late at night, and the march did, in fact, include loud drumming and chanting through a residential area late at night, notwithstanding reasonable expectations of residents that their night not be so disturbed, and the District's noise regulations, which reasonably indicated that the police had not authorized the conduct;

- The marchers blocked or impeded all lanes of traffic along their route without benefit of road closures or police escort; and

- Numerous marchers carried flaming torches aloft, which by their design allowed them to be used as dangerous weapons capable of propelling flaming substances.

These factors provided plaintiffs sufficient information for them to have realized that their

conclude . . . that the language of section 110(c) unambiguously requires a showing of actual
knowledge . . . .").

march was proceeding without a legally required permit.  Their perceptible deliberate ignorance, indifference, and/or blindness to the implications of these factors – that they were marching without a permit – provided probable cause to satisfy the scienter requirement. See *United States v. Alston-Graves*, 435 F.3d at 337-42.  Accordingly, the District should be granted summary judgment on plaintiffs' First and Fourth Amendment claims and their false arrest claims.

## V.    Probable Cause to Arrest for Rioting

Plaintiffs have defended their "rights" to continue participating in an unpermitted march that even they concede was at least punctuated, if not characterized in its later stages, by acts of violence and property damage that they observed from close proximity.  They further argue that in the context of their participation in the raucous crowd they could not be subject to "group probable cause."  However, they acknowledged that they proceeded along the route that Lanier and her subordinates observed to be the route of the rioters they personally observed engaged in the unlawfully violent and tumultuous conduct by an assemblage of five or more that District law defines as rioting.  *See* D.C. Official Code § 22-1322.

Plaintiffs ignore that rioting is, by definition, a group offense.  While a single person may participate as a rioter, no individual can engage in rioting other than as a member of a group – the assemblage.  Plaintiffs ignore, further, that the D.C. Circuit has held that if "the tenor of the demonstration as a whole . . .  is substantially infected with violence or obstruction," the police "cannot be expected to single out individuals" and "may act to control it as a unit" *Cullinane*, 566 F.2d at 120.[9]  Further, plaintiffs disregard that probable cause "is a concern with reasonable

---

[9]    Plaintiffs contend that the District has misstated Carr's proximity to Lanier's Cruiser 18 and that Carr was close to the front of the march.  Pls Opp at 11.  Carr's testimony reflects that Carr was close to the rear of the march when Lanier and Keller were making their pertinent observations.  *See* DC Attachment C (Excerpt of Deposition of Sarah Carr taken July 16, 2007 at 109:109:8-110:17).  Carr's cited testimony reflects that she had observed, while still marching,

probabilities *as seen by the officer* and not by the court" – or perceived offender. *Arrington v. United States*, 311 A.2d at 839 (citations omitted). Additionally, the arrestees were between Lanier and the police lines that contained them and were observed by Lanier, the officers with her, and the officers in the police line. Accordingly, plaintiffs were properly arrested based on probable cause for their personal actions in the group actions of the unlawful march and the riot.

## VI. Plaintiffs' Flawed Arguments and Concessions Are Fatal to Their First Amendment Claim, as well as Their Fourth Amendment and False Arrest Claims

In Pls Opp at 27 n26, plaintiffs initially suggested that their arrest could not have been valid because it was not preceded by a warning. Pls Mot at 9-24. However, the attorneys for these plaintiffs, while representing the *Abbate* plaintiffs, expressly agreed to the provision of the MPD Mass Demonstration SOP's that provided for the arrest of an assembly of persons without warning. *Abbate*, 355 F. Supp.2d at 381-82, 383. It states:

> The arrest of an assembly of persons lacking a parade permit may only occur after an order to disperse has been clearly communicated three times in a manner that is reasonably calculated to be heard by each of the persons in the group and after reasonable opportunity to disperse has been afforded, *to the extent that circumstances reasonably permit, without increasing the risk of injury to persons or property through the actions of a substantial number of the assembly of persons*.

*Id.* (emphasis added). The italicized language indicates that the official in command has the discretion to determine whether a warning is required under the circumstances.

Plaintiffs have abandoned their earlier argument that raised the issue of "whether the First

---

that a police car had started following slowly behind the march; and that from her observation of the car and its occupants, that she didn't "think the police -- the person in the police car knew crimes were being committed at that point, because they weren't taking any actions." This testimony reflects that Carr was watching Lanier's cruiser at the time of the crimes and accordingly, Lanier was able to observe Carr at the same time. This testimony demonstrates that Carr was, in fact, "near the rear and closest to Cruiser 18" and simultaneously able to observe crimes being committed. *See* Pls Opp at 11. The District provides Attachment C simply to respond to plaintiffs' assertion that the District "misstates the location of plaintiff Carr." Carr's sworn testimony reflects that it is Pls Opp which misstates Carr's position.

Amendment allows a policy that generally precludes arrest without warning for parading without a permission but has unstated exceptions of which the public has no notice." Pls Opp. at 31 n.30. By abandoning the argument, plaintiffs conceded that the District's "policy" reflected in the MPD Handbook provision approved by their attorneys is as the District argues: constitutionally valid. The District is entitled to summary judgment on plaintiffs' First Amendment, Fourth Amendment, and common law false arrest claims based on this recognition of the validity of the provision and enforcement action it provides for.

Further, plaintiffs argue in this same section of Pls Opp, at 31fn. 30, that "Defendant's admission that arrest for parading without a permit was without exception, prohibited, renders moot the question whether the First Amendment allows a policy that generally precludes arrest without warning for parading without permission but has unstated exceptions of which the public has no notice." (Emphasis in original). This assertion contains three flaws and defeats plaintiffs' First Amendment claims.

First, the sentence mischaracterizes MPD policy and Chief Lanier's testimony. MPD policy did not prohibit arrest for parading without a permit without exception. *See* DSOF ¶¶ 91-102. No one has "admitted" that MPD policy did so. MPD policy does not permit – in plaintiffs' language, "prohibits" -- arrest where the involved persons are simply parading without a permit. Persons who paraded without a permit and engaged in additional misconduct or endangerment to public safety – as in this case - could be arrested for parading without a permit under District policy in effect as of September 2004 through January 20, 2005. *Id.*

Second, as *Wren* had made "obvious," and *Moore* has now reiterated, departmental polices – including prohibitions on enforcement by arrest -- do not inform Fourth Amendment reasonableness analyses.

Third, plaintiffs tacitly acknowledge the District's argument (at XMot pp. 34-39) that the MPD's policy provides that arrests for parading without a permit may be made without issuing warnings and affording a reasonable opportunity to disperse where circumstances do not reasonably permit them without increasing the risk of injury to persons or property through the actions of a substantial number of the assembly of persons.  DSOF ¶¶ 86, 87, 89-102, XMot at 34-39.  Rather than respond substantively to that argument, plaintiffs declare the issue moot because MPD policy "prohibited arresting for parading without a permit."  Pls Opp at 31.  *Wren* and *Moore* dictate the issue of whether such arrests are constitutionally reasonable and this analysis is not rendered moot by MPD policy.  Therefore, in electing not to respond to the District's argument, plaintiffs have conceded the point. *See United States v. Real Property Identified As Parcel 03179-005R*, 287 F. Supp.2d 45, 61 (D.D.C. 2003); *Robinson v. The Detroit News*, 211 F. Supp.2d 101, 107 (D.D.C. 2002).  For this reason, the District should be granted summary judgment on plaintiffs' First Amendment claims as well.

## VII.    Plaintiffs' Improper Filings

In opposition to the XMot or in reply to the District's opposition to Plaintiffs' Motion for Partial Summary Judgment on Liability, plaintiffs have filed Plaintiffs' Response To Defendant's Statement Of Facts ("DSOF Resp"), and Plaintiffs' Response To Defendant's Statement of Issues ("DSOI Resp"), and seven exhibits (respectively, "Plaintiffs' Motion For Partial Summary Judgment On Liability Exhibit[s]"  ["Pls SJMX"] Q-W).

The DSOF Resp does not factually dispute any assertion of fact contained in Defendants' Statement of Material Facts As To Which It Contends There Are No Genuine Issues ("DSOF").  *See* DSOF Resp. ¶¶ 1-123; *see also* Pls Opp at 1 n.1 (stating that the "opposition does not include a statement of genuine issues requiring trial because we maintain that trial of liability is

not necessary.")  In fact, the DSOF Resp cites evidence of record only in its ¶¶ 116 (including a new plaintiffs' exhibit offered in support of Chelsea Kirk's common law assault and battery claims) and 121 (a new exhibit in support of Matthew Singer's First and Fourth Amendment and false arrest claims).  Accordingly, the DSOF Resp is not a "concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated" under LCvR 7(h).  Rather, it is a lengthy argument entirely unsupported by citation to authority and almost equally unsupported by "references to the parts of the record relied upon to support the statement."  *See* LCvR 7(h).  Accordingly, DSOF Resp should be stricken from the record, if not entirely, as to its ¶¶ 1-115, 117-120; 122-123.[10]

Nor is DSOI Resp a filing provided for by the rules of this Court.  In this seven-page document, plaintiffs persistently argue that the issues raised by the District through its properly supported statement of issues necessitating trial pursuant to LCvR 7(h) are irrelevant.  These arguments are unsupported by any citations to authority.  DSOI Resp does not contain any citations to exhibits to support its arguments.  Several of these arguments seek to exclude consideration of evidence submitted by the District to respond to arguments raised in plaintiffs' motion.  *See* DSOI Resp. ¶¶ 5, 6, 10, 12.  DSOI Resp is a mini-brief without citations to authority or the record, and should be excluded.  *See* LCvR 7(h).

Plaintiffs' introduction of seven new exhibits ostensibly supplements the record in support of plaintiffs' motion for partial summary judgment.  Implicit in this alteration of the

---

[10]    Pls SJMX S and T appear intended to support Chelsea Kirk's common law claims against Defendant's Exhibit 10, the Topper Declaration.  Accordingly, Chelsea Kirk's common law claims turn on a genuinely disputed issue of material fact.  Ms. Kirk should be denied summary judgment on that claim.  Similarly, Pls SJMX V appears intended to alter the record upon which Mr. Singer's First and Fourth Amendment claims and his false arrest claim is based.  To the extent that it is material, as presumably plaintiffs intend it to be, it bars summary judgment for Singer on these claims.

record is the concession that the record informed by Defendant's exhibits does not entitle plaintiffs to judgment as a matter of law. By so seeking to create a more plaintiff-favorable record for their motion on which the District is entitled to all reasonable inferences, plaintiffs have implicated genuine issues of material fact regarding *their* motion. Plaintiffs should, therefore, be denied summary judgment on their First and Fourth Amendment claims, false arrest claims, and Chelsea Kirk's assault and battery claims. Fed. R. Civ. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## VIII.  Injunction Liability

Plaintiffs argue that they have not moved for an injunction and that the District should not be granted relief on their claim for injunctive relief because this briefing is limited to liability issues. In the section of their opening brief entitled, "The District of Columbia is Liable as a Matter of Law for the Unlawful Arrest of the Plaintiffs, Under Both 42 U.S.C. § 1983 and Local Law," plaintiffs state "the District is liable under 42 U.S.C. § 1983 not only for money damages, but also for injunctive relief against the custom, policy, or practice that caused or subjected the plaintiffs to arrest and threatens to cause or subject future demonstrators to unconstitutional arrest." Pls Opp at 24, 26 (citations omitted). Plaintiffs thus presented the issue of injunctive liability in their opening brief.

In Pls Opp, plaintiffs do not argue against the merits of the XMot seeking summary judgment on plaintiffs' injunction claims. *See* Pls Opp at 33-34. Plaintiffs argue that "plaintiffs' motion seeks only summary judgment on liability." *Id.* at 33. That liability specifically includes liability of injunctive relief, as plaintiffs further argue that "[a]n order granting plaintiffs' motion *and holding defendant liable for injunctive relief* as well as damages would not necessarily mean that the Court would be required to issue an injunction." Pls Opp. at 34.

Plaintiffs have moved this Court to enter an order holding the District liable for injunction relief.  Yet they have not supported that request for an order with a showing sufficient to justify injunctive liability; nor have they responded to the merits of the District's motion seeking summary judgment on plaintiffs' claim of injunctive liability.  Accordingly, the Court should now hold that the District is not liable for injunctive relief and order plaintiffs' injunction claims dismissed with prejudice.

## **CONCLUSION**

For the reasons set forth above and in the District's earlier brief, the District should be granted summary judgment on plaintiffs' First and Fourth Amendment and common law false arrest claims.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

__/s/_Ellen Efros_____
ELLEN A. EFROS [250746]
Assistant Deputy Attorney General

__/s/  Thomas L. Koger_____
THOMAS L. KOGER [427921]
Senior Assistant Attorney General

__/s/  Chad Copeland_____
CHAD COPELAND
Assistant Attorney General
441 4th Street NW, Ste 600 South
Washington, D.C.  20001
(202) 724-6610
Fax: (202)727-3625

Counsel for Defendant District of Columbia